WILLIAM J. GEDDES
Nevada Bar No. 6984
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
*Attorneys for Plaintiff John Enos*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN ENOS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS COUNTY, a political subdivision of the State of Nevada; SCOTT SHICK, Chief Juvenile Probation Officer of the Juvenile Probation Department; THE STATE OF NEVADA *ex rel.* The Ninth Judicial District Court of the State of Nevada; DOE GOVERNMENTAL ENTITIES 1-10, DOE BUSINESS ENTITIES 1-10; and DOE INDIVIDUALS 1-50.<br><br>Defendants. | CASE NO: 3:17-cv-00095<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW Plaintiff JOHN ENOS, by and through his counsel, WILLIAM J. GEDDES, ESQ. of the law firm THE GEDDES LAW FIRM, P.C., and hereby complains of Defendant DOUGLAS COUNTY, SCOTT SHICK, THE STATE OF NEVADA *ex rel.* THE NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, DOE GOVERNMENTAL ENTITIES 1-10, DOE BUSINESS ENTITIES 1-10, and DOE INDIVIDUALS 1-50, inclusive, as follows:

## I.

## STATEMENT OF THE CASE

This is an employment-discrimination case arising under the Americans with Disabilities Act. For over twenty years, Plaintiff John Enos was an employee of Douglas County/the Ninth Judicial District Court of the State of Nevada, serving most recently as Senior Juvenile Probation Officer.  Mr.

Enos alleges herein that he was discriminated against on the basis of his physical disabilities, including those arising from workplace injuries to his wrists, shoulders, head, neck, and back.  Such unlawful employment discrimination against Mr. Enos included Defendants' refusals to accommodate his disabilities, harassment, retaliation, failure to engage in the interactive process, disparate treatment in the benefits of his employment, and termination of Mr. Enos.  After Mr. Enos was terminated, Defendants subjected him to further retaliation by wrongfully interfering with his worker's-compensation benefits.  Still later, more than a year after he was terminated, Mr. Enos applied for employment with Douglas County, but he was denied employment in an act of disability discrimination, and in a continuing act of unlawful retaliation based on his prior protected conduct—including that occurring before his termination.  As well, Mr. Enos was entitled to receive due process prior to his termination, but Defendants deprived Mr. Enos of that requisite due process, upon which failure Mr. Enos asserts a § 1983 claim for a due process violation.  Mr. Enos' supplemental, state-tort claims assert causes of action for wrongful termination and tortious discharge in violation of public policy, relating to Defendants' termination of Mr. Enos in retaliation for his having sought worker's compensation benefits for his workplace injuries/disabilities.  Mr. Enos seeks monetary, equitable, and injunctive relief, including reinstatement back to his position as a Senior Juvenile Probation Officer, with full back-pay and benefits as if never terminated.

## II.

### JURISDICTION AND VENUE

1.     The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  In particular, this case asserts federal discrimination claims, actionable under the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA"), codified at 42 U.S.C. § 12101 *et seq*.  This case also asserts a federal-civil-rights claim under 42 U.S.C. § 1983, for deprivation of rights secured by the Fourteenth Amendment of the U.S. Constitution (procedural-due-process violation).  This Court has supplemental jurisdiction over the state-law claims of wrongful termination and tortious discharge in violation of public policy and wrongful termination, pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

2.     Venue is proper in the U.S. District Court situated in Reno, Nevada, under 28 U.S.C. § 1391(b) because:

(a)     some of the Defendants are residents of Northern Nevada, residing in or around Douglas County, Nevada, and venue is proper in a judicial district in which any defendant resides; and

(b)     a substantial part of the events or omissions giving rise to the claims of this case occurred in Douglas County, Nevada.

## III.

## PARTIES

3.     At all relevant times herein, Plaintiff JOHN ENOS ("ENOS") was a citizen of the state of Nevada, residing in the County of Douglas, who was employed and supervised by Douglas County and was also employed by and/or supervised by, the Ninth Judicial District Court of the State of Nevada, as a Senior Juvenile Probation Officer, and whose principal office or place of employment was situated in Douglas County, at 1038 Buckeye Road, Minden, Nevada 89423.

4.     Defendant DOUGLAS COUNTY ("COUNTY") is a political subdivision of the State of Nevada, which at all relevant times herein was the employer and supervisor of ENOS and SCOTT SHICK.   The COUNTY employs employees of, operates, funds, manages, and/or supervises the Juvenile Probation Department ("Juvenile Probation Department") that operates in Douglas County, Nevada, sharing some or all such functions with Defendant NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA.

5.     At all relevant times herein, Defendant SCOTT SHICK ("SHICK") was a citizen of the state of Nevada, who, on information and belief, resided in the County of Douglas at all relevant times hereto, and who was employed and supervised by Douglas County and was also employed by and/or supervised by, the Ninth Judicial District Court of the State of Nevada, as a Chief Juvenile Probation Officer, and whose principal office or place of employment was situated in Douglas County, at 1038 Buckeye Road, Minden, Nevada 89423.   At all relevant times hereto, as the Chief Juvenile Probation

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

Officer, SHICK was the department head of the Juvenile Probation Department.  SHICK is sued in his official and individual capacities.

6.     Defendant STATE OF NEVADA *ex rel.* THE NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA ("NJDC") is a constitutionally-created court system existing in the Ninth Judicial District of Nevada, which at all relevant times herein, was a co-employer of ENOS and SHICK and/or was a supervisor of ENOS and SHICK.  Defendant NJDC also operates and/or supervises the Juvenile Probation Department, sharing some or all such functions with Defendant COUNTY.

7.     The true names and capacities, of the Defendants sued herein as DOE GOVERNMENTAL ENTITIES 1-10, inclusive, are unknown to ENOS, who sues those Defendants by such fictitious names.    DOE GOVERNMENTAL ENTITIES 1-10, inclusive, are parties in contemplation at the time of the original filing of this *Complaint*.  ENOS alleges, on information and belief, that each of the Defendants sued herein as DOE GOVERNMENTAL ENTITIES 1-10, inclusive, at all relevant times, performed acts, or were responsible for performing acts, in their official and private capacities, relating to governmental-operations and employment/administrative matters at or in the COUNTY, the NJDC and/or the Juvenile Probation Department, including those acts or omissions relating to matters involving ENOS' employment, workplace injuries, efforts to continue his employment, termination, efforts to re-obtain his employment, failure to be rehired, and all matters concerning their failure to accommodate ENOS' disabilities and their unlawful disability discrimination committed against ENOS, as described herein.  ENOS alleges, on information and belief, that each of the Defendants sued herein as DOE GOVERNMENTAL ENTITIES 1-10, inclusive, are responsible in some manner for the events and injuries alleged herein.  ENOS alleges, on information and belief, DOE GOVERNMENTAL ENTITIES 1-10, inclusive, are, and at all times relevant hereto were, governmental entities of any kind, including but not limited to state and municipal governmental entities and branches of government, political subdivisions of the State of Nevada, and offices, departments, divisions, councils, and boards of such governmental entities.  ENOS will seek leave of Court to amend this *Complaint* to state the true names and capacities of DOE GOVERNMENTAL ENTITIES 1-10, inclusive, when they have been ascertained.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

8.      The true names and capacities, of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, are unknown to ENOS, who sues those Defendants by such fictitious names.  DOE BUSINESS ENTITIES 1-10, inclusive, are parties in contemplation at the time of the original filing of this original *Complaint*.  ENOS alleges, on information and belief, that each of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, at all relevant times, performed acts, or were responsible for performing acts, in their official and private capacities, relating to business-operations and employment/administrative matters at or in the COUNTY, the NJDC and/or the Juvenile Probation Department, including those acts or omissions relating to matters involving ENOS' employment, workplace injuries, efforts to continue his employment, termination, efforts to re-obtain his employment, failure to be rehired, and all matters concerning their failure to accommodate ENOS' disabilities and their unlawful disability discrimination committed against ENOS, as described herein.  ENOS alleges, on information and belief, that each of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, are responsible in some manner for the events and injuries alleged herein.  ENOS alleges, on information and belief, DOE BUSINESS ENTITIES 1-10, inclusive, are, and at all times relevant hereto were, domestic or foreign business entities of any kind, including but not limited to corporations, associations, partnerships, companies, national associations, organizations, unions, non-profit organizations, and joint ventures, that were qualified to do business in Nevada or held themselves out to the public to be qualified to do business in Nevada, and actually did business as an entity in the State of Nevada, had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes.  ENOS will seek leave of Court to amend this *Complaint* to state the true names and capacities of DOE BUSINESS ENTITIES 1-10, inclusive, when they have been ascertained.

9.      The true names and capacities, of the Defendants sued herein as DOE INDIVIDUALS 1-50, are unknown to ENOS, who sues those Defendants by such fictitious names.   DOE INDIVIDUALS 1-50, inclusive, are parties in contemplation at the time of the original filing of this original *Complaint*.  ENOS alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-50, inclusive, at all relevant times, performed acts, or were responsible for performing acts, in their official and private capacities, relating to governmental/business-operations

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

5

and employment/administrative matters at or in the COUNTY, the NJDC and/or the Juvenile Probation Department, including those acts or omissions relating to matters involving ENOS' employment, workplace injuries, efforts to continue his employment, termination, efforts to re-obtain his employment, failure to be rehired, and all matters concerning their failure to accommodate ENOS' disabilities and their unlawful disability discrimination committed against ENOS, as described herein. ENOS alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-50, inclusive, are responsible in some manner for the events and injuries alleged herein.  ENOS alleges, on information and belief, DOE INDIVIDUALS 1-50, inclusive, are, and at all times relevant hereto were residents of the state of Nevada or had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes.  DOE INDIVIDUALS 1-50, inclusive, are sued in their individual and official capacities.  ENOS will seek leave of Court to amend this *Complaint* to state the true names and capacities of such Defendants when they have been ascertained.

10.     On information and belief, at all relevant times herein, each Defendant was the employer, supervisor, employee, and/or agent of the other, and some or all of Defendant's acts and omissions occurred during the course and scope of such employment and agency, and such acts and omissions were taken at the instruction of, at the request of, at the behest of, and/or for the benefit of one or more of the other Defendants.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

### *ENOS' Employment at the Juvenile Probation Department*

11.     ENOS was employed as a Juvenile Probation Officer at the Juvenile Probation Department from June 13, 1998 through February 19, 2015.  ENOS served as a Juvenile Probation Officer from June 13, 1998 to approximately June of 2002.  ENOS served as a Senior Juvenile Probation Officer from approximately June of 2002 to February 19, 2015.  Previously, ENOS worked at Douglas County Recreation Department as a teen coordinator from 1995-96, and for Douglas County/NJDC at China Springs Youth Camp from 1995-98.

12.     ENOS' position of Senior Probation Officer at the Juvenile Probation Department was

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

the highest-level position beneath the position of Chief Deputy Probation Officer.  Accordingly, by 2015, ENOS was well qualified and tenured to apply for the position of Chief Deputy Probation Officer, which position became available in or about July of 2015.  In this regard, ENOS had the most tenure, experience, education, training, and P.O.S.T. Academy certificates, as compared to other officers then-employed at the Juvenile Probation Department, who might also apply for the position of Chief Deputy Probation Officer.

13.    At all relevant times hereto, ENOS' employment position of Senior Juvenile Probation Officer at the Juvenile Probation Department was administratively governed by Defendant NJDC's Court Personnel Regulations, as confirmed by Douglas County Ordinance ("DCO") No. 2000-907, at § I, § 2.02.030(39)(b); DCO No. 2004-1085, at § I, § 2.02.030(40)(b); and DCO No. 2007-1200, at § I, § 2.02.030(OO)(2).

14.    At all relevant times hereto, ENOS' employment position of Senior Probation Officer at the Juvenile Probation Department was a "classified position," as confirmed by the Ninth Judicial District Court of Nevada Regulations filed on September 25, 2006 ("NJDC Regulations"), including NJDC § 3.41.  As such, ENOS was not an at-will employee who could be terminated from his employment without notice, cause, or hearing, as confirmed by NJDC Regulations, including NJDC §§ 3.42 and 7.0 *et seq*.  Accordingly, ENOS had a legitimate expectation of continued employment, and he could only be terminated for just cause stemming from employee misconduct.

15.    At all relevant times hereto, ENOS was entitled to received advance notice of any contemplated termination of his employment, including by means of a specification of charges that proposed his termination, before any such termination could occur, as confirmed by NJDC Regulation § 7.0 *et seq*.

16.    At all relevant times hereto, ENOS was entitled to receive an advance due-process hearing before a hearing board for any contemplated termination of his employment, before any such termination occurred, and such a hearing board was to be composed of a human resources manager, a department head from a department other than the Juvenile Probation Department, *i.e.*, not SHICK, and two supervisors, as confirmed by NJDC Regulation § 7.0 *et seq*.

/ / /

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

*ENOS' Disabilities Arising from His First Workplace Injury*

17.     On June 21, 2013, ENOS was injured ("First Workplace Injury") in the line of duty, during a wilderness trip he supervised for juveniles.  He was helping a juvenile get down from a tree, while standing at the base of the tree.  However, the juvenile and a portion of the tree crashed down on ENOS, injuring his neck, thoracic, lumbar, and cervical regions of his spine, and his right wrist.  ENOS' doctor placed him on medical "light duty," while ENOS healed from those injuries.  On May 21, 2014, a medical complication arose in connection with these injuries, when a medical screw that was surgically implanted in his wrist, later came apart.  On January 15, 2015, ENOS had those pins removed.

18.     ENOS' injuries sustained in the First Workplace Injury and its sequela constituted physical disabilities, within the meaning of the ADA/ADAAA ("ADA") codified at 42 U.S.C. § 12102 *et seq*.  These physical impairments substantially limited one or more of ENOS' major life activities, including grasping, bending, and lifting, and ENOS received medical treatment and care, including medication and doctor-ordered work restrictions.

*Defendants' Failure to Accommodate ENOS' Disabilities*
*Arising from the First Workplace Injury*

19.     Even though Defendants COUNTY, NJDC, and SHICK knew about ENOS' medical restrictions, they failed to accommodate ENOS' disabilities.  Specifically, Defendants required ENOS to perform his full duties as a juvenile-probation officer, including escorting, restraining, and subduing juveniles, where necessary.  These failures to accommodate ENOS' disabilities caused him to become injured a second time during the line of duty, nearly a year later, on June 17, 2014.

*ENOS' Disabilities Arising from the Second Workplace Injury*

20.     On June 17, 2014, while ENOS was supposed to be on "light duty," he was injured ("Second Workplace Injury") in the line of duty again.  Specifically, ENOS was ordered to transport a juvenile to the court, and during that transport, the juvenile attacked and assaulted ENOS.

21.     In the Second-Workplace-Injury incident, ENOS sustained injuries to both of his shoulders, left wrist, head, right ear, left side, and he reaggravated his prior injuries to his neck, spine, and right wrist, which were sustained in the First Workplace Injury.  As such, ENOS suffered a

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

disassociation of the bones in his right wrist, resulting in a "salvage" surgery that eliminated one bone and fused four other bones in his wrist.

22.    ENOS' injuries sustained in the Second Workplace Injury also constituted physical disabilities, within the meaning of the ADA, in that they were physical impairments that substantially limited one or more of ENOS' major life activities, including grasping, bending, and lifting.  ENOS received medical treatment and care, including medication and doctor-ordered work restrictions.

### Defendants' Failure to Accommodate ENOS' Disabilities
### Arising from the Second Workplace Injury

23.    After the second workplace injury, and for a while, Defendants COUNTY, NJDC, and SHICK attempted to impose unlawful terms and conditions on ENOS' employment, by not accommodating his disabilities, including by not honoring his "light-duty" restrictions.

24.    For example, on June 17, 2014—shortly after the physical attack on ENOS—ENOS was ordered to escort juveniles to court, notwithstanding his injuries sustained in the attack that day and notwithstanding his medical-restrictions that were still in effect from the First Workplace Injury. Specifically, ENOS was in his office, dressed for Court, with blood still on his clothes.  He was still in a state of shock and confusion from the physical attack that had just occurred that day.  At that time, ENOS' supervisor Vicki Sauer-Lamb ordered ENOS to continue to take juveniles to Court.  ENOS questioned the appropriateness of that request given his disabilities, injuries, and light-duty status. ENOS indicated that he felt like he should be heading to the hospital emergency room, instead.  Ms. Sauer-Lamb assured ENOS that she would take him to the hospital emergency room after the Court hearing, which required that ENOS escort the juveniles to Court.

25.    Thereafter, while ENOS awaited his "salvage" surgery, Defendants continued to required ENOS to escort juveniles to court, facing potentially combative situations.

26.    ENOS called into question the appropriateness of such a failure to accommodate his disabilities, which amounted to "protected conduct," under the ADA.

### Defendants' Harassment and Retaliation Against ENOS

27.    After ENOS questioned the propriety of Defendants' actions relating to his disabilities and their failure to accommodate his disabilities, Defendants' harassment and responsive, adverse

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

actions, described herein, were taken in retaliation against ENOS, for having engaged in that protected conduct.  For example, immediately or soon after ENOS engaged in this protected conduct:

(a)    SHICK harassed ENOS in an HR meeting, wherein SHICK attempted to bully ENOS into quitting his job;

(b)    SHICK transferred all of ENOS' cases away, to other Juvenile Probation Department workers, on a permanent basis, without engaging in the interactive process or determining whether ENOS could perform the essential functions of handling his caseload, with or without a reasonable accommodation, and without determining whether or when ENOS might be able to do so in the future; and

(c)    SHICK intimidated ENOS with hyper-critical and sarcastic comments, aimed at intimidating ENOS and creating a hostile work environment.

28.    Belatedly, the Juvenile Probation Department accommodated ENOS' disabilities, by assigning ENOS to a "light-duty" post, working in the county library.

29.    Nevertheless, SHICK continued his harassment and retaliation of ENOS, by making it clear to ENOS that SHICK was not happy with such a "light-duty" assignment, and the hostile-work environment continued, including, for example:

(a)    In June of 2014, SHICK refused to allow ENOS to take training, while on the job, which was customary for the office to allow other officers to do.  The effect of this differential treatment, based on ENOS' disability, request for accommodation, and ensuing retaliation, required ENOS to pay for such training himself, by using his vacation time, which other workers were customarily not required to do.  This amounted to ENOS losing 80 hours of his vacation time; and

(b)    SHICK conspicuously avoiding ENOS, which led to ENOS to experience greater hostility and isolation in the workplace.

### ENOS' Workers'-Compensation Medical Leave

30.    In connection with pursuing workers'-compensation benefits for his Second Workplace Injury, ENOS took a workers'-compensation medical leave on October 21, 2014, to obtain further medical treatment and recuperation for his injuries/disabilities.

/ / /

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

10

31.     Thereafter, over the course of about three months, ENOS' physical condition improved with medical treatment and recuperation.

### ENOS' Return from Workers'-Compensation Medical Leave

32.     On or about January 28, 2015, ENOS' doctor released ENOS' from medical-leave away from work, allowing his to return back to work on "light duty."  However, SHICK continued to engage in unlawful discrimination, harassment, and retaliation, as described herein.

33.     On January 28, 2015, ENOS contacted his immediate supervisor Chief Deputy Juvenile Probation Officer Victoria Sauer-Lamb, informing her of his doctor's release of ENOS back to "light duty."  ENOS asked Ms. Sauer-Lamb if he should report to the county library for "light duty" again, where his last post was stationed, immediately prior to his workers'-compensation leave.

34.     Ms. Sauer-Lamb told ENOS that she would need to check into the matter and that she would call him back.  Later that day, on January 28, 2015, ENOS received a voicemail from Douglas County Human Resource manager, Sarah Christensen, who requested that ENOS call her the following day, January 29, 2015, at 8:00 a.m.

### Defendants' Continued Harassment, Retaliation, and Failure to Accommodate ENOS' Disabilities

35.     On January 29, 2015, at 8:00 a.m., ENOS called Ms. Christensen, as instructed.  Ms. Christensen informed ENOS that, although his doctor, Dr. Eisenhauer, had released ENOS, Dr. Morales' order was for "light duty," with no pulling, pushing, or lifting.  Ms. Christensen told ENOS that his employer could not accommodate his disabilities by providing him with light duty.

36.     Defendants' claim that they could not accommodate ENOS' disabilities was false and made without properly engaging in the interactive process, as required under the ADA.

37.     Defendants could have reasonably accommodated ENOS' disabilities in multiple ways, including, for example:

(a)     A reasonable accommodation could have been made for ENOS to return to his position as a probation officer, including by allowing ENOS to have an assisting officer help him, when making arrests, transporting probationers, or confronting combative situations;

i.     In this regard, probation officers are not police officers, and they do not carry guns; confronting violent situations is not an every-day occurrence for officers of the Juvenile

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

Probation Department;

    ii.  Nevertheless, if a situation were to suddenly flare up, ENOS could have been allowed to simply step back and call for assistance, whether such assistance was provided by another probation officer or the local police;

    iii.  At the Juvenile Probation Department, this officer-assistance practice was routinely followed by probation officers.  This practice was encouraged by Juvenile Probation Department supervisors, and it was allowed by Juvenile Probation Department policy, pattern, or practice, including as evidenced by the following examples:

    A.  After ENOS sustained his Second Workplace Injury, ENOS had a broken screw in his wrist, and he was placed on "light-duty" status at work.  ENOS' doctor ordered ENOS not to be put in a situation at work where he may need to subdue a combative juvenile. Notwithstanding this "light-duty" status and these doctor orders, Ms. Sauer-Lamb instructed ENOS to transport a probationer to court.  At that time, ENOS' questioned Ms. Sauer-Lamb about the appropriateness of such a request, given the broken screw in his wrist, his light-duty status, doctor orders, and the potential for a combative situation, when transporting a probationer.  In response, Ms. Sauer-Lamb ordered ENOS to have JPO Bruce Beauchamp assist ENOS in transporting the probationer to court.  Ms. ENOS responded that, if JPO Beauchamp was attacked by the probationer during the transport, ENOS would likely be forced to get involved in the combative situation.  However, Ms. Sauer-Lamb disagreed with that assessment, stating that he would not need to get involved in the combative situation, but could "step back" and call 911-emergency for assistance;

    B.  Juvenile Probation Department Officer Tammy Morris always used, and was permitted to always use, a back-up officer to assist her in the field, when she performed home visits of probationers and when drug-testing male probationers;

    iv.  Providing such an accommodation to ENOS would have been reasonable, would have allowed ENOS to perform the essential functions of his job, and providing reasonable accommodations to ENOS was required under the ADA;

    (b)  Alternatively, a reasonable accommodation could have been made by allowing ENOS to return to work—either temporarily or permanently—in another, vacant position at the County,

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

for which he was qualified, and for which ENOS could have performed the essential functions of the position, with or without a reasonable accommodation.  On information and belief, at all relevant times hereto, such jobs were available county-wide in Douglas County.  ENOS was qualified to work at the county library and other positions, including, for example:

       i.       ENOS could have worked in the Detention Center, including as a youth counselor in the Detention Center;

       ii.       ENOS could have also worked at China Springs Youth Camp, the County Library, and in an assortment of other County positions, which availability Defendants were required to evaluate, while engaging in the "interactive process," which Defendants did not do; and

       (c)       Alternatively, ENOS could have been given unpaid leave as a reasonable accommodation, including in combination with other forms of accommodation, such as a subsequent transfer to another position for which ENOS was qualified, when such positions became available.  For example, ENOS could have been given a leave of absence to allow him to obtain at a later time, the position for which ENOS was well qualified, Chief Deputy Probation Officer, which position became available in or about July of 2015.  Defendants were required to participate in the interactive process here, under the ADA, but they failed to do so.

38.     In any event, on January 29, 2015, Ms. Christensen told ENOS to stay home for the time being.  ENOS asked Ms. Christensen how he would be paid while not returning to work, and Ms. Christensen told ENOS that worker's compensation would still pay him until he had his shoulder surgeries completed by Dr. Morales.

39.     In this regard, Defendants' failure to accommodate ENOS' disabilities by allowing him to return to work—with or without a reasonable accommodation—constituted a tangible job detriment, in that ENOS' worker's-compensation pay did not afford ENOS his full salary, but only about two-thirds (2/3) of his salary.

40.     About two weeks later, on Friday, February 13, 2015, at 5:25 p.m., just before a three-day weekend, ENOS received a letter from Defendants, which Defendants hand-delivered to his mother-in-law, less than an hour earlier that day at 4:55 p.m.  That letter informed ENOS that he needed to report back to work on Tuesday, February 17, 2015 at 8:00 a.m.

13

41.     Monday February 16, 2015 was a state holiday for Presidents' Day, and the short work week gave ENOS less time to contact the Juvenile Probation Department, to inquire further on the matter.

42.     This letter informed ENOS that he could not return to work without a full medical release, adding: "Please note that any absence beyond February 17, 2015 will be deemed an unauthorized absence pursuant to Douglas County Code 2.02.080 and may subject you to automatic separation or disciplinary action up to and including termination."  This notice was deficient, among other reasons, because the Douglas County Code did not govern ENOS' classified position; the NJDC Regulations governed his position, instead.  This letter also did not comply with NJDC Regulations for terminating ENOS or proposing to terminate ENOS, including because the letter did not constitute a "specification of charges," required under the NJDC Regulations.

43.     ENOS received this oddly-time letter after work hours on Friday, February 13, 2015, before a three-day weekend.  Defendants deliberately put ENOS in an untenable situation, where he could not realistically respond to the letter or obtain doctors' evaluations or doctors' letters before the deadline of Tuesday, February 17, 2015 at 8:00 a.m.  This "impossible timing" stratagem underscored Defendants' bad faith and pretext, to evade their obligations to ENOS under the ADA, and such conduct constituted another incident of unlawful discrimination, harassment, and retaliation against ENOS.

44.     On February 17, 2015, ENOS took urgent action to comply with the unreasonable ultimatum given by Defendants, by reporting for duty to work at 8:00 a.m., and ENOS then advised the Juvenile Probation Department's Human Resources Department that he was reporting for duty. However, Defendants did not permit ENOS to return to duty that day.

45.     At that time, ENOS met with Human Resources Manager Norma Santoyo, who advised ENOS that ENOS had exceeded his FMLA leave, and SHICK was requesting to fill ENOS' position with another employee.

46.     Ms. Santoyo further advised ENOS at that time that, if he could not get a full doctors' release by the end of Thursday, February 19, 2015, the County would consider ENOS to have abandoned his post for three days, which would constitute a "voluntary resignation" by ENOS.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

14

47.     ENOS strenuously disagreed with Ms. Santoyo, forcefully stating that he was not abandoning his post, not resigning from his job, and that he was ready, able, and willing to return to work right there and then.

48.     Ms. Santoyo then informed ENOS that he could request an extension of time.  Having no choice in the matter, ENOS requested an extension for a "leave of absence," so as to comply with the violative ultimatum to obtain a full medical release.  This request constituted a further request for accommodation under the ADA.

49.     Thus, on February 17, 2015, ENOS submitted the following written request to the Human Resources Department of the Juvenile Probation Department:

> 2/17/2015
>
> "Human Resources:
>
> On Friday, 2/13/15, a letter was delivered to my home at 4:45 pm. I received it at 5:25 pm.  The letter informed me that I must provide the County with a doctor's release and return to work on 2/17/15 at 8:00 am.  I returned to work at 8:00 am to Norma Santoyo's office at Human Resources unable to get a full release from my doctor over the Presidents' Day Weekend.  I am requesting an extension of time in order to get more information from my doctor regarding my ability to return to full-duty as a probation officer.  Pursuant to the County Policy regarding "Leave of Absence," Number 200.40, I am also requesting a "leave of Absence" in order to receive necessary medical treatment for injuries I received while on the job, and to recover from these injuries in order to return to my job as a probation officer at full capacity.
>
> Sincerely,
> /s/
> John M. Enos.
>
> * Also, if it is found that I will not be able to return to full duty as a probation officer, I will accept any other position with the County that I can perform."

50.     Thus, ENOS' request of February 17, 2015 sought three forms of accommodation for his disabilities, for which Defendants were required to engage in the interactive process:

(a)     A brief extension of time to get releases from ENOS' doctors;

(b)     A leave of absence for medical treatment, to further address ENOS' disabilities for return to full-duty as a probation officer as demanded by the County; and

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

(c)     Reassignment to any other position with Douglas County for which ENOS was qualified to perform.

51.     During ENOS' conversation with Ms. Santoyo on February 17, 2015, Ms. Santoyo said it would help if ENOS could get updated work reports from his doctors.

52.     Thus, ENOS acted on Ms. Santoyo's instructions and spent the rest of the day getting the reports and other data together.  ENOS complied with Ms. Santoyo's deadline: his doctors faxed his additional medical releases to Defendants that day, February 17, 2015, which was confirmed by Ms. Santoyo, the following day.

53.     With regard to these timely-produced medical releases, Dr. Morales' push-pull-lifting restrictions for ENOS were made less restrictive, being changed to a higher weight limit, 50 pounds, and Dr. Eisenhauer released ENOS to full duty, for a trial-period, to see if he could perform his regular duties as a probation officer, without any accommodation.

54.     On the following day, February 18, 2015 at 8:00 a.m., ENOS again reported to the Human Resources Department of the Juvenile Probation Department and stated that he was reporting for duty.  However, Defendants did not permit ENOS to return to work that day.  ENOS met with Ms. Santoyo, who confirmed the receipt of the medical releases the prior day and stated that ENOS' provision of those medical releases was "good news."

55.     At that time, Ms. Santoyo told ENOS that she had sent ENOS' request of February 17, 2015 to SHICK, and was awaiting his response.  ENOS then asked Ms. Santoyo if there was anything else that he needed to do that day, and she said that there was not.

56.     Later that day, February 18, 2015, ENOS received a phone call from Ms. Santoyo, who informed ENOS that his FMLA had expired, that SHICK denied ENOS' request for an extension of time and for a leave of absence, and that, although he obtained releases from his doctors, Defendants did not consider them to be "full releases."

57.     Ms. Santoyo then further advised ENOS that the COUNTY had no "light-duty" work, to accommodate his disabilities.  However, notwithstanding this claim, Defendants failed to properly engage in the interactive process and failed to reasonably accommodate ENOS' disabilities.  Further, ENOS reminded Ms. Santoyo that, when he worked at the county library on "light duty," his doctor's

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

16

1    work restriction had a ten-pound-weight-limit restriction, whereas now he had a much higher capacity,

2    a fifty-pound-weight-limit restriction.

3        58.    ENOS then asked Ms. Santoyo why he could not be assigned to "light-duty" work at the

4    library again.  Ms. Santoyo responded that the COUNTY's legal person had decided that ENOS was

5    "too much of a liability" for the COUNTY to keep employed, and that the COUNTY intended to

6    terminate ENOS' employment the following day, February 19, 2015.  This shows that Defendants

7    engaged in a pretext, when disallowing ENOS to return to work, and this further shows that Defendants

8    failed to comply with the requirements of the ADA, including by failing to engage in the interactive

9    process in good faith and failing to reasonably accommodate ENOS' Disabilities.

10       59.    Undeterred, on February 19, 2015, ENOS again, reported to the County Human

11   Resources at 8:00 am, and he told Ms. Santoyo that he was there to work.  However, Defendants

12   refused to allow ENOS to work that day.  Ms. Santoyo told ENOS that the County had no "light duty"

13   work to accommodate him.  However, notwithstanding such a claim, Defendants failed to properly

14   engage in the interactive process and failed to reasonably accommodate ENOS' disabilities.

15       60.    Ms. Santoyo then told ENOS that, as of 5:00 pm. that day, ENOS would no longer be an

16   employee at the Juvenile Probation Department.

17       61.    Later that day, on February 19, 2015, ENOS—a 20-year employee—was publicly

18   humiliated by being escorted out of the building, after being ordered to pack up his desk and work area.

19                    ***Defendants' Bad Faith Termination of ENOS' Employment***

20       62.    ENOS was terminated from his employment at the Juvenile Probation Department on

21   February 19, 2015.

22       63.    At that time, ENOS was hand delivered a letter from SHICK, dated that day, February

23   19, 2015, that reads as follows: "Dear Mr. Enos: I have received and seriously considered your request

24   for a leave of absence dated February 17, 2015, pursuant to Douglas County Policy 200.40. However,

25   after considerable deliberation, your request is being denied."

26       64.    However, in actuality, Defendants failed to give proper consideration of ENOS' requests

27   for reasonable accommodation and failed to properly engage in the interactive process, as required by

28   the ADA.  Moreover, SHICK's letter did not address ENOS' other requests for accommodation, as

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

17

described in his February 17, 2015 request letter, including ENOS' request to work at any other available position for which he was qualified. This letter did not comply with NJDC Regulations for terminating ENOS or proposing to terminate ENOS, including because the letter did not constitute a "specification of charges," required under the NJDC Regulations.

65. As evidence of Defendants' further bad faith, later that day on February 19, 2015, Defendants attempted to have ENOS sign a voluntary-separation form, as if he were resigning, but he refused to do so. This underscores the fact that Defendants' terminated ENOS; he did not resign.

66. ENOS did not resign from his employment with the Juvenile Probation Department; he was fired.

67. The following day, Defendants persisted in their pretext regarding ENOS' separation of employment. On February 20, 2015, SHICK wrote a letter to ENOS, and this letter was actually sent by mail, not hand-delivered, as the letter falsely states. ENOS first received this letter on February 23, 2015. The letter was mailed and received after ENOS was terminated, depriving him of the requisite, pre-termination due process owed to him, as described herein. The letter reads as follows:

> "Dear Mr. Enos:
>
> Due to your absence from work for three consecutive days, Douglas County Juvenile Probation accepts your resignation pursuant to Title 2, Chapter 2.02 of the County Personnel Regulations 2.02.0800) and Section 6.062 of the Order Establishing Court Personnel Regulations, which provide: Unauthorized absence. 2. An unauthorized absence for three consecutive days shall be regarded as an automatic resignation and termination from county [court/judicial] service. Please contact me as soon as possible to arrange the removal of your personal items from the Juvenile Probation and the return of any County property currently in your possession.
> Sincerely,
> /S/
> Scott Shick."

68. This letter did not comply with NJDC Regulations for terminating ENOS or proposing to terminate ENOS, including because:

(a) The letter did not constitute a "specification of charges," required under the NJDC Regulations and did not otherwise comply with the NJDC Regulations;

/ / /

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

18

(b)     The letter was issued after ENOS was terminated, not before he was terminated, as required by the NJDC Regulations; thus, it could not have constituted a proposed termination; and

(c)     The letter failed to give ENOS the due process he had a right to receive, including as required under the NJDC Regulations.

69.     Moreover, ENOS was not absent from work for three consecutive days as falsely claimed in the letter.  ENOS reported for duty each day, ready, willing, and able to perform the essential functions of his job, with or without a reasonable accommodation.  However, Defendants refused to allow him to return to work on each of those days.  Moreover, Defendants failed to accommodate ENOS' disability, and they failed to engage in the interactive process, as they were required to do.

70.     Defendants' termination of ENOS was motivated by his Disabilities, which constitute unlawful discrimination.  As well, Defendants' termination of ENOS constituted a continuing act of harassment based on his Disabilities.  Also, Defendants' termination of ENOS constituted a continuing act of retaliation for his having engaged in protected conduct, as described herein.

71.     That SHICK's February 20, 2015 letter was a pretext is further shown by the fact that, by the date on which the letter was mailed out to ENOS, ENOS had already cleared out his personal items from his desk and work area, which SHICK had known.  SHICK's letter was issued to support a false narrative about the basis of ENOS' employment separation, and to cover-up an unlawful termination, violative of the Fourteenth Amendment of the U.S. Constitution, violative of the ADA, and taken in retaliation for ENOS' engaging in repeated and ongoing protected activity, including his seeking an accommodation for his disability, on many occasions.

72.     Defendants terminated ENOS in retaliation for ENOS having pursued worker's compensation benefits, which constitutes tortious discharge in violation of public policy.

73.     Defendants' unlawful harassment based on ENOS' disability and their retaliation for ENOS having engaged in protected conduct did not end with his termination on February 19, 2015, but continued thereafter, as alleged herein.

### Defendants' Post-Termination Discrimination, Harassment, and Retaliation Against ENOS

74.     In or about February of 2015, after ENOS was terminated, Defendants engaged in

19

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

further acts of malice and intentional discrimination, harassment, and retaliation against ENOS, by sending his doctors' limited, medical releases to worker's compensation officials, and arguing in bad faith that ENOS should not receive temporary-total-disability benefits, including because Dr. Eisenhauer had previously released ENOS to full duty, for a trial-period, to see if he could perform his regular duties as a probation officer, without any accommodation, as described herein.

75.     As a result of such malicious, intentional, discriminatory, harassing, and retaliatory conduct by Defendants, ENOS was cut off from receiving his workers'-compensation benefits.  This required ENOS to have his attorney petition to restore ENOS' workers'-compensation benefits, which were subsequently restored to ENOS.

*ENOS' Filing of First Discrimination Claim, EEOC Claim No. 550-2016-00209*

76.     On December 3, 2015, ENOS filed a claim with the U.S. Equal Employment Opportunity Commission, EEOC Claim No. 550-2016-00209, complaining about the unlawful disability discrimination, harassment, and retaliation, described herein.

*Defendants' Subsequent Failure to Re-Hire ENOS*
*Based on Disability Discrimination and a Continuing Act of Unlawful Retaliation*

77.     In or about April of 2016—more than a year after ENOS was terminated—ENOS, through his vocational-rehabilitation adviser, sought to obtain re-employment with Defendants, in any available position for which he was qualified, for which ENOS could perform the essential functions of the position, with or without a reasonable accommodation.

78.     However, Defendants refused to hire/rehire ENOS because of his Disabilities, and they communicated such a refusal to hire/rehire ENOS on May 2, 2016.

79.     When refusing to hire/rehire ENOS, Defendants failed to engage in the interactive process, and they failed to reasonably accommodate ENOS' Disabilities for such available positions county-wide, in an act of unlawful disability discrimination.

80.     A substantial motivating factor of Defendants' refusal to hire/rehire ENOS in May of 2016, was ENOS' Disabilities.

81.     Defendants' refusal to hire/rehire ENOS in May of 2016 constituted an continuing and ongoing act of retaliation against ENOS, for ENOS having previously engaged in the lines of protected

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

20

1   conduct, prior to his termination on February 19, 2015; as described herein.

2       82.    Defendants' refusal to hire/rehire ENOS in May of 2016 also constituted an act of

3   retaliation against ENOS, for ENOS having engaged in the protected conduct of filing EEOC Claim

4   No. 2016-002019 on December 3, 2015, after his termination, as described herein.

5       83.    Moreover, Defendants' refusal to hire/rehire ENOS in May of 2016 also constituted an

6   act of retaliation against ENOS, for ENOS having engaged in the protected conduct of requesting an

7   accommodation for his Disabilities when applying to be re-hired, of which Disabilities Defendants

8   knew about, when ENOS sought to be hired/rehired by Defendants in or about April of 2016.

9       ***ENOS' Filing of Second Discrimination Claim, EEOC Claim No. 34B-2017-00301***

10      84.    On December 16, 2016, ENOS filed a claim with the Nevada Equal Rights Commission

11  ("NERC") NERC Claim No. 0125-17-0004R and EEOC Claim No. 34B-2017-00301, complaining

12  about the further unlawful disability discrimination, harassment, and retaliation, described herein.

13      85.    Defendants' further act of retaliation, described in NERC Claim No. 0125-17-0004R and

14  EEOC Claim No. 34B-2017-00301, constituted an ongoing, continuous act of retaliation by

15  Defendants, arising from and predicated on ENOS' protected conduct, described herein, which

16  occurred prior to his termination on February 19, 2015.

17      86.    Defendants' further act of retaliation, described in NERC Claim No. 0125-17-0004R and

18  EEOC Claim No. 34B-2017-00301, constituted an ongoing, continuous act of retaliation by

19  Defendants, arising from and predicated on ENOS' protected conduct, described herein, which

20  occurred after his termination on February 19, 2015, specifically: (1) ENOS having engaged in the

21  protected conduct of filing EEOC Claim No. 2016-002019 on December 3, 2015; and (2) ENOS having

22  sought an accommodation of his Disabilities, upon seeking re-employment with Defendants in or about

23  April of 2016.

24      ***Exhaustion of Administrative Prerequisites***

25      87.    ENOS timely submitted, or caused to be submitted, a charge of unlawful disability

26  discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission

27  ("EEOC") in EEOC Claim No. 550-2016-00209, as alleged herein.

28      88.    ENOS timely submitted, or caused to be submitted, a supplemental charge of unlawful

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

discrimination and retaliation with NERC and the EEOC, in NERC Claim No. 0125-17-0004R and EEOC Claim No. 34B-2017-00301, as alleged herein.

89.     On February 1, 2017, the EEOC issued a "right-to-sue letter" for the federal-discrimination claims of this case set forth in EEOC Claim No. 34B-2017-00301, pursuant to 42 U.S.C. § 2000e-5(f), and ENOS filed the instant suit within ninety (90) days of the issuance of that "right-to-sue letter."

90.     On February 13, 2017, the U.S. Department of Justice Civil Rights Division issued a "right-to-sue letter" for the federal-discrimination claims of this case set forth in EEOC Claim No. 550-2016-00209, pursuant to 42 U.S.C. § 2000e-5(f), and ENOS filed the instant suit within ninety (90) days of the issuance of that "right-to-sue letter."

## FEDERAL CLAIMS

## V.

## FIRST CLAIM FOR RELIEF

### UNLAWFUL DISCRIMINATION, HARASSMENT, AND RETALIATION BASED ON DISABILITY

**(Americans With Disabilities Act and Amendment Act - 42 U.S.C. § 12101 *et seq.*)**

**(Asserted against the COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and DOE BUSINESS ENTITIES 1-10)**

91.     ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

92.     At all relevant times herein, ENOS' injuries and sequela arising from the First Workplace Injury and the Second Workplace Injury were physical disabilities and related conditions ("Disabilities"), causing pain, suffering, and physical limitations to his body, including to his neck, thoracic spine, lumbar spine, and cervical spine, wrists, and shoulders, which disabilities are covered by, and within the meaning of, the ADA codified at 42 U.S.C. § 12102 *et seq.*, in that these physical impairments substantially limited one or more of ENOS' major life activities, including the functions of grasping, bending, and lifting, for which physical disabilities, ENOS was receiving and/or had received medical treatment and care, including surgery.

93.     At all relevant times herein, Defendants, and each of them, including their agents and

22

employees:

      (a)    were aware of ENOS' Disabilities;

      (b)    were aware that ENOS had a record of such Disabilities; and/or

      (c)    regarded ENOS as having physical impairments, including his Disabilities, that substantially limited one or more of his major life activities, including grasping, bending, and lifting.

94.    Notwithstanding ENOS' Disabilities, at all relevant times herein, ENOS could perform the essential functions of his job, with or without a reasonable accommodation of his disabilities.

95.    At all relevant times herein, Defendants sued in this claim for relief (including through their employees and agents), and each of them, intentionally engaged in unlawful discrimination and disparate treatment of ENOS, as compared to other similarly-situated employees, and such differences in treatment were based on ENOS' protected characteristic of his Disabilities, described herein.

96.    Such unlawful harassment, discrimination and disparate treatment of ENOS based on ENOS' disabilities included Defendants' acts and omissions when:

      (a)    failing to accommodate ENOS' Disabilities described herein;

      (b)    harassing ENOS and creating a hostile-work environment for ENOS, as described herein, including when engaging in the following, pervasive conduct:

         (i)    SHICK harassed ENOS in an HR meeting, wherein SHICK attempted to bully ENOS into quitting his job;

         (ii)    SHICK transferred all of ENOS' cases away, to other Juvenile Probation Department workers, on a permanent basis, before engaging in the interactive process or otherwise determining whether and when ENOS would be able to handle or resume handling his caseload;

         (iii)    SHICK intimidated ENOS with hyper-critical and sarcastic comments, aimed at intimidating ENOS and creating a hostile work environment;

         (iv)    SHICK refused to allow ENOS to take training, while on the job—which was customary for the office to allow other officers to do;

         (v)    SHICK conspicuously avoided ENOS, which led to ENOS to experience greater hostility and isolation in the workplace;

         (vi)    Defendants depriving ENOS of the due process that he was entitled to

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

1 receive under the NJDC Regulations and under the Fourteenth Amendment to the U.S. Constitution, as

2 described herein;

3          (c)      imposing tangible-job detriments on ENOS, as described herein, including by:

4               (i)      not paying for ENOS' training, as described herein, which caused ENOS

5 to lose 80 hours of vacation time;

6               (ii)      not allowing ENOS to return to work, as described herein;

7               (iii)      by terminating ENOS;

8          (d)      otherwise engaging in disparate treatment of ENOS regarding the terms and

9 conditions of employment there, as alleged herein;

10          (e)      terminating ENOS from his employment, without just cause and without due

11 process, because of his disability and substantially motivated by his disability, and on a pretext, as

12 described herein;

13          (f)      causing ENOS to temporarily lose his workers'-compensation benefits after he

14 was terminated, as described herein;

15          (g)      failing to hire/re-hire ENOS because of his disability and as a further and

16 continuing act of harassment and retaliation, as described herein; and

17          (h)      failing to provide ENOS with due process, as described herein.

18      97.      At all relevant times herein, Defendants sued in this claim for relief (including through

19 their employees and agents), and each of them, intentionally engaged in the unlawful discrimination,

20 disparate treatment, harassment, retaliation, and adverse actions against ENOS, as described herein,

21 because of ENOS' Disabilities, for which Defendants sued in the claim for relief are liable for their

22 culpable conduct under the ADA and 42 U.S.C. § 12101 *et seq*.

23      98.      At all relevant times herein, ENOS' Disabilities were a motivating factor in the

24 decisions of the Defendants sued in this claim for relief (including through their employees and agents),

25 and each of them, to intentionally engage in the unlawful discrimination, disparate treatment,

26 harassment, retaliation, and adverse actions against ENOS, as described herein, for which Defendants

27 sued in this claim for relief are liable for their culpable conduct under the ADA and 42 U.S.C. § 12101

28 *et seq*.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

24

99.     At all relevant times herein, ENOS engaged in an activity protected under federal law, including:

(a)     when ENOS requested reasonable accommodations for his Disabilities, which requests were denied or delayed, as described herein;

(b)     when Defendants sued in this claim for relief (including through their employees and agents) failed to engage in the interactive process with ENOS for his requests for accommodation, as described herein;

(c)     when ENOS called into question the appropriateness of Defendants' refusal to accommodate his disabilities, as described herein; and

(d)     when ENOS sought to be re-hired with his Disabilities, which triggered a duty by Defendants to engage in the interactive process and accommodate his Disabilities.

100.    At all relevant times herein, Defendants sued in this claim for relief (including through their employees and agents), and each of them, subjected ENOS to the adverse employment actions described herein, and ENOS was so subjected to such adverse employment action because of his participation in such protected activity relating to his Disabilities.

101.    At all relevant times herein, ENOS suffered one or more tangible job detriments/tangible employment actions, as a result of the unlawful disability discrimination and retaliation alleged herein, including as described herein.

102.    As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ENOS' Disabilities and protected conduct described herein, ENOS has suffered, and continues to suffer economic losses, personal injuries, and damages, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which he is entitled to compensatory and equitable damages, in an amount to be proven at trial.

103.    As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ENOS' Disabilities and protected conduct described herein, ENOS has had to

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

25

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

retain the services of attorneys in this matter, and he therefore is entitled to, and seeks reimbursement for, his attorneys' fees and costs, his expert-witness fees, and court costs, in an amount to be proven at trial.

104.    As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ENOS' Disabilities and protected conduct described herein, ENOS is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants sued in this claim for relief, and each of them, violated ENOS' rights by engaging in unlawful discrimination, harassment, and retaliation, as alleged herein.

105.    As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ENOS' Disabilities and protected conduct described herein, ENOS is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendants sued in this claim for relief, and each of them, to give effect to the rights of ENOS, and to take other appropriate action, including reinstatement to his prior employment position, with full pay and benefits as if never terminated, based upon evidence produced at trial.

## VI.

### SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 Violation of PLAINTIFF's Fourteenth Amendment Rights

### -PROCEDURAL DUE PROCESS-

### (Asserted Against Defendants SHICK and DOE INDIVIDUALS 1-50)

106.    ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

107.    At all times relevant hereto, Defendants sued in this claim for relief (including by and through their agents and employees), and each of them, acting in their official and individual capacities, and acting under color of state law, caused the deprivation of ENOS' federal rights, including his Fourteenth Amendment right to procedural due process, as further alleged herein.

108.    At all times relevant hereto, ENOS was not an at-will employee, but, instead he held a

"classified position" of employment, and he could be terminated for "just cause" only, after receiving proper notice, including a specification of charges, and after a board hearing, a decision-maker of which board was required to exclude SHICK, as confirmed by NJDC Regulations, §§ 3.41-3.42 and 7.0 *et seq.*

109.   As such, at all times relevant hereto, ENOS had a reasonable expectation of continued employment with the Juvenile Probation Department as a Senior Juvenile Probation Officer, amounting to a state-created property interest protected under the Fourteenth Amendment to the U.S. Constitution.

110.   As well, at all times relevant hereto, ENOS had a reasonable expectation of the fundamental due process afforded under the Fourteenth Amendment to the U.S. Constitution, as well as the particularized due process afforded to him under the NJDC Regulations, § 7.0 *et seq.* before he could be terminated, also amounting to a state-created property interest protected under the Fourteenth Amendment to the U.S. Constitution.

111.   As such, ENOS was entitled to procedural-due-process protection under the NJDC Regulations, § 7.0 *et seq.* and the Fourteenth Amendment of the U.S. Constitution, before he could be terminated.

112.   Defendants sued in this claim for relief are governmental actors, and they deprived ENOS of his protected property interests of his continued employment and of his right to due process under the NJDC Regulations, as described herein, in violation of NJDC Regulations, § 7.0 *et seq.* and the Fourteenth Amendment to the U.S. Constitution.

113.   Contrary to the pretext offered by Defendants when ENOS was terminated, ENOS did not engage in an unauthorized absence from work as described in NJDC Regulations, § 6.06-6.062, but, instead, showed up to work each day after he was ordered back to work, ready, willing, and able to work, and to perform the essential functions of his job, with or without a reasonable accommodation, as described herein.  Defendants refused to comply with the law that permitted ENOS to return to work, by refusing to allow ENOS to return to work, failing to engage in the interactive process, and failing to accommodate his Disabilities.  ENOS did not resign, nor did he engage in an unauthorized absence from work, but was fired after the COUNTY's legal person decided that ENOS was "too much of a liability" for the COUNTY to keep employed.  Defendants' unlawful refusal to permit ENOS to return

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

to work did not constitute ENOS engaging in an unauthorized absence from work under NJDC Regulations § 6.06-6.062. ENOS was entitled to due process under NJDC Regulations §§ 7.0-7.03 and the Fourteenth Amendment to the U.S. Constitution.

114. At all times relevant hereto, pursuant to NJDC Regulations, § 7.01-7.02, the process due to ENOS included the process of providing ENOS' with "specification of charges," whenever "termination is contemplated," as follows:

> The department head or supervisor shall prepare a written specification of the charges against the employee. The written specification of charges shall immediately be filed with the Human Resources Department and shall set forth the disciplinary or correctional action contemplated. After having received the written specification of charges, the personnel department shall advise the employee in writing of the proposed action.

NJDC, § 7.02

115. Defendants sued in this claim for relief failed to provide ENOS with the process due to ENOS, under § 7.02 and under the Fourteenth Amendment to the U.S. Constitution, including because ENOS did not receive a written specification of charges proposing his termination before he was fired, nor did he receive any proper due process before or after he was fired.

116. Moreover, at all times relevant hereto, pursuant to NJDC Regulations, § 7.03 the process due to ENOS included allowing ENOS' to contest the proposed disciplinary action of his termination, to unbiased persons, *i.e.*, other than Defendant SHICK, before he was fired, as follows:

> In the event the employee desires to contest the proposed disciplinary action, they shall be granted a hearing before a hearing board. The hearing board shall be appointed by the Human Resources Manager and shall consist of one (1) department head from a department separate from that of the employee in issue, and two (2) supervisors. The employee must request a hearing in writing and submit the request to the Human Resources Manager within ten (14) days of receipt of the specification of charges.

NJDC Regulations, § 7.03.

117. Defendants sued in this claim for relief failed to provide ENOS with the process due to ENOS, under § 7.03 and the Fourteenth Amendment to the U.S. Constitution, including because:

(a)   ENOS did not receive a written specification of charges proposing his

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

1   termination;

2          (b)     As such, ENOS did not receive a proper opportunity to avail himself of a board

3   hearing to contest any such proposed specification of charges, to contest his termination, prior to his

4   termination;

5          (c)     ENOS was not provided with an unbiased review of the matter of his

6   termination, prior to his termination, by one other than SHICK, as contemplated in NJDC Regulations,

7   §§ 7.01-7.03.  Instead, the only person who reviewed ENOS' objections to his looming termination—

8   including those objections set forth in ENOS' communications to Ms. Santoyo and in ENOS' February

9   17, 2015 request for leave or an extension, described herein—was SHICK, who was not unbiased, but

10  was the department head of the Juvenile Probation Department;

11         (d)     In this regard, ENOS was not given the opportunity to have an unbiased hearing

12  board determine, prior to ENOS' termination, whether ENOS' prospective termination was

13  "unwarranted," as described in NJDC Regulations § 7.04;

14         (e)     Moreover, ENOS was not given the opportunity to have the matter reviewed, if

15  necessary, by the judges of the NJDC, as allowed under NJDC Regulations § 7.05; and

16         (f)     ENOS was not given due process to satisfy the requirements of the Fourteenth

17  Amendment to the U.S. Constitution.

18         118.    Defendants' deprivations of due process violated ENOS' property rights, as well as his

19  statutory and constitutional rights, causing injury and harm to ENOS.

20         119.    As a further direct and proximate result of the intentional, malicious, willful, deliberately

21  indifferent, oppressive, reckless conduct of the Defendants sued in this cause of action, ENOS sustained

22  injury, harm, suffering, mental anguish, and damages, entitling ENOS to compensatory damages, and

23  punitive damages against the Defendants sued in this cause of action, for conduct arising in their

24  individual capacities, as allowed by law, according to proof at trial.

25         120.    As a further, direct and proximate result of the intentional, malicious, willful,

26  deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of all Defendants, and

27  each of them, for this cause of action, ENOS has had to retain the services of attorneys in this matter,

28  and he therefore, seeks reimbursement for his attorney's fees and costs, including for his attorney's

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

fees, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

## STATE CLAIMS

## VII.

## THIRD CLAIM FOR RELIEF

### Tortious Discharge in Violation of Public Policy | Retaliation for Filing Worker's Compensation Claim

(Asserted against all Defendants)

121.   ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

122.   Retaliatory discharge by an employer, in response to an employee seeking worker's compensation benefits, is actionable in tort, as violative of public policy.

123.   At all relevant times hereto, ENOS pursued worker's compensation benefits for his work-related injuries, prior to his termination, as described herein.

124.   Defendants retaliated against ENOS for his seeking worker's compensation benefits, including by terminating his employment, under a pretext that stated another, false reason for his termination.

125.   Accordingly, Defendants tortiously discharged ENOS, in violation of public policy causing injury, harm, and damages to ENOS, and Defendants are liable for such tortious discharge.

126.   As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants, including their employees and agents, as described herein, ENOS incurred, and will continue to incur in the future, damages, in an amount to be proven at trial.

127.    As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants, including their employees and agents, as described herein, ENOS sustained harm and injury including, economic losses, physical injury, mental injury, mental anguish, humiliation, embarrassment, emotional distress, inconvenience, pain, suffering, and damages, entitling ENOS to compensatory damages, as allowed by law, according to proof at trial.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

128.     As a further direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants, including their employees and agents, as described herein, ENOS has had to retain the services of attorneys in this matter, and he therefore, seeks reimbursement for attorney's fees and costs.

**VIII.**

**FOURTH CLAIM FOR RELIEF**
**Breach of Statutory-Regulatory Duties / Breach of Contract / Wrongful Termination**

(Asserted against all Defendants)

129.     ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

130.     At all relevant times hereto, ENOS' employment position of Senior Juvenile Probation Officer at the Juvenile Probation Department was a "classified position," as confirmed by the NJDC Regulations, including NJDC § 3.41.   As such, ENOS was not an at-will employee who could be terminated from his employment without notice, cause, or hearing, as confirmed by NJDC Regulations, including NJDC Regulations, §§ 3.42 and 7.0 *et seq*.   Accordingly, ENOS had a legitimate expectation of continued employment, and he could only be terminated for just cause stemming from employee misconduct.   As well, ENOS had a legitimate expectation of receiving proper due process before he was terminated, including that expectation secured by and based upon NJDC Regulation, § 7.0 *et seq*.

131.     At all relevant times hereto, Defendants sued in this claim for relief made binding, enforceable promises to ENOS, including in their statutory-regulations described herein, amounting to a contract, that ENOS would not be terminated without "good cause," and that he would receive the requisite due process afforded under NJDC Regulations, §§ 7.0 *et seq*.

132.     At all relevant times hereto, these binding and enforceable promises made by Defendants to ENOS included those made in Douglas County Ordinances, including DCO No. 2000-907, at § I, § 2.02.030(39)(b); DCO No. 2004-1085, at § I, § 2.02.030(40)(b); and DCO No. 2007-1200, at § I, § 2.02.030(OO)(2); NJDC Regulations §§ 3.42, 7.0 *et seq*., as well as those promises made in, and/or arising from, Defendants' statutory regulations, policies, agreements, promises, contracts, employee handbooks, manuals, training curricula, bulletins, memos, orders, instructions, customs,

The Geddes Law Firm, P.C.,
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

31

usages, patterns and practices.

133.    Defendants breached these enforceable promises and statutory regulations when they terminated ENOS from his employment, without just cause, as described herein, and the reasons supplied by Defendants for terminating ENOS did not amount to just cause to terminate ENOS' employment, including for all the reasons described herein.

134.    Defendants further breached these enforceable promises and statutory regulations, when they failed to provide ENOS with advance due process under NJDC Regulation, § 7.0 *et seq.*, as described herein.

135.    ENOS fulfilled his obligations under the employment contract and statutory regulations, or he was otherwise excused from performance of any such obligations.

136.    As a result of Defendants' breach of obligations, enforceable promises, contract, and statutory regulations, and as a result of Defendants' wrongful termination of ENOS, ENOS has sustained damages, including lost employment income and benefits, in an amount to be proven at trial.

137.    As a further direct and proximate result of Defendants' breach of obligations, enforceable promises, contract, and statutory regulations, and as a result of Defendants' wrongful termination of ENOS, ENOS has had to retain the services of attorneys in this matter, and he therefore, seeks reimbursement for attorney's fees and costs.

### IX.

### FIFTH CLAIM FOR RELIEF

**Breach of Covenant of Good Faith and Fair Dealing (Bad Faith) |
And Tortious Breach of Covenant of Good Faith and Fair Dealing**

(Asserted against all Defendants)

138.    ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

139.    At all relevant times hereto, ENOS' employment position of Senior Probation Officer at the Juvenile Probation Department was a "classified position," as confirmed by the NJDC Regulations, including NJDC § 3.41.  As such, ENOS was not an at-will employee who could be terminated from his employment without notice, cause, or hearing, as confirmed by NJDC Regulations, including NJDC

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

32

Regulations, §§ 3.42 and 7.0 *et seq.* Accordingly, ENOS had a legitimate expectation of continued employment, and he could only be terminated for just cause stemming from employee misconduct. As well, ENOS had a legitimate expectation of receiving proper due process before he was terminated, including that expectation secured by and based upon NJDC Regulation, § 7.0 *et seq.*

140.  At all relevant times hereto, Defendants sued in this claim for relief made binding, enforceable promises to ENOS, including in their statutory regulations, that ENOS would not be terminated without "good cause," and that he would receive the requisite due process afforded under NJDC Regulations, §§ 7.0 *et seq.*

141.  At all relevant times hereto, these binding and enforceable promises made by Defendants to ENOS included those made in Douglas County Ordinances, including DCO No. 2000-907, at § I, § 2.02.030(39)(b); DCO No. 2004-1085, at § I, § 2.02.030(40)(b); and DCO No. 2007-1200, at § I, § 2.02.030(OO)(2); NJDC Regulations §§ 3.42, 7.0 *et seq.*, as well as those promises made in, and/or arising from, Defendants' policies, agreements, promises, contracts, employee handbooks, manuals, training curricula, bulletins, memos, orders, instructions, customs, usages, patterns and practices.

142.  Under this these binding and enforceable promises, employment contract, and statutory regulations, a duty of good faith and fair dealing was imposed upon Defendants.

143.  ENOS developed a relationship of trust, reliance, and dependence with Defendants, who were in a superior or entrusted position, relating to ENOS' employment and the policies and procedures relating to the same.

144.  PLAINTIFF performed, or was otherwise excused from performance of, his obligations under the binding and enforceable promises, employment contract, and statutory regulations, described herein.

145.  Defendants breached their covenant of good faith and fair dealing to ENOS, and tortiously so, by terminating him without just cause and without requisite due process, including under a bad-faith pretext, and further, by engaging in misconduct against ENOS in a manner that was unfaithful to the purpose of the binding and enforceable promises, employment contract, and statutory regulations, as described herein, and the justified expectations of ENOS were, thus, denied, including

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

33

1   by the tortious and wrongful conduct, described herein, committed by Defendants, as described herein.

2   146.   As a result of these tortious breaches of the covenant of good faith and fair dealing, by

3   Defendants, ENOS was terminated from his employment, and suffered injury, harm, and damages,

4   including, loss of income, mental anguish, emotional distress, and other special, consequential damages

5   and losses, arising from such breaches, in an amount to be proven at trial.

6   147.   As a further result of these breaches of the covenant of good faith and fair dealing by

7   Defendants, ENOS has had to retain the services of attorneys in this matter, and he therefore, seeks

8   reimbursement for attorney's fees and costs.

9   **X.**

10   ***RESPONDEAT SUPERIOR LIABILITY*** [1]
**(Asserted against Defendants COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and DOE BUSINESS ENTITIES 1-10)**

11   (Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment by Defendants SHICK, and DOE INDIVIDUALS 1-50)

14   148.   ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully

15   set forth herein.

16   149.   On information and belief, at all relevant times herein, Defendants SHICK and DOE

17   INDIVIDUALS 1-50, and each of them, were under the control of their respective employers, including

18   Defendants COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and DOE BUSINESS

19   ENTITIES 1-10.

20   150.   On information and belief, at all relevant times herein, the acts of Defendants SHICK

21   and DOE INDIVIDUALS 1-50, and each of them, complained of herein, were culpable and caused

22   injury and harm to ENOS, as alleged herein.

23   / / /

---

25   [1] Strictly speaking *Respondeat Superior* is not considered to be a "cause of action" or "claim for relief" but a
26   method of assigning liability to an employer for the conduct of its employees. *See Fernandez v. Penske Truck Leasing Co., L.P.*, 2012 WL 1832571, 1 (D.Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D.Nev. 2011)).  Accordingly, this
27   section for *Respondeat Superior* is not labeled as a claim for relief, but it seeks to assign liability to Defendants the COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and DOE BUSINESS ENTITIES 1-10, vicariously, for the
28   acts of their employees, including Defendants SHICK and DOE INDIVIDUALS 1-50.

The Geddes Law Firm, P.C.,
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

151.    On information and belief, at all relevant times herein, the culpable and injurious acts of Defendants SHICK and DOE INDIVIDUALS 1-50, and each of them, occurred when they, were under the control of their respective employers, Defendants COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and DOE BUSINESS ENTITIES 1-10, and such acts by these employees, occurred within the course and scope of their employment.

152.    On information and belief, based on the foregoing, ENOS is entitled to invoke the doctrine of *Respondeat Superior* to impose vicarious liability on Defendants COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and DOE BUSINESS ENTITIES 1-10, as the respective employers of Defendants SHICK, and DOE INDIVIDUALS 1-50, for the culpable conduct of these employees, occurring within the course and scope of their employment.

## XI.

### SIXTH CLAIM FOR RELIEF

### Declaratory Relief

(Asserted against all Defendants)

153.    ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

154.    Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. §§ 2000e-5, NRS 30.070, NRS 30.100, NRS 613.333, and the Court's inherent equitable powers, ENOS seeks, and is entitled to have, declaratory relief awarded in his favor, to declare his rights and obligations of the Defendants sued herein, which matters are now in controversy or dispute, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below, including declaratory relief whereby the Court issues a declaration that Defendants unlawfully discriminated, harassed, and retaliated against ENOS, under the ADA, and otherwise violated ENOS' rights under federal Law and state law, as alleged herein, and regarding the rights and obligations arising of the parties, relating to ENOS' employment and re-employment.

/ / /

/ / /

/ / /

The Geddes Law Firm, P.C.,
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

## XII.

## FOURTEENTH CLAIM FOR RELIEF

### Injunctive Relief

(Asserted against all Defendants)

155.   ENOS incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

156.   Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 65, 42 U.S.C. §§ 2000e-5, and NRS 33.010 *et seq.*, and the Court's inherent equitable powers, ENOS is entitled to have injunctive relief awarded in his favor, as such relief or any part thereof consists in restraining the commission or continuance of the acts complained of, perpetually, and to compel the obligations of the Defendants sued herein to give effect to the declaratory and other relief awarded by the Court in this action, where such injunctive relief is necessary and proper to the resolution of the disputes raised herein, including as specifically prayed for below.   Such injunctive relief would include ENOS' reinstatement to his prior employment position, as if never terminated.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, ENOS prays for judgment against Defendants, jointly and severally, as follows:

1. For equitable relief, including back pay and front pay;

2. For general, compensatory damages on all claims, in an amount to be proven at trial;

3. For special, compensatory damages on all claims, in an amount to be proven at trial;

4. For past and future compensatory damages, including incidental and consequential losses, incurred by reason of Defendants' acts, omissions, carelessness, negligence, deliberate indifference, and other culpable conduct described herein, in an amount to be proven at trial;

5. For exemplary and punitive damages, as allowed by law, against Defendants in their individual capacities;

6. For costs of the suit incurred herein;

7. For attorneys' fees, costs and prejudgment interest, as allowed by law;

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

8.  For experts' fees, costs as allowed by law, in an amount in an amount to be determined at trial;

9.  For Declaratory relief, equitably determined by the Court at trial;

10. For Injunctive relief, equitably determined by the Court at trial, including but not limited to, ENOS' reinstatement back to his employment position at the Juvenile Probation Department, as before, with all benefits restored and accumulated, as if never terminated;

11. For such other relief as the Court may deem just and proper; and

12. Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by jury on all issues triable by right of a jury.

Dated this 13th Day of February, 2017.

THE GEDDES LAW FIRM, P.C.

WILLIAM J. GEDDES
Nevada Bar Number 6984
The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
(775) 853-9455

*Attorneys for Plaintiff John Enos*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455