Katherine F. Parks, Esq. - State Bar No. 6227
Thorndal Armstrong Delk Balkenbush & Eisinger
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
kfp@thorndal.com
Attorneys for Defendants
DOUGLAS COUNTY, SCOTT SHICK, AND
VICTORIA SAUER-LAMB

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHN ENOS, an individual,

Plaintiff,

vs.

DOUGLAS COUNTY, a political subdivision of the State of Nevada; SCOTT SHICK, Chief Juvenile Probation Officer of the Juvenile Probation Department; VICTORIA SAUER-LAMB, Supervisor of the Juvenile Probation Department; DOE GOVERNMENTAL ENTITIES 1-10; DOE BUSINESS ENTITIES 1-10; and DOE INDIVIDUALS 4-50,

Defendants.

CASE NO. 3:17-cv-00095-MMD-CBC

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW Defendants, DOUGLAS COUNTY, SCOTT SHICK, and VICTORIA SAUER-LAMB, by and through their attorneys, Thorndal Armstrong Delk Balkenbush & Eisinger, and pursuant to FRCP 56, hereby seek partial summary judgment in their favor as to the claims discussed herein insofar as there are no genuine issues of material fact and the Defendants are entitled to judgment in their favor as a matter of law.

/ / /

/ / /

This motion is made and based upon the memorandum of points and authorities filed herewith, all exhibits attached hereto, and all pleadings and papers filed herein.

DATED this 12th day of July, 2019.

THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

By: ***/ s / Katherine F. Parks***
Katherine F. Parks, Esq.
State Bar No. 6227
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882

Attorneys for Defendants
DOUGLAS COUNTY, SCOTT SHICK, AND
VICTORIA SAUER-LAMB

Katherine F. Parks, Esq. - State Bar No. 6227
Thorndal Armstrong Delk Balkenbush & Eisinger
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882
kfp@thorndal.com
Attorneys for Defendants
DOUGLAS COUNTY, SCOTT SHICK, AND
VICTORIA SAUER-LAMB

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN ENOS, an individual,<br>Plaintiff,<br>vs.<br>DOUGLAS COUNTY, a political subdivision of the State of Nevada; SCOTT SHICK, Chief Juvenile Probation Officer of the Juvenile Probation Department; VICTORIA SAUER-LAMB, Supervisor of the Juvenile Probation Department; DOE GOVERNMENTAL ENTITIES 1-10; DOE BUSINESS ENTITIES 1-10; and DOE INDIVIDUALS 4-50,<br>Defendants. | CASE NO. 3:17-cv-00095-MMD-CBC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**I**

**INTRODUCTION**

This case arises out of Plaintiff John Enos's separation from employment with Douglas County as a juvenile probation officer on February 19, 2015. Enos was relieved of his position effective February 19, 2015, after he had exhausted all available leave, including that provided under the Family Medical Leave Act, and was unable to physically perform the essential functions and physical functions of the position. Enos initially filed suit in this Court on January 16, 2018. [ECF No. 1]. The State of Nevada was named as a defendant in the initial complaint

based upon the fact that the Juvenile Probation Department in Douglas County falls under the jurisdiction of the Ninth Judicial District Court. The State moved to dismiss on sovereign immunity grounds, after which Enos amended his complaint to name Judge Nathan Tod Young and Judge Michael Gibbons as party defendants. [ECF No. 48]. The State and Judge Young and Judge Gibbons were dismissed from the case and, on January 16, 2018, Enos filed a third amended complaint. [ECF No. 62]. It is the third amended complaint which is the operative pleading.

The Defendants move to dismiss Enos's first claim for relief premised upon the Americans with Disabilities Act and the fifth claim for relief for breach of the covenant of good faith and fair dealing in accordance with FRCP 56. In addition, Defendants seek the dismissal of Defendant Victoria Sauer-Lamb as to all of the claims for relief in the third amended complaint.

## II

## STATEMENT OF FACTS

1. Plaintiff John Enos was employed as a juvenile probation officer in the Juvenile Probation Department operating in the Ninth Judicial District Court from June 13, 1998, through February 19, 2015. *See,* Third Amended Complaint, ECF No. 62, ¶14.

2. Enos served in the position of Senior Juvenile Probation Officer from approximately June of 2002, to February 19, 2015. *Id.* The job description for Senior Juvenile Probation Officer in place during Enos's tenure of employment included a list of essential functions of the job and a list of physical demands. *See,* Exhibit 1, Job Description, Juvenile Probation Officer – Senior; *see also,* Exhibit 2, deposition of John Enos, pp. 102-103. The essential functions of the job of Senior Juvenile Probation Officer include, but are not limited to, the following: (1) Supervises a case load of juvenile offenders, periodically visits juvenile probationer's home, conducts weapons and contraband searches and drug testing, enforces adherence to court ordered

conditions of probation; (2) arrests probation violators; (3) applies behavior modification techniques; and (4) arrests, detains and transports probationers who have violated court orders. *See,* Exhibit 1, p. 1. Candidates for the position of Senior Juvenile Probation Officer are also advised that the physical demands described in the job description are representative of those that must be met by an employee to successfully perform the essential functions of the job. Specifically, candidates for this position are advised as follows: While performing the duties of this job, the employee is regularly required to stand, walk, sit and drive, use hands to finger, handle, or feel; reach with hands and arms; talk and hear. The employee occasionally is required to climb, balance and stoop, kneel, crouch, or crawl and must frequently lift and/or carry up to 50 pounds. Specific vision abilities required by this job include close vision, distance vision, color vision, peripheral vision, depth perception, and ability to adjust focus. *Id.* at p. 3. Lastly, candidates are advised that the working environment experienced in this position includes exposure to hazardous situations and the physical ability to subdue argumentative individuals. *Id.* Successful candidates for the position are also required to be POST certified. *Id.*

3. The job description for the position of Chief Deputy Juvenile Probation Officer contains similar essential job functions and physical demands. *See,* Exhibit 3, Job Description, Chief Deputy Juvenile Probation Officer; *see also,* Exhibit 4, Affidavit of Wendy Lang. Specifically, the job description for Chief Deputy Juvenile Probation Officer includes the following relevant essential functions: (1) conducts investigations of alleged probation violators and arrests or causes arrest of violators and (2) performs duties of a Juvenile Probation Officer as required. *See,* Exhibit 3, p. 1. The job description for this position also requires a successful candidate to be POST certified. *Id.* at p. 2-3. The physical demands of the position include all of the following: Traverse difficult terrain, strength and stamina to physically restrain suspects, running, climbing, standing, squatting and sitting for prolonged periods of time; occasionally lift

and carry up to 50 pounds, strength to subdue persons, to drag, carry and lift persons and objects; vision to read printed materials and a computer screen; and hearing and speech to communicate in person or over the telephone, vision to read printed materials; exposure to traffic conditions and external environment when traveling from one office to another; dexterity to write and to shoot a gun. *Id.* at p. 3.

4. During Enos's tenure with the Juvenile Probation Department, the position of Chief Deputy Juvenile Probation Officer became available only once in 2003. *See,* Exhibit 2, deposition of John Enos, p. 104. Enos did not apply for the position of Chief Deputy Juvenile Probation Officer in 2003 and Defendant Victoria Sauer-Lamb became the Chief Deputy in 2003. *Id.* Ms. Sauer-Lamb retired from the position of Chief Deputy Juvenile Probation Officer in July of 2015. *Id.* at 105.

5. The job description for Youth Detention Counselor for Douglas County included as an essential function that a successful applicant be able to restrain juveniles, as needed, using approved physical and mechanical restraint methods and the physical requirements including the ability to lift and carry up to 50 pounds and the agility to subdue and restrain juveniles. *See,* Exhibit 5, Job Description, Youth Detention Counselor, p. 1 and p. 3; *see also,* Exhibit 4, Affidavit of Wendy Lang.

6. The job description for Library Technician included a requirement that the successful applicant have the strength and ability to lift and carry up to 50 pounds. *See,* Exhibit 6, Job Description, Library Technician; *see also,* Exhibit 4, Affidavit of Wendy Lang. The Library Technician position is a position covered by the collective bargaining agreement in place between Douglas County and the Douglas County Employees Association. *Id; see also,* Exhibit 7, deposition of Justina Caviglia, pp. 93-94, 119-120, 233.

7. Enos sustained an on the job injury on June 21, 2013, during a work-related wilderness trip. *See,* Exhibit 8, Notice of Injury or Occupational Disease (telephone number redacted); *see also*, Exhibit 2, deposition of John Enos, pp. 40-41. Enos was injured when a tree branch onto which a juvenile had climbed broke causing the tree branch and the juvenile to fall on top of him. *Id.* at 40. Enos sustained injuries to his neck and back, arms and legs, and right wrist as a result of that incident. *See,* Exhibit 8. According to Enos, he was advised after the incident that he sustained soft tissue damage in all regions of his back, along with a sprained right wrist. *See*, Exhibit 2, deposition of John Enos, pp. 40-41. The injury to Enos's right wrist was eventually determined to include a torn scapholunate ligament. *Id.* at p. 41.

8. Enos made a claim for industrial insurance benefits in connection with the on the job injury of June 21, 2013, and the claim was accepted by Douglas County's insurer, Public Agency Compensation Trust. *See,* Exhibit 9, Notice of Claim Acceptance dated July 10, 2013 (personal information in the form of Plaintiff's address redacted).

9. Enos had a total of three surgeries to attempt to address the injury to his right wrist. *See*, Exhibit 2, deposition of John Enos, p. 41. The first surgery took place on February 18, 2014. *Id.* at 206. This initial surgery was performed by Dr. David Eisenhauer of Tahoe Fracture and Orthopedic Clinic and the surgery included the following procedures: (1) scapholunate association with cannulated screw; i.e. SLIC screw procedure; (2) Capsullodesis, right wrist; (3) Physician-directed fluoroscopy less than 1 hour; and (4) Neurectomy, posterior interosseous nerve, right wrist. *See,* Exhibit 10, Operative Report; *see also*, Exhibit 2, deposition of John Enos, p. 206. The surgery included the implantation of a number of screws in Enos's right wrist. *See,* Exhibit 10.

10. Following Enos's on the job injury of June 21, 2013, Enos was subject to physical restrictions imposed on him by Dr. Eisenhauer due to his wrist injury. *See*, Exhibit 2, deposition

of John Enos, p. 44; *see also,* Exhibit 11, work excuses dated February 28, 2014, March 7, 2014, and April 2, 2014.

11. Enos was also followed at Carson Valley Medical Center by Kara Cole, A.P.N. relative to his back and neck injuries. *See*, Exhibit 2, deposition of John Enos, pp. 41-42.

12. Enos sustained a second on the job injury on June 17, 2014, when he confronted a combative juvenile who was awaiting a court appearance. *See*, Exhibit 12, Notice of Injury or Occupational Disease dated June 17, 2014 (telephone number redacted). This incident occurred in the offices of the Juvenile Probation Department. *See*, Exhibit 13, Enos's statement re: incident (redacted of the name of the juvenile offender involved in the incident); *see also,* Exhibit 2, deposition of John Enos, pp. 47, 51-52. The incident did not occur while Enos was transporting the juvenile to court. *Id.* The incident occurred when Enos opened the door to the detention cell located in the Juvenile Probation Office after the juvenile became verbally combative. *Id.* at pp. 57 and 59. It ultimately took two additional juvenile probation officers to subdue the juvenile. *Id.*

13. Enos sustained injuries as a result of the June 17, 2014, incident which included injuries to his face, ribs, shoulders, both wrists, and his neck and back. *See,* Exhibit 11.

14. Enos made a claim for industrial insurance benefits following the incident of June 17, 2014, and his claim was accepted by Douglas County's insurance carrier, Public Agency Insurance Pool. *See,* Exhibit 14, Notice of Claim Acceptance (Plaintiff's address redacted); *see also,* Exhibit 15, deposition of Karen Barbee, p. 32.

15. Enos was treated by a number of medical care providers following the incident of June 17, 2014, including Dr. Carol Coats at Carson Valley Medical Center, Dr. Eisenhauer, Dr. Patricia Morales at Specialty Health, Dr. Peter Costa, Dr. Michael Fry and Dr. Paul Fry at Tahoe Fracture & Orthopedic, Dr. James Christensen at Reno Orthopedic Group, and Dr. Dalin

DeMordaunt at Sierra Neurosurgery Group. *See*, Exhibit 2, deposition of John Enos, pp. 62-69; 205-206; *see also*, Exhibit 16, letter from Karen Barbee to John Enos dated August 6, 2014 (Plaintiff's address redacted). On January 23, 2015, Enos's attorney in one of his worker's compensation cases requested that the County's insurer's third party administrator authorize a change in physicians to allow Enos to be treated by Dr. Morales for injuries to both of his shoulders. *See*, Exhibit 17, letter from James McCarty to Karen Barbee.

16. On July 17, 2014, Enos was offered a light duty position at the juvenile detention facility located in Stateline, Nevada. *See*, Exhibit 18, memorandum from Scott Shick to John Enos; *see also*, Exhibit 2, deposition of John Enos, p. 137-138; 139-141; *see also*, Exhibit 19, deposition of Scott Shick, pp. 130, 136-139. Enos testified that he voiced his concern to Scott Shick, Chief Probation Officer for the Ninth Judicial District Court, that it would be unsafe for him to be assigned to the detention center due to his possible interaction with "volatile" juveniles. *See*, Exhibit 2, deposition of John Enos, p. 138 and 143. He then testified that he was further informed by Mr. Shick *not* to report to the detention center because there were no juveniles in the facility. *Id.* at p. 139. The juvenile detention center at Stateline is attached to the Stateline substation of the Douglas County Sheriff's Office. *Id.* at p. 140. It also has a locked and secure control room. *Id.* at 141. Mr. Shick testified as to his belief that the detention center assignment was the best place for Enos given his light duty status. *See*, Exhibit 19, p. 136. According to Mr. Shick, Enos worked well with the juveniles and the light duty detention assignment was intended to make good use of his experience and capacity to counsel the juveniles. *Id.* at 138-139. In addition to being attached to the Stateline substation, a supervisor and line staff employee with the Juvenile Probation Department was also located at the detention center on every shift. *Id.* at 137; *see also*, Exhibit 2, deposition of John Enos, p 140. According to Mr. Shick, Enos rejected the assignment. *See*, Exhibit 19, deposition of Scott Shick, p. 143.

Enos denies that was the case. There would have been no reduction in Enos's salary or benefits with respect to this light duty assignment. *See,* Exhibit 2, deposition of John Enos, p. 141.

17. Enos had a second surgery on his right wrist on October 21, 2014. *See,* Exhibit 20 operative report dated October 21, 2014. Dr. Eisenhauer described his pre-operative diagnosis as "failure of hardware, right wrist with subsequent posttraumatic arthosis." *Id.* This second surgery included the following procedures: (1) removal of deep orthopedic hardware, right wrist; (2) scaphoid excision with 4-corner arthrodesis; (3) physician directed fluoroscopy less than 1 hour; and (3) extended physician services. *Id; see also,* Exhibit 2, deposition of John Enos, p. 208.

18. Enos did not work for Douglas County or the Juvenile Probation Department after the surgery of October 21, 2014. *See,* Exhibit 2, deposition of John Enos, p. 181.

19. Enos had a third surgery on January 15, 2015. *See,* Exhibit 21, operative report dated January 15, 2015; *see also,* Exhibit 2, deposition of John Enos, pp. 208-209. Enos's third right wrist surgery was also performed by Dr. Eisenhauer. *See,* Exhibit 21.

20. Following the October 21, 2014, surgery and the January 15, 2015, surgery, Dr. Eisenhauer imposed additional physical restrictions on Enos. *See,* Exhibit 22, Work/School Excuses. On December 10, 2014, Dr. Eisenhauer advised that Enos would be off work until further notice. *Id.* at p. 1 (bate-stamp numbered PLF-00485). On January 28, 2015, Dr. Eisenhauer advised that Enos could return to work light duty for a period of three weeks with no lifting more than 10 pounds with his right upper extremity. *Id.* at p. 4 (bate-stamp numbered PLF-00524). On February 18, 2015, a work release with no restrictions was sent via facsimile to Douglas County. *Id.* at p. 5 (bate-stamp numbered PLF-00667); *see also,* Exhibit 2, deposition of John Enos, p. 202. On February 28, 2014, however, Dr. Eisenhauer advised that Enos was to

be off work entirely until March 10, 2014, with no use of his right hand or wrist. *See*, Exhibit 22 at p. 6 (bate-stamp numbered PLF-00339).

21. Enos treated with Dr. Morales for his shoulder injuries on January 20, 2015. *See,* Exhibit 2, deposition of John Enos, p. 194. Dr. Morales advised Enos that she recommended that he have surgery on both of his shoulders. *Id.* at p. 67-68, 195. Dr. Morales also reported her recommendations in regard to the need for surgery on both of Enos's shoulders to Karen Barbee, the claims adjuster handling Enos's worker's compensation claims on behalf of Public Agency Insurance Trust. *See,* Exhibit 23, notes to Karen Barbee. Enos testified that Dr. Morales informed him that he had "tears" in both of his shoulders and that the condition of his left shoulder was "so bad" that she wanted to move forward to schedule surgery on his left shoulder for February 18, 2015. *See*, Exhibit 2, deposition of John Enos at 67. Enos further testified that Dr. Morales advised him "out of the blue" that the surgery on his left shoulder needed to be postponed because she wanted him to lose 10 pounds before the surgery was performed. *Id.* at 199.

22. On January 20, 2015, Dr. Morales imposed light duty work restrictions on Enos which included no lifting, pushing or pulling with his shoulders and no above-shoulder lifting. *See,* Exhibit 24, Return to Work slip dated January 20, 2015 (date of birth redacted). Dr. Morales further advised in this work excuse that Enos's condition was "pending surgery." *Id.*

23. Enos saw Dr. Morales again on February 5, 2015. *See*, Exhibit 25, Return to Work slip dated February 5, 2015 (date of birth redacted); *see also*, Exhibit 2, deposition of John Enos, p, 198. In connection with this appointment, Dr. Morales provided Enos with another work excuse which advised that Enos was to have surgery on his left shoulder on February 18, 2015, that he would be totally temporarily disabled after that date and that he could not engage in any lifting, pushing or pulling or any above-shoulder lifting. *See*, Exhibit 25.

24. Despite the fact that Dr. Morales advised Enos and Douglas County's insurance carrier that Enos was to have strict lifting restrictions and bilateral shoulder surgery, on February 17, 2015, another work slip was apparently completed which indicated that Enos could return to light duty with restrictions that included no pushing or pulling above 50 pounds and no overhead lifting above 35 pounds. *See*, Exhibit 26, Return to Work slip dated February 17, 2015 (date of birth redacted). Dr. Morales imposed similar restrictions on February 24, 2015, which included the restriction that Enos could not engage in any overhead lifting in excess of 35 pounds. *See*, Exhibit 27, Return to Work slip dated February 24, 2015 (date of birth redacted).

25. On March 6, 2015, Enos saw Dr. Eisenhauer. *See*, Exhibit 28, medical records dated March 6, 2015 (date of birth and patient identification number redacted). These treatment notes state that, on January 28, 2015, Dr. Eisenhauer imposed lifting restrictions of no more than 10 pounds but that Enos subsequently called him on February 18, 2015, and Enos was released, at his request, for a "trial of full duty." *Id.* at p. 1. Dr. Eisinhauer further noted that, during the visit of March 6, 2015, Enos reported that he had been unable to perform full work duty due to the "extremes of wrist motion" needed, as well as the "heavy lifting" required by his job. *Id.* Dr. Eisenhauer opined in his medical report of March 6, 2015, that, based upon the job description for juvenile probation officer, Enos was unable to perform the essential functions of his job. *Id.* at p. 2. Dr. Eisenhauer elaborated and stated the following:

> "Specifically, under the physical demands and the working environment section, specifically he likely will not have the ability to subdue argumentative individuals. He may not effectively be able to use his wrist for climbing, crawling, or lifting 50 pounds. Therefore, based on John's job description, I believe to a reasonable degree of medical certainty that the patient likely will no longer be able to perform his job as a juvenile probation officer. Of course, I cannot speak to any limitations that he may have moving forward with his shoulders either."

*Id.*

26. Thereafter, on April 2, 2014, Dr. Morales issued additional work restrictions related to Enos's back injuries, including noting that Enos was unable to lift greater than 20 pounds and kneel, climb, or run. *See*, Exhibit 29, Return to Work slip dated April 2, 2015 (personal information redacted).

27. On February 13, 2015, Enos was advised that his available leave under the Family Medical Leave Act had expired on January 21, 2015. *See*, Exhibit 30, letter from Norma Santoyo to John Enos dated February 13, 2015 (address information redacted); *see also*, Exhibit 31, deposition of Norma Santoyo, pp. 136-137. Enos was instructed to return to work with a medical release on February 17, 2015. *See*, Exhibit 31. Enos met with Human Resources on February 17, 2015, and, among other things, requested an additional leave of absence. *See*, Exhibit 32, handwritten letter dated February 17, 2015 (address information redacted). On February 19, 2015, Enos was advised that his request for additional leave of absence was denied. *See*, Exhibit 33, letter from Scott Shick to John Enos dated February 19, 2015 (address information redacted). On February 20, 2015, Enos was informed that his employment with Douglas County was terminated. *See*, Exhibit 34, Letter from Scott Shick to John Enos dated February 20, 2015 (address information redacted).

28. On February 17, 2015, Enos applied for medical disability benefits through the Public Employees' Retirement System of Nevada (PERS). *See*, Exhibit 2, deposition of John Enos, p. 153. In connection with Enos's application, PERS had a Board Consulting Physician, Dr. B. Alan Bottenberg, review certain of Enos's treatment records, including the report of Dr. Eisenhauer dated March 6, 2015. *See*, Exhibit 35, letter from B. Bottenberg to PERS dated March 13, 2015. Following his review, Dr. Bottenberg concluded that, due to the physical demands of the juvenile probation officer position, he did not believe that Enos's medical condition would improve to the point where he could return to perform the duties of his job. *Id.*

As a result, he recommended that the Board approve Enos's application for disability retirement and that Enos be found to be permanently and totally disabled from being a juvenile probation officer. *Id.*

29. As part of the application process for medical disability benefits, Enos directly provided information to PERS about his physical limitations and how they prevented him from performing what were essential functions of his job. Specifically, Enos reported the following information to PERS:

> "The most critical of the highlighted job duties I am unable to perform as a senior juvenile probation officer are arresting, detaining and transporting probationers who have violated court orders, performing booking and intake duties, and requiring physical ability to subdue argumentative individuals."

*See*, Exhibit 36, Employee Report section of application dated March 10, 2015 (social security number and date of birth redacted); *see also*, Exhibit 2, deposition of John Enos, pp. 153-155. In addition to making the general statement noted above regarding his inability to perform the essential and physical functions of the job of juvenile probation officer – senior, Enos highlighted the specific essential functions he was no longer able to perform. *See,* Exhibit 37; *see also*, Exhibit 2, deposition of John Enos, 154-155. According to Enos, he was unable to perform all of the following essential functions of the job of juvenile probation officer: Supervise a case load of juvenile offenders, visit juvenile probationer's homes, conduct weapons and contraband searches and drug testing, enforce adherence to court ordered conditions of probation, counsel and advise juveniles and family regarding pertinent personal, educational, financial, vocational and health matters, apply behavior modification techniques, supervise various programs, and arrest, detain and transport probationers. *See,* Exhibit 37. Enos also set forth those physical requirements he could no longer perform, including use his hands to handle, climb, crawl or lift items. *Id.* at p. 3.

30. On April 16, 2015, Enos was advised that his medical disability retirement application was approved. *See,* Exhibit 38, letter from PERS to John Enos dated April 16, 2015 (address information redacted); *see also,* Exhibit 2, deposition of John Enos, pp. 156-157.

31. Enos underwent several independent medical examinations in connection with this worker's compensation claims. On February 16, 2016, Enos underwent a permanent partial disability evaluation by Dr. Jay Betz in connection with Enos's claim arising out of the June 21, 2013, industrial injury. *See,* Exhibit 39, letter from Karen Barbee to John Enos (address information redacted). Based upon the results of Dr. Betz's PPD evaluation, Enos was determined to have a 32% whole person impairment relative to that claim. *Id.* Dr. Betz also evaluated Enos on February 16, 2016, relative to Enos's claim arising out of the June 17, 2014, industrial injury. *See,* Exhibit 40, letter from Karen Barbee to John Enos (address information redacted). Based upon the results of Dr. Betz's PPD evaluation, Enos was determined to have an 8% whole person impairment relative to that claim. *Id.*

32. Enos's industrial insurance benefits included vocational rehabilitation benefits under Chapter 616C of the Nevada Revised Statutes. On April 5, 2016, Enos's vocational rehabilitation counselor, Edward Howden, sent correspondence to Douglas County inquiring about the ability of the County to reemploy or reassign Enos to a position which fit within his permanent physical restrictions. *See*, Exhibit 41, letter to Douglas County from Ed Howden dated April 5, 2016. In this correspondence, Mr. Howden referenced NRS NRS 616C.590 and the requirements that any offer of reemployment meet the following criteria: (a) It must not be demeaning, degrading, or subject the employee to ridicule or embarrassment; (b) It must provide a gross wage that is equal to or greater than 80 percent of the gross wage that the employee was earning at the time of his injury; (c) The job must be within physical limitations (ability) of the employee; (d) There must be reasonable prospect of continued employment (the only exception

is that if the employee was injured while working for an employer who provides temporary services, then temporary rather than permanent employment can be offered); and (e) The position must have the same employment benefits as the position of the employee at the time of his injury. *Id.* at p. 2. Dr. Howden further advised Douglas County in his letter that, in the event the County was unable to offer such reemployment, Enos may be entitled to vocational rehabilitation benefits. *Id.*

33. Douglas County did not have an available position in which to reemploy Enos which fit within the requirements set forth by Mr. Howden in his letter of April 5, 2016. Douglas County so advised Mr. Howden in writing on May 2, 2016. *See*, Exhibit 42, Intent to Offer Employment form. Douglas County's inability to reemploy Enos in a position which fit within his physical limitations and the requirements of NRS NRS 616C.590 triggered Enos's right to additional vocational rehabilitation benefits.

34. In accordance with his vocational rehabilitation benefits, Enos entered into a training agreement which included an eleven month college program intended to provide him with a certificate in criminal justice. *See,* Exhibit 43, School Program Agreement. Enos signed his School Program Agreement on November 19, 2016. *Id.* at p. 2. Enos's school program was to commence on January 23, 2017, and end on December 20, 2017. *Id.* Enos completed his training for a criminal justice certificate from Western Nevada Community College through this vocational rehabilitation program paid under Douglas County's industrial insurance policy. *See,* Exhibit 44, letter from Western Nevada Community College; *see also*, Exhibit 2, deposition of John Enos, pp. 90-95. At the time of his deposition on April 18, 2019, Enos was seeking to be approved for additional college courses for a period in excess of 18 months under his worker's compensation claims. *Id.* at p. 93. Such benefits are available where an employer has no position in which to reemploy an injured worker. *See*, NRS 616C.590.

35. On January 6, 2017, Enos applied for a juvenile probation officer position with Douglas County. *See*, Exhibit 45, Employment Application (personal information redacted). The job description applicable to the juvenile probation officer position for which Enos applied in January 6, 2017, contained the same essential functions and physical requirements as did the position he held in February of 2015. *See*, Exhibit 46. Notably, the job description for the juvenile probation officer position for which Enos applied in January of 2017, required a successful applicant to be able to arrest, detain and transport petitioners, the ability to lift and carry up to 50 pounds, strength to subdue persons and to drag, carry and lift persons. *Id.*

## III

## LEGAL ANALYSIS

### I. STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is always proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251, 106 S.Ct. 2505 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial." *Anderson*, 477 U.S. at 248. Further, the opposing party cannot rest on mere allegations of facts, without "any significant probative evidence tending to support the complaint." *Id.*, 477 U.S. at 249. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.*, at 249-50. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in favor of that party. *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S., 253, 288-289, 88 S.Ct. 1575, 1592 (1968).

## II. DOUGLAS COUNTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO ENOS'S CLAIM PREMISED ON THE AMERICANS WITH DISABILITIES ACT.

In his third amended complaint, Enos attempts to make out three distinct claims premised upon alleged disability discrimination. Specifically, Enos contends that the County discriminated against him at the time of his separation from employment with the County in February of 2015, that the County discriminated against him by failing to interact with, or re-hire him, in April of 2016, and by failing to interact with, or re-hire him, in January of 2017, when he applied for an open juvenile probation officer position. Despite the fact that Enos's third amended complaint is nearly 50 pages long, the analysis applicable to Enos's ADA claim is not so complicated. As shall be discussed herein, regardless of the time period at issue, Enos cannot make out a prima facie case for discrimination under the ADA because he could not, during any relevant time period, perform the essential functions of the job of juvenile probation officer.

The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to the hiring, advancement, or discharge of employees, employee compensation, and other terms, conditions and privileges of employment. *See, Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) and 42 U.S.C. §12112(a). A prima facie case under the ADA requires proof of the following: (1) that the plaintiff is a disabled person within the meaning of

the ADA; (2) that the plaintiff is qualified, that is, with or without reasonable accommodation, he is able to perform the essential functions of the job; and (3) he suffered an adverse employment action because of his disability. *See, Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). The ADA defines discrimination as the failure of an employer to make a reasonable accommodation to an otherwise qualified individual with a disability unless the employer can show that the accommodation would impose an undue hardship. *See*, 42 U.S.C. §12112(b)(5)(A). To qualify for protection under the ADA, the employee must have been able to perform the essential functions of his employment at the time of the alleged discrimination. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1105 (9th Cir. 2000).

Enos's ADA claim, no matter how many discrete instances of disability discrimination are alleged in the third amended complaint, is subject to summary judgment for the simple reason that Enos cannot, under the undisputed facts of this case, demonstrate that he was able to perform the essential functions of his job of juvenile probation officer. He cannot demonstrate that he was so able in February of 2015, in April of 2016, or in January of 2017, when he applied for a position with Douglas County which he knew he was unable to physically perform.

In the Ninth Circuit, determining whether someone is qualified is a two part test in which the court first examines whether the individual satisfies the "requisite skill, experience, education and other job-related requirements" of the position. The court then considers whether the individual "can perform the essential functions of such position with or without a reasonable accommodation." *See, Bates v. UPS,* 511 F.3d 974, 990 (9th Cir. 2007). "The burden of proof lies with the plaintiff." *See, Littlefield v. Nev. Ex rel. Dep't of Public Safety*, 195 F. Supp.3d 1147, 1155 (D. Nev. 2016). In terms of the analysis of "essential" job functions, this Court noted that, "essential functions are 'fundamental job duties of the employment position . . . not

inclu[ing] the marginal functions of the position. If a disabled person cannot perform a job's 'essential functions (even with a reasonable accommodation), then the ADA's employment protections do not apply." *Id.* Essential functions have also been described as "basic duties" of a position. *Id.* The ADA provides that, "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *See,* 42 U.S.C. §12111(8); *see also, Littlefield, supra* at 1155.

**i. February, 2015**

As a matter of state law, Enos was employed in, and applied for, a law enforcement position. NRS 289.180(2) provides that, "a juvenile probation officer or assistant juvenile probation officer whose official duties require such officer to enforce court orders on juvenile offenders and make arrests has the same powers as a peace officer when performing duties pursuant to title 5 of NRS or chapter 432B of NRS, including the power to arrest an adult criminal offender encountered in the performance of those duties." The job description for the position of juvenile probation officer – senior, which Enos held as of February, 2015, expressly provides that the essential functions of the job include the arrest, detention and transport of probationers who have violated court orders and enforcing adherence to court ordered conditions of probation. *See,* Exhibit 1, p. 1; *see also,* Exhibit 46, p. 1. Page one of the application for disability retirement benefits completed by Enos on February 17, 2015, expressly notes that the application related to "police and firefighters." *See,* Exhibit 36. That the position once held, and then sought in January of 2017, by Enos is a law enforcement position cannot be seriously disputed.

An obvious law enforcement duty is to provide safety to the public, as well as to other employees of a law enforcement agency and those over whom it exercises authority. As such, the ability to provide safety and security, including the ability to respond without hesitation or limitation in an emergency, is absolutely inherent in such a position. The ability and strength to subdue persons is expressly set forth in the job descriptions at issue and is a matter of safety not only to Enos, but to his fellow juvenile probation officers, the juveniles under the supervision of the Juvenile Probation Department, their families and members of the public. Simply put, the ability to make arrests and to subdue persons are essential functions of the position of juvenile probation officer and Enos is unable to perform them.

Enos cannot seriously contend that he was capable of performing the essential functions of the job of juvenile probation officer – senior – and/or juvenile probation officer. Such a contention would fly in the face of the opinion of Dr. Eisenhauer of March 6, 2015, in which Dr. Eisenhauer stated, to a reasonable degree of medical certainty, that Enos could no longer, due to his right wrist injury, subdue argumentative individuals and perform his job as a juvenile probation officer. *See,* Exhibit 28. While this finding alone constitutes evidence that Enos was unable to perform the essential functions of the job of juvenile probation officer, Dr. Eisenhauer went further, indicating that Enos may not effectively be able to use his wrist for climbing, crawling, or lifting 50 pounds, all of which are physical requirements of the job. *Id.*

Perhaps most telling, however, are the admissions of Enos himself on the subject of his inability to perform the essential functions of his job. First, Enos applied for disability retirement through PERS on February 17, 2015. *See,* Exhibit 36, p. 1. Pursuant to NRS 286.620, a member (i.e. an eligible employee of a public employer) who has five years or more of service credit and who becomes t*otally unable to perform the member's current job or any comparable job* for which the member is qualified by training and experience, because of injury

or mental or physical illness of a *permanent nature* is eligible to apply for disability retirement if all of the statutory criteria are met. *See,* NRS 286.620(1)(a)-(f). Thus, the PERS benefits for which Enos applied on February 17, 2015, are available only to a participating employee who is found to be unable to perform his or her job. In connection with his application for disability retirement benefits, Enos himself articulated to PERS those "critical" job duties he was unable to perform. *See,* Exhibit 36. Specifically, Enos reported the following information to PERS:

> "The most critical of the highlighted job duties I am unable to perform as a senior juvenile probation officer are arresting, detaining and transporting probationers who have violated court orders, performing booking and intake duties, and requiring physical ability to subdue argumentative individuals."

*Id.* Based upon Enos's own representations, he was unable to perform the essential functions of his job. PERS notified Enos that his application for disability retirement was approved on April 15, 2015. Enos continues to receive disability retirement benefits. *See,* Exhibit 2, deposition of John Enos, p. 158. Enos's factual statements as contained in his PERS application, combined with the opinions of Dr. Eisenhauer, are conclusive and compel a finding that Enos is not a qualified individual under the ADA because he was unable to perform the essential functions of his job. *See, Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802, 119 S. Ct. 1597 (1999).

Because Enos was unable to perform the essential functions of his job of senior juvenile probation officer in February of 2015, his ADA claim premised upon his separation from employment fails as a matter of law.

**ii. April, 2016**

To the extent Enos claims that Douglas County discriminated against him in April of 2016, based on the allegation that the County refused to re-hire him, the County is entitled to summary judgment under the ADA. In his third amended complaint, Enos contends that Douglas County refused to re-hire him in April of 2016, "in any available position for which he was qualified." [ECF 62, ¶80]. This allegation is misleading.

Following his separation from employment with Douglas County, Enos continued to seek, and receive, benefits in connection with his worker's compensation claims. Enos was represented by legal counsel, James McCarty, and Douglas County's insurance carrier, through its third party administrator, was responsible for handling Enos's claims. Enos was also receiving vocational rehabilitation counseling from Ed Howden. *See,* Exhibit 41. Vocational rehabilitation benefits under the Nevada Industrial Insurance Act are set forth at NRS 616C.530 through NRS 616C.600. Under NRS 616C.590(1), an injured employee is not eligible for vocational rehabilitation services unless his or her treating physician approves the return of the injured employee to work but imposes ***permanent restrictions*** that prevent the injured employee from returning to the position that the employee held at the time of his or her injury.

On April 5, 2016, Mr. Howden sent correspondence to Douglas County, with a copy to Mr. McCarty and the County's third party administrator. *See*, Exhibit 41. In same, Mr. Howden stated that, based upon physical limitations imposed by his physician, Enos was unable to return to his pre-injury job. *Id.* Mr. Howden further requested that Douglas County consider re-employment of Enos in a "modified position." *Id.* As identified in Mr. Howden's letter, Nevada law imposed specific obligations on Douglas County as to what position could be offered to Enos under the circumstances. *Id.* Specifically, pursuant to NRS 616C.590(b), the County was obligated to offer Enos a position that fell within his physical restrictions, provided a gross wage equal to or greater than 80 percent of the gross wage that the employee was earning at the time of his industrial injury, and had the same employment benefits.[1]

On May 2, 2016, Douglas County advised that it did not have a position to offer Enos which fell within the requirements noted by Mr. Howden. *See,* Exhibit 42. As a result, Enos became eligible for vocational rehabilitation services.

---

[1]Enos was earning $32.60 per hour (minimum 40 hours per week) at the time of his separation from employment. *See,* Exhibit 4, Affidavit of Wendy Lang.

Enos cannot realistically argue that Douglas Count failed to engage in the interactive process with him in April of 2016. Pursuant to the ADA, once an employee requests an accommodation under the ADA, or an employer recognizes the employee needs an accommodation but the employee cannot request it because of a disability, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation. *See, Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). The interactive process requires (1) direct communication between the employer and employee to explore in good faith the possible accommodation; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process. *See*, *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)*; see also, Zivkovic, supra.* at 1089.

In the circumstances at bar, Mr. Howden's letter is not akin to a request by Enos for a reasonable accommodation under the ADA. Enos was represented by legal counsel in connection with his worker's compensation claim(s). *See*, Exhibit 17. Mr. Howden corresponded with Douglas County regarding the potential re-employment of Enos within the framework of NRS 616.590. *See,* Exhibit 41. Re-employment under NRS 616C.590 carries with it obligations regarding job offers to injured employees receiving worker's compensation benefits. *See,* NRS 616C.590(1)(b)(1)-(3). Mr. Howden specifically referenced those requirements in his April 5, 2016, letter to the County. *Id.* Douglas County did not have a job opening which met those requirements and the County believes Enos will offer no evidence to the contrary. As a result of Douglas County's inability to offer Enos re-employment as required by Nevada law, Enos became eligible for, and received, vocational rehabilitation services. Those services included, among other things, retraining in the form of a school program Enos entered

through Western Nevada Community College. *See*, Exhibit 43. "A necessary prerequisite to obtaining vocational rehabilitation is that the 'employer does not offer employment that the employee is eligible for considering the restrictions.'" *See, Amerson v. Clark County*, 995 F. Supp.2d 1155, 1162 (2014)(internal citation omitted).

Here, Douglas County did not fail to interact with Enos at all but, rather, was required to interact with Enos within the parameters of his accepted worker's compensation claim. As such, Enos cannot base any claim of disability discrimination on the failure of Douglas County to either interact with him, or to offer him re-employment, in April of 2016.

**iii. January 6, 2017**

Lastly, Enos contends that Douglas County discriminated against him in violation of the ADA when it failed to hire him for the position of juvenile probation officer in January of 2017. As with any ADA claim premised upon events that occurred in February of 2015, this aspect of Enos's ADA claim is subject to summary dismissal because Enos was not physically capable of performing the essential functions of the job for which he applied and, as such, is not a qualified individual for purposes of the ADA. *See, Weyer, supra.* at 1105.

As noted above, Enos applied for the position of juvenile probation officer with Douglas County on January 6, 2017. *See*, Exhibit 45. The job description for the position includes as essential functions that the applicant be able to arrest, detain and transport probationers and have the strength to subdue persons. *See*, Exhibit 46. In March of 2015, Dr. Eisenhauer determined that, based upon the injury to Enos's right wrist, Enos would be unable to perform the job of juvenile probation officer, as he would not have the ability to subdue individuals or use his right wrist for climbing, crawling or lifting 50 pounds. *See*, Exhibit 28. At the time of his application for the position of juvenile probation officer in January of 2017, Enos continued to receive disability retirement benefits through PERS. *See*, Exhibit 2, deposition of John Enos, p. 158. As

of the time he applied for the position of juvenile probation officer in January of 2017, Enos had already entered into his School Program Agreement in connection with his receipt of vocational rehabilitation benefits and was scheduled to commence classes on January 23, 2017.[2] *See*, Exhibit 43. There has been no evidence adduced during discovery which would suggest that Enos was able to perform the essential functions of the position he applied for in January of 2017. As such, this aspect of his ADA claim fails as a matter of law.

## III. DEFENDANT VICTORIA SAUER-LAMB IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF ENOS'S SECOND CLAIM FOR RELIEF.

In his second claim for relief, Enos seeks damages against Douglas County and the individual Defendants for the alleged violation of his Fourteenth Amendment right to procedural due process. This claim is brought under 42 U.S.C. §1983 and is based upon the contention that Enos was terminated from his employment without having been accorded the appeal process set forth in the Ninth Judicial District Court personnel regulations. *See*, [ECF No. 62, ¶125]; *see also*, Exhibit 47, NJDC personnel regulations, §7.0 et seq. Enos contends that §7.0 et seq. of the Ninth Judicial District Court personnel regulations entitled him to notice and an opportunity to be heard prior to his separation from employment. *Id*. at ¶7.

Victoria Sauer-Lamb was employed as the Chief Deputy Juvenile Probation Officer in February of 2015. *See*, Exhibit 48, deposition of Victoria Sauer-Lamb, p. 18. She retired in July of 2015. *Id.* In her position as Chief Deputy, Ms. Sauer-Lamb had no involvement in processing worker's compensation claims or in dealing with any discrimination claims. *Id.* at p. 19. While Ms. Sauer-Lamb was Enos's immediate supervisor in February of 2015, she did not have the authority to discipline him or terminate him. *Id.* at p. 38-39. There is no evidence in this case that Ms. Sauer-Lamb was involved in Enos's separation from employment or was otherwise involved in, or should have been involved in, any post-employment separation procedural issues

[2]Enos signed his School Program Agreement on November 19, 2016. *See*, Exhibit 43.

under the Ninth Judicial District Court personnel regulations. *Id.* at p. 133. Although Ms. Sauer-Lamb supervised day to day operations of the Juvenile Probation Department, she did not make administrative decisions. *Id.* at 133, 147, 152, 161, and 165.

Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1999). Here, Enos has no facts or evidence which would suggest that Ms. Sauer-Lamb was involved in any manner in any decision relating to his separation from employment in February of 2015. Absent evidence of her personal involvement, Ms. Sauer-Lamb is entitled to judgment in her favor as a matter of law.

## IV. DEFENDANT VICTORIA SAUER-LAMB IS ENTITLED TO JUDGMENT IN HER FAVOR AS A MATTER OF LAW OF ENOS'S THIRD CLAIM FOR RELIEF.

Enos's third claim for relief is premised on state law and alleges that Enos was terminated in retaliation for having filed claims for worker's compensation benefits following his on the job injuries. In order to make out such a claim, Enos must show, by a preponderance of the evidence, that the defendant-employer improperly dismissed the plaintiff-employee for reasons that violate public policy. *See, Wayment v. Holmes*, 112 Nev. 232, 236, 912 P.2d 816 (1996). Terminating an employee in retaliation for filing of a worker's compensation claim by an injured employee has been found to violate public policy. *See, Hansen v. Harrah's Hotel Casino, Inc.*, 100 Nev. 60, 675 P.2d 394 (1984).

While all of the Defendants deny engaging in any such conduct, Defendant Victoria Sauer-Lamb is entitled to judgment in her favor as a matter of law, as there is no evidence in this case that Ms. Sauer-Lamb was involved in any of the decisions which led to Enos's separation from employment in February of 2015. *See*, Exhibit 48, deposition of Victoria Sauer-Lamb, pp. 19, 28-39, 133, 147, 152, 161, and 165.

**V. <u>DEFENDANT VICTORIA SAUER-LAMB IS ENTITLED TO JUDGMENT IN HER FAVOR AS A MATTER OF LAW OF ENOS'S FOURTH CLAIM FOR RELIEF</u>.**

The specific contours of Enos's fourth claim for relief are not particularly clear. It references wrongful termination and some form of breach of contract. While the Defendants, collectively, do not believe that Enos's fourth claim for relief states a cognizable claim at all, it is evident that Ms. Sauer-Lamb is entitled to judgment in her favor as a matter of law.

The fourth claim in the third amended complaint is, like Enos's second claim for relief, premised upon the argument that he was denied procedural due process under personnel regulations at the time of his separation from employment in February of 2015. There is simply no evidence in this case which would demonstrate that Ms. Sauer-Lamb was at all involved in any decision which led to Enos's separation from employment in February of 2015. Accordingly, she is entitled to judgment in her favor as a matter of law of Enos's fourth claim for relief.

**VI. <u>ENOS'S FIFTH CLAIM FOR RELIEF FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMSISSED</u>.**

In his fifth claim for relief, Enos seeks damages under state law under a theory of breach of the covenant of good faith and fair dealing. He bases this claim not on any contract, as none existed between Enos and the Defendants, but upon personnel regulations in place in the Ninth Judicial District Court and/or Douglas County. *See*, Exhibit 48. Enos appears to contend that, because he was not an "at will" employee under these regulations, some sort of contract of employment existed upon which to base such a tort. This claim is without merit and should be dismissed as a matter of law.

It is true that, in Nevada, every contract imposes upon each party a duty of good faith and fair dealing which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other. *See*, *Nelson v. Heer*, 123 Nev. 217, 227, 163 P.3d 420 (2007). To establish a tortious

breach of the implied covenant of good faith and fair dealing, a successful plaintiff must establish: (1) that the plaintiff and the defendant were parties to a contract; (2) that there was a special element of reliance or trust between the plaintiff and the defendant such that the defendant was in a superior or entrusted position of knowledge; (3) the defendant performed in a manner that was unfaithful to the purpose of the contract or deliberately contravened the intention and spirit of the contract; (4) the defendant had an actual or implied awareness of the absence of a reasonable basis for not performing under the contract; and (5) the defendant's conduct was a substantial factor in causing damage to the plaintiff. *See, Great American Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 355, 934 P.2d 257 (1997).

This claim for relief is subject to dismissal given that no employment contract was in place between Douglas County and Enos and judgment must be entered in favor of all of the Defendants with respect to same. Further, Ms. Sauer-Lamb was not involved in any of the decisions which led to Enos's separation from employment in February of 2015, and, as such, she is further entitled to judgment in her favor as a matter of law. *See,* Exhibit 48, deposition of Victoria Sauer-Lamb, pp. 19, 28-39, 133, 147, 152, 161, and 165.

**IV**

**CONCLUSION**

While Enos has alleges a number of causes of action in this case for which questions of fact may exist (as to some of the named defendants) which will need to be addressed by a jury, Enos's ADA claim is not one of them. Despite the complicated factual history and the multiple different claims for relief, Enos's ADA claim is subject to summary judgment because he was not able to perform the essential functions of the job of a juvenile probation officer. This fact is dispositive of the ADA claim in this case. *See, Weyer, supra* at 1105.

Further, there is no evidence whatsoever that Victoria Sauer-Lamb was involved in any manner in any decisions which ultimately led to Enos's separation from employment in February of 2015. She is not, and could not be, a party defendant under Enos's ADA claim. All of the remaining claims in the complaint relate to the decisions which led to Enos's separation from employment in February of 2015. Given Ms. Sauer-Lamb's lack of personal involvement in any such decisions, summary judgment should be granted in her favor and she should be dismissed as a party defendant.

Accordingly, Defendants respectfully request that Enos's ADA claim, as well as the state law claims discussed herein, be dismissed and judgment granted in the Defendants' favor as a matter of law.

DATED this 12th day of July, 2019.

THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER

By: ***/ s / Katherine F. Parks***
Katherine F. Parks, Esq.
State Bar No. 6227
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882

Attorneys for Defendants
DOUGLAS COUNTY, SCOTT SHICK, AND
VICTORIA SAUER-LAMB

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER, and that on this date I caused the foregoing **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** to be served on all parties to this action by:

_____ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

__✓__ United States District Court, District of Nevada CM/ ECF (Electronic Case Filing)

_____ personal delivery

_____ facsimile (fax)

_____ Federal Express/UPS or other overnight delivery

fully addressed as follows:

**William J. Geddes, Esq.**
**The Geddes Law Firm, P.C.**
**8600 Technology Way, Suite 107**
**Reno, Nevada 89521**

**Raelene K. Palmer, Esq.**
**Gallian Welker & Beckstrom, L.C.**
**540 E. St. Louis Avenue**
**Las Vegas, Nevada 89104**
***Attorneys for Plaintiff***

**Steve Shevorski, Esq.**
**Michelle Di Silvestro Alanis, Esq.**
**Katlyn Brady, Esq.**
**State of Nevada – Office of the Attorney General**
**555 E. Washington Avenue, Suite 3900**
**Las Vegas, Nevada 89101-1068**
***Attorneys for Nathan Tod Young and Michael Gibbons***

DATED this 12th day of July, 2019.

***/ s / Sam Baker***
An employee of THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION | NO. OF PAGES |
|---|---|---|
| 1 | Job Description – Juvenile Probation Officer – Senior | 3 |
| 2 | Deposition of John Enos | 51 |
| 3 | Job Description – Chief Deputy Juvenile Probation Officer | 3 |
| 4 | Affidavit of Wendy Lane | 2 |
| 5 | Job Description – Youth Detention Counselor | 4 |
| 6 | Job Description – Library Technician | 3 |
| 7 | Deposition of Justina Caviglia | 9 |
| 8 | Notice of Injury or Occupational Disease – 6-21-13 | 1 |
| 9 | Notice of Claim Acceptance dated July 10, 2013 | 1 |
| 10 | Operative Report | 3 |
| 11 | Work excuses dated February 28, 2014, March 7, 2014, and April 2, 2014 | 3 |
| 12 | Notice of Injury or Occupational Disease dated June 17, 2014 | 1 |
| 13 | Enos's statement re: incident | 1 |
| 14 | Notice of Claim Acceptance | 1 |
| 15 | Deposition of Karen Barbee | 4 |
| 16 | Letter from Karen Barbee to John Enos dated August 6, 2014 | 1 |
| 17 | Letter from James McCarty to Karen Barbee | 1 |
| 18 | Memorandum from Scott Shick to John Enos | 1 |
| 19 | Deposition of Scott Shick | 8 |
| 20 | Operative Report dated October 21, 2014 | 3 |
| 21 | Operative Report dated January 15, 2015 | 2 |
| 22 | Work/School Excuses | 10 |
| 23 | Notes of Patricia Morales to Karen Barbee | 1 |
| 24 | Return to work slip dated January 20, 2015 | 1 |
| 25 | Return to work slip dated February 5, 2015 | 1 |
| 26 | Return to work slip dated February 17, 2015 | 1 |
| 27 | Return to work slip dated February 24, 2015 | 1 |
| 28 | Medical records dated March 6, 2015 | 3 |
| 29 | Return to work slip dated April 2, 2015 | 1 |
| 30 | Letter from Norma Santoyo to John Enos dated February 13, 2015 | 1 |
| 31 | Deposition of Norma Santoyo | 4 |
| 32 | Handwritten letter dated February 17, 2015 | 1 |
| 33 | Letter from Scott Shick to John Enos dated February 19, 2015 | 1 |
| 34 | Letter from Scott Shick to John Enos dated February 20, 2015 | 1 |
| 35 | Letter from B. Bottenberg to PERS dated March 13, 2015 | 1 |

| | | |
|---|---|---|
| 36 | Employee Report section of application dated March 10, 2015 | 1 |
| 37 | Highlighted areas of Job Description | 3 |
| 38 | Letter from PERS to John Enos dated April 16, 2015 | 1 |
| 39 | Letter from Karen Barbee to John Enos | 1 |
| 40 | Letter from Karen Barbee to John Enos | 1 |
| 41 | Letter to Douglas County from Ed Howden dated April 5, 2016 | 3 |
| 42 | Intent to offer employment form | 1 |
| 43 | School Program Agreement | 3 |
| 44 | Letter from Western Nevada Community College | 1 |
| 45 | Employment Application – January 6, 2017 | 6 |
| 46 | Job Description – Juvenile Probation Officer | 4 |
| 47 | Ninth Judicial District Court Personnel Regulations | 18 |
| 48 | Deposition of Vicky Sauer-Lamb | 11 |