WILLIAM J. GEDDES
Nevada Bar No. 6984
KRISTEN R. GEDDES
Nevada Bar No. 9027
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
Email: Kristen@TheGeddesLawFirm.com
*Attorneys for Plaintiff John Enos*

RAELENE K. PALMER
Nevada Bar No. 8602
THE PALMER LAW FIRM, P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone: (702) 952-9533
Email: rpalmer@plflawyers.com.com
*Attorneys for Plaintiff John Enos*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN ENOS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS COUNTY, a political subdivision of the State of Nevada; SCOTT SHICK, Chief Juvenile Probation Officer of the Juvenile Probation Department; VICTORIA SAUER-LAMB, Supervisor of the Juvenile Probation Department; *et al*.<br><br>Defendants. | CASE NO: 3:17-cv-00095-MMD-CBC<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff JOHN ENOS, by and through his undersigned counsel, hereby file *Defendants' Motion for Partial Summary* Judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. CASE OVERVIEW

This is an employment-discrimination case arising under the Americans with Disabilities Act and its amendments ("ADA"). (*See* Third Amended Complaint ("*TAC*"), ECF 062, ¶ 1.) For over 20 years, Plaintiff John Enos ("Enos") was an employee of Douglas County, serving most recently as

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

Senior Juvenile Probation Officer. (*Id.,* ¶ 14.) Enos alleges that he suffered ADA discrimination over his disabilities, arising from workplace injuries to his wrists, shoulders, head, neck, and back. (*Id.,* ¶¶ 106-120.) Enos alleges that Defendants engaged in disability discrimination when they refused to accommodate his disabilities, fired him, and twice failed to rehire him. (*Id.*) Enos further alleges that he was a classified worker who was not given his due process before and after he was fired, and on that basis, asserts a § 1983 claim for due process violations. (*Id.,* ¶¶ 121-135.) Enos also asserts state-tort claims arising from the facts relating to his employment and termination. (*Id.*, ¶¶ 136-168.)

## II. CONCISE STATEMENT OF FACTS NOT GENUINELY IN ISSUE

Pursuant to Rule 56-1 of the Local Rules of Practice for the United States District Court for the District of Nevada, Defendants herein provide a concise statement setting forth each fact ("Fact No.")[1] *material* to the disposition of this motion, which Defendants claim is not *genuinely* in issue in this case. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

1. Enos was employed as a Juvenile Probation Officer at the Juvenile Probation Department from June 13, 1998 through February 19, 2015. (*TAC,* ECF 062 at ¶ 14, and Defendants' Answer ("*Answer*") to *TAC*, ECF 073, ¶ 14 (Defendants admit this fact).) ENOS served as a Juvenile Probation Officer from June 13, 1998 to approximately June of 2002. (ECF 062,¶ 14 and ECF 073, ¶ 14.) ENOS served as a Senior Juvenile Probation Officer from approximately June of 2002 to February 19, 2015. (ECF 062,¶ 14 and ECF 073, ¶ 14.) Previously, Enos worked at Douglas County Recreation Department as a teen coordinator from 1995-96, and for Douglas County/NJDC at China Springs Youth Camp from 1995-98. (ECF 062,¶ 14 and ECF 073, ¶ 14.)

2. At all relevant times hereto, Scott Shick ("Shick") was employed as a Chief Juvenile Probation Officer of the Juvenile Probation Department, having his principal office or place of employment in Douglas County, at 1038 Buckeye Road, Minden, Nevada 89423. (*See* ECF 062, at ¶ 5

---

[1] Hereinafter, citations to supporting evidence will be made by use of the phrase "Fact No.," followed by the number of the paragraph in § II of this brief that establishes such facts.

and ECF 073, ¶ 5 (Defendant admits this fact));

3. At all relevant times hereto, Defendant Sauer-Lamb ("Sauer-Lamb") was employed as a supervisor of the Juvenile Probation Department, having her principal office or place of employment in Douglas County, at 1038 Buckeye Road, Minden, Nevada 89423. (*See* ECF 062, at ¶ 6 and ECF 073, ¶ 6 (Defendant admits this fact));

4. From approximately January of 2013 to July of 2015, Norma Santoyo ("Santoyo") was the Douglas County Human Resources Manager. (**Ex. 07**, Santoyo deposition transcript, 32:6-9.) Santoyo's job duties included: reporting to the County Manager; planning, directing, and administering all County human resource functions, including recruitment and selection, job classification and compensation, EEO and ADA issues, risk management and liability programs; training and development; employee and labor relations including collective bargaining; and benefits administration. (**Ex. 07**, 32:10-33:4.) Shick consulted with Santoyo for recommendations, suggestions, or guidance on human-resource-related matters. (**Ex. 07**, 61, ll. 8-17.) Santoyo communicated with Shick regarding personnel issues, including in meetings, and by phone and emails, and it was her function to sit in on meetings or witness decision-making when Shick took adverse action on a juvenile probation officer. (**Ex. 07**, 61:18-62:13.) Santoyo's involvement in connection with Enos' separation of employment included having discussions with Shick and Sauer-Lamb, and the Douglas County's District Attorney's office. (**Ex. 07**, 58:14-20.)

5. From late January 2016 through at least April 17, 2019, Wendy Lang ("Lang"), was the human resources director for Douglas County, and she was the Senior Human Resources Analyst for Douglas County prior to that, from late January 2014 through January 2016. (**Ex. 05**, Lang deposition transcript, at 44:14-2 and 47:12-18.) As a Senior Human Resources Analyst for Douglas County, Lang was supervised by Santoyo, and Lang primarily focused on employee classification, crafting job descriptions, determining appropriate compensation and training, and she had some involvement in recruitment, as well. (**Ex. 05**, 47:12-23). For purposes of her deposition, Wendy Lang was designated as Douglas County's Rule 30(b)(6) witness. (**Ex. 05**, 14:22-25.)

6. At all relevant times hereto, juvenile probation officers, including Enos, were under the jurisdiction of the *Ninth Judicial District Court* ("NJDC") *Court Personnel Regulations*. (Deposition

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

of Douglas County Rule 30(b)(6) witness Wendy Lang ("Lang Deposition"), attached hereto as **Ex. 05**, at 63:10-17; *see also* Douglas County Ordinance No. 2000-907, attached hereto as **Ex. 06**, at §2.02.030(OO)(2) (PLF-00166) ("[a]ll positions under the jurisdiction of the district court judges, including juvenile probation, juvenile detention and China Spring Youth Camp are governed by the Court Personnel Regulations" (emphasis added)); *see also Order Establishing Court Personnel Regulations* of the NJDC, signed by District Court Judges Nathan Tod Young and Michael Gibbons on December 23, 2014 and entered by the court on or about December 24, 2014, attached hereto as **Ex. 02**, at § 2.03 (PLF-00129) (confirming that the *NJDC Court Personnel Regulations* apply to court personnel)[2];

7. At all times relevant hereto, Enos, a Senior Juvenile Probation Officer, was not an unclassified employee, but was a "classified employee," within the meaning of the *NJDC Court*

---

[2] **Ex. 02** and **Ex. 06** are official government publications of the NJDC (a publicly-filed court order setting forth personnel regulations of the NJDC court personnel) and Douglas County (a county ordinance codifying county personnel regulations), respectively, and are self-authenticating pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 902(5) (a publication purporting to be issued by a public authority is self-authenticating). *See e.g. Maui Land & Pineapple Co. v. Cty. of Maui, No. 08-00465 SOM/LEK, 2009 U.S. Dist. LEXIS 100145, at *26 (D. Haw. Oct. 27, 2009)* (county ordinances are self-authenticating under Rule 902(5)).

Moreover, "[a]ny documentary evidence may be authenticated through extrinsic evidence 'sufficient to support a finding that the matter in question is what its proponent claims'." *Demirchyan v. Gonzales*, No. CV 08-3452 SVW (MANx), 2010 U.S. Dist. LEXIS 93090, at *2-5 (C.D. Cal. Sep. 8, 2010) (quoting Fed. R. Evid. 901(a)). In **Ex. 01**, the *Declaration of William Geddes ("Geddes Declaration")*, a sufficient evidentiary foundation was laid to establish that **Ex. 02** and **Ex. 06** were produced by the Douglas County District Attorney's Office in response to a Public-Records Request made to custodian of records of the NJDC. Moreover, the comprehensiveness of the series of documents produced—covering nearly 17-years—provide sufficient context as to when each particular regulation and ordinance was in effect. (*See Geddes Declaration*, at ¶¶ 4-7 (William Geddes testified that he submitted a Public-Records-Act Request under NRS 239.0107 to the NJDC requesting "personnel regulations, policies, directives, orders, rules, and procedures" of the NJDC and Douglas County concerning their juvenile probation officers (*see also Geddes Declaration exhibit* "Bates" stamped PRA-001-003)); *see id.*, ¶ 8 (William Geddes testified as to the particulars of the responsive documents provided by the Douglas County District Attorney's Office, establishing a chain of custody of these documents as those produced in discovery of the above-captioned litigation, as documents "Bates"-stamped PLF-00001-00234, and establishing the relevant time frames when each regulation and ordinance was in effect *(see also Geddes Declaration* exhibit "Bates" stamped PRA-004, authenticated under Fed. R. Evid. 902(5), in that it purports to be a letter published by Douglas County, having the appearance of the official letterhead of its District Attorney's Office). This extrinsic evidence is sufficient to provide a context for the self-authentication of **Ex. 02** and **Ex. 06**, and to independently support a finding that the exhibits in question are what Enos claims they are. (*See* Fed. R. Evid. 902(5) and Fed. R. Evid. 901(a).)

Moreover, Enos requests that the Court take judicial notice of **Ex. 02** and **Ex. 06** under Fed. R. Evid. 201(b). *See In re MGM Mirage Derivative Litig*., No. 2:09-cv-01815-KJD-RJJ, 2014 U.S. Dist. LEXIS 88967, at *7 (D. Nev. June 30, 2014) (taking judicial notice of court orders of Nevada courts); *and see Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 311 F. Supp. 2d 972, 975 n.1 (D. Nev. 2004) (taking judicial notice of planning agency ordinances).

*Personnel Regulations*. (*See* **Ex. 02**, at § 3.0(1) (PLF-00133) (setting out complete list of *unclassified* positions, which list *excludes* the position of juvenile probation officer and senior juvenile probation officer); *see id.*, at §3.0(2) ("[a]ny individual appointed to an unclassified position serves at the will of Judges and may be removed at will by the Judges without notice, cause or hearing); *and see id,* at §§ 7.01-7.06 (setting forth due process procedures that apply "to institute any disciplinary or correctional action to a non-probationary employee wherein a suspension of five (5) days or more, demotion or termination is contemplated" (which due process would *not* apply to unclassified positions per § 3.0(2); *and see also, e.g.*, **Ex. 11**, at 74:14-17);

8. At all times relevant hereto, Enos was a regular employee, not a probationary employee. (*See* **Ex. 02**, at §3.025 (PLF-00132) ("[p]robation" means a period after an employee's initial appointment or probation in which the Judges or delegee evaluates his or her suitability for the class"); *see id.*, at §3.028 (PLF-00132) ("[r]egular employee" means an employee who has been retained in a position at the completion of the probation period."));

9. At all times relevant hereto, for any disciplinary or corrective action taken against him, Enos could only be disciplined, suspended, demoted, or terminated for cause. (*See* **Ex. 02**, at § 7.01 (PLF-00142), (the due process procedures outlined in §§ 7.02-7.06 (PLF-00142-00143) apply in any disciplinary or corrective action seeking to suspend, demote, or terminate a non-probationary employee); *id.*, at § 7.02, ll. 5-8 (PLF-00142-00143) (a written "justification" (emphasis added) must be approved for the proposed disciplinary action to proceed against the employee, where the term "justification" means or implies "for cause")); *see also id.*, at § 7.04, ll. 2-9 (PLF-00143) (in a contested hearing on the proposed disciplinary action, the hearing board shall issue a notification if it finds the proposed disciplinary action "unwarranted" (emphasis added) or if it finds the proposed disciplinary action or any lesser disciplinary action "warranted" (emphasis added), in which case, the notification shall delineate the charges found to be "factually supported" (emphasis added), where the phrases "unwarranted," "warranted," and "factually supported" mean or imply that the proposed disciplinary action shall be evaluated according to a "for cause" standard);

10. At all times relevant hereto, under Nevada Revised Statute ("NRS") 62G.060, the juvenile court of Douglas County, *i.e.*, the NJDC, "may demote or discharge any [juvenile] probation

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

officer, employee of the [juvenile] probation department or employee of a local facility for the detention of children." NRS 62G.060(1). However, "Before the juvenile court may demote or discharge a [juvenile] probation officer or employee, the juvenile court shall provide to the [juvenile] probation officer or employee: (a) A written statement of the reasons for the demotion or discharge; and (b) An opportunity to be heard before the juvenile court regarding the demotion or discharge." NRS 62G.060(2)[3];

11. At all times relevant hereto, for any disciplinary or corrective action taken against Enos, which could result in his suspension, demotion, or termination, Enos was entitled to the due process protections outlined in **Ex. 02**, at §§ 7.02-7.06 before he could be disciplined, suspended, demoted, or terminated. (*See* **Ex. 02**, at § 7.01 (PLF-00142));

12. As part of that due process, the Department Head or supervisor of the Juvenile Probation Department, or the Court Administrator, was required to prepare a "written specification of charges" against Enos, which contained a "written justification" for any disciplinary or corrective action that would suspend, demote, or terminate Enos. (*See* **Ex. 02**, at §§ 7.01-7.02 (PLF-00142-00143);

13. As part of that due process, after a review and approval of the written justification by the Human Resources Manager and the District Attorney's Office, the Department Head, Court

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

[3] This statute applies to judicial districts having a population of less than 100,000. The Ninth Judicial District is a judicial district having a population of less than 100,000, including on February 19, 2015. The Ninth Judicial District Court is defined by NRS 3.010 as Douglas County, Nevada. The estimated the population of Douglas County between July of 2014 through July of 2015 was between 48,223 and 48,553. (*See* **Ex. 15**, *Population Estimates of Nevada's Counties, Cities, and Towns, 2000-2018*, from the Nevada State Demographer, Nevada Department of Taxation, which is certified by the Nevada Governor, at p. 9, published online at the Nevada tax department's website, published at https://tax.nv.gov/uploadedFiles/taxnvgov/Content/TaxLibrary/Certified-Population-Nevada-Counties-Incorp-Cities-Unincorporated-Towns-2018.pdf) (last accessed July 12, 2019). This official population certification is a matter of public record, and **Ex. 15**, is self-authenticating under 902(5) (a publication purporting to be issued by a public authority is self-authenticating). Pursuant to Fed. R. Evid 201(b)(2), Enos requests that the Court take judicial notice of: (1) this published, online-record; and (2) the fact that the population of Douglas County was less than 100,000 in the year 2015. Government documents and public records available from government websites are capable of judicial notice, as are results of record searches conducted on government websites. *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, No. CV 14-02496-BRO (Ex), 2015 U.S. Dist. LEXIS 194281, at *26-27 (C.D. Cal. Oct. 1, 2015) (citing *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937-38 (C.D. Cal. 2011) (taking judicial notice of a records search from a government website, holding that "the accuracy of the results of records searches from the Secretary of State for the State of California corporate search website can be determined by readily accessible resources whose accuracy cannot reasonably be questioned"); and *see Teixeira v. Cty. of Alameda*, 873 F.3d 670, 676 n.6 (9th Cir. 2017) (court took judicial notice of undisputed facts regarding the County's population) (citing Fed. R. Evid. 201(b) and *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that a court may take judicial notice of 'matters of public record' that are not subject to reasonable dispute") (internal quotation marks omitted). Accordingly, NRS 62G.060 applies here.

Administrator or supervisor was required to conduct a hearing before imposing any disciplinary or corrective action against Enos. (*See* **Ex. 02**, at §§ 7.01-7.02 (PLF-00142-00143);

14. As part of that due process, Enos had appeal rights to contest any suspension, demotion, or termination proposed in any disciplinary or corrective action, as outlined in **Ex. 02**, §§ 7.03-7.05, including by having a first-level appeal, before a hearing board, comprised of a Department Head other than Shick and two supervisors, but Enos could only pursue this first-level appeal *after* he received a specification of charges. (*See* **Ex. 02**, at §7.03 (PLF-00143);

15. As part of that due process, Enos had appeal rights to contest any decision of the hearing board in a second-level appeal, before the NJDC judges, but Enos could only pursue this second-level appeal *after* he received a decision from the hearing board. (*See* **Ex. 02**, at §7.05 (PLF-00143-00144);

16. On June 21, 2013, Enos was injured at work ("First Workplace Injury"), during a wilderness trip he supervised for juveniles, and his injuries included soft tissue damage in all regions of his back and a sprained right wrist, which had a torn ligament, for which Enos ultimately had three (3) surgical procedures to his right wrist. (**Ex. 04**, Enos Deposition Transcript, 40:8-41:8);

17. On June 17, 2014, Enos was injured at work ("Second Workplace Injury") when he was preparing to escort a juvenile to court, and the juvenile physically attacked Enos. (**Ex. 04**, at Transcript Exhibit ("Tr. Ex.") 25 (PLF-00371); and **Ex. 04**, at Tr. Ex. 29 (PLF-00371) (Enos' signed report of the incident); **Ex. 04**, 234:14-16; **Ex. 04**, 254:18-255:4; and **Ex. 04**, 60:8-61:11);

18. Enos received medical treatment for injuries he sustained in the Second Workplace Injury—including a "salvage" surgery to remove failed hardware previously implanted in his right wrist to treat injuries of the First Workplace Injury—and these injuries included: cervical sprain, head injury, left wrist sprain, contusion of left chest wall, sprain of left shoulder, and right wrist pain. (**Ex. 04**, 62:17-22; and *see* **Ex. 04**, at Tr. Ex. 14 (PLF 00369); **Ex. 04**, 206:8-208:18)[4];

---

[4] Tr. Ex. 14 (PLF-00371) is authenticated under Fed. R. Evid. 901(b)(4) based on the record's "appearance, contents, substance, internal patterns, or other distinctive characteristic of the item, taken together with all the circumstances." *See Tate v. Kaiser Found. Hosps*., No. 2:12-cv-9075-CAS(RZx), 2014 U.S. Dist. LEXIS 5891, at *2-6 n.1 (C.D. Cal. Jan. 15, 2014) (court finding medical records self-authenticated under Fed. R. Evid. 901(b) because the records are marked with plaintiff's name and date of birth, as well as the words 'Kaiser Permanente' and the dates of plaintiff's hospitalization at the Kaiser facilities on Sunset Boulevard and West College Street"; *Hollis v. Sloan*, 2012 U.S. Dist. LEXIS 153681, 2012 WL 5304756, at *4 (E.D. Cal. Oct. 25, 2012) (finding that medical records are authentic under Rule 901(b)(4)); *Goedecke v. Vinivan*, 2008 U.S. Dist. LEXIS 111221, 2008 WL 2668768, at *4 (D. Ariz. July 1, 2008) (noting

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

19. All the medical treatment that Enos received for his two workplace injuries was provided under the apparatus of his worker's compensation insurance, for which he submitted worker's compensation claims. (**Ex. 04**, 69:8-18);

20. After the Second Workplace Injury occurred, beginning in about July 2014, Enos received light duty at work, initially helping other officers at the office, and then a couple of weeks later, he was assigned light duty at the library. (**Ex. 04**, 137:7-139:16; and **Ex. 04**, Tr. Ex. 31);

21. In connection with his Second Workplace Injury, Enos took leave under the Family Medical Leave Act ("FMLA") on October 21, 2014, to obtain further medical treatment, including a surgical procedure on his right wrist on October 21, 2014. (**Ex. 07**, Norma Santoyo ("Santoyo") Deposition Transcript, at Tr. Ex. 10 (DCO 1304), ¶ 1 (Enos had been on FMLA leave since October 21, 2014); and **Ex. 04**, 206:5-208:18; and **Ex. 04**, Tr. Ex. 65 (PLF-00398))[5];

---

that authentication of medical records may be achieved through Rule 901(b)(4)); *Hollis v. Sloan*, No. 2:08-cv-2674 GEB KJN P, 2012 U.S. Dist. LEXIS 153681, at *15 (E.D. Cal. Oct. 24, 2012) (finding that medical records are sufficiently authenticated under Fed. R. Evid. 901(b)(4) because the records are clearly medical in nature, specific to plaintiff, with dates of entry by medical personnel that generally coincide with plaintiff's statement of facts).

Here, Tr. Ex. 14 (PLF-00371) contains the following appearance, contents, substance, internal patterns, or other distinctive characteristics of this document (taken together with the circumstances of Enos' workplace injuries, including as discussed below regarding Fed. R. Evid. 901(a)): the record is a medical record by Carson Valley Medical Center, listing Enos as patient, for treatment provided on June 23, 2014, for an industrial injury occurring on June 17, 2014, matching the date of the Second Workplace Injury, and setting forth work-release restrictions. Moreover, Tr. Ex. 14 (PLF-00371) is authenticated under Fed. R. Evid. 901(a) in **Ex. 04**, at 62:3-22 because Enos produced evidence sufficient to support a finding that the medical record is what he claims it is. Specifically, Enos testified that he recognized Tr. Ex. 14 as the Occupational Health Network progress report and disability certification from Carson Valley Medical Center for a date of service of June 23, 2014, where he received medical treatment after the Second Workplace injury with Jordan Wegis, for which he recalled treating with Dr. Coats and receiving workplace restrictions from her).

[5] **Ex. 07**, Tr. Ex. 10 (DCO 1304) is authenticated at **Ex. 07**, 136:19-136:8. Moreover, this exhibit, as well as all exhibits marked with "Bates" stamps falling within the range of DC000001-DC005301 are self-authenticating under 901(b)(4), given that such documents were produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by **Ex. 01**, at ¶ 14. *See Anand v. BP W. Coast Prods. Ltd. Liab. Co.*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) (documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent) (citing *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.,* 46 F.Supp.2d 769, 771-72 (N.D. Ill. 1999); *Federal Trade Commission v. Hughes,* 710 F.Supp. 1520, 1523 (N.D. Tex. 1989) (holding that documents produced in response to discovery requests were authenticated under Rule 901(b)(4) of the Federal Rules of Evidence and constituted party admissions under Rule 801(d)(2)(A)). **Ex. 04**, Tr. Ex. 65 (PLF-00398) is authenticated under Fed. R. Evid. 901(b)(4), because the appearance, contents, substance, internal patterns, or other distinctive characteristics of this document, taken together with the circumstances of Enos' workplace injuries, demonstrates that this record is a medical record by Carson Tahoe Regional Healthcare, listing Enos as patient, for surgical treatment provided on October 21, 2014, relating to the failed hardware in Enos' right wrist, testified to by Enos at **Ex. 04**, at 206-5-208:18, and Enos testified this surgical procedure was outlined in **Ex. 04**, Tr. Ex. 65, which supports a finding that the exhibit is what Enos claims it is, also permitting authentication of Tr. Ex. 10 under Fed. R. Evid. 901(a), as well.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

22. On or about January 28, 2015, Dr. Eisenhauer, D.O. released Enos from the medical restriction that required him to be away from work (on FMLA), thereby allowing Enos to return to work, with a "light-duty" medical restriction, and Dr. Eisenhauer further stated Enos would be ordered to return to full duty at work in approximately 3 weeks, *i.e.,* approximately February 18, 2015.[6] (**Ex. 03**, Enos Declaration, ¶¶ 1-4; **Ex. 04**, 197:8-198:6; *and see*, **Ex. 04**, at Tr. Ex. 56)[7];

23. On January 28, 2015, after attending his appointment with Dr. Eisenhauer, Enos called his supervisor, Vicky Sauer-Lamb ("Sauer-Lamb") and reported to her that he had been released to "light duty," but Sauer-Lamb told Enos that she would need to speak to the Juvenile Probation HR Department about his return, which she did, pursuant to which HR called Enos and told him "we have nothing for you, and we're not going to bring you back at this time." (**Ex. 04**, 146:19-147:4; and **Ex. 03**, at ¶¶ 5-6);

24. More specifically, later that day on January 28, 2015, Enos received a voicemail from Douglas County Human Resources Technician, Sarah Christensen ("Christensen"), who requested that Enos call her the following day, January 29, 2015, at 8:00 a.m., which Enos did, and in that call Christensen advised Enos that the County could not provide Enos with "light duty," and she told Enos to just stay home for the time being. (**Ex. 04**, 147:3-4); **Ex. 03**, at ¶¶ 7-8);

25. On Friday, February 13, 2015, at 5:25 p.m., just before a three-day weekend, Enos received a letter authored by Santoyo, which was hand-delivered to Enos' mother-in-law, less than an hour earlier that day, at 4:55 p.m. (**Ex. 07**, at Tr. Ex. 10; **Ex. 05**, 136:19-137:4; **Ex. 04**, at 147:12-16; **Ex. 03**, at ¶ 9);

26. Santoyo's letter confirmed the County's understanding that Enos had been away on

---

[6] Enos requests that the Court take judicial notice of the fact that 3 weeks after January 28, 2015, was February 18, 2015, pursuant to Fed. R. Evid 201(b)(2).

[7] **Ex.04**, Tr. Ex. 56 (PLF-00524) is authenticated under Fed. R. Evid. 901(b)(4) because the appearance, contents, substance, internal patterns, or other distinctive characteristics of this document, taken together with the circumstances of Enos' workplace injuries, demonstrates that this record is a medical record by Dr. David Eisenhauer, D.O. of Tahoe Fracture & Orthopedic, listing Enos as patient, for whom a medical release (return to work) and medical restrictions ("light duty" for his right upper extremity were ordered, and Dr. Eisenhauer noted that Enos was expected to return to full duty in approximately 3 weeks, which exhibit Enos testified that he recognized and described in **Ex. 04**, 197:8-198:6, which supports a finding that the exhibit is what Enos claims it is, also permitting authentication of Tr. Ex. 56 under Fed. R. Evid. 901(a), as well.

FMLA medical leave since October 21, 2014, relating to his "serious health condition," and that his FMLA leave had expired on January 21, 2015, and Santoyo's letter informed Enos that he needed to report back to work on Tuesday, February 17, 2015 at 8:00 a.m.[8] (**Ex. 07**, at Tr. Ex. 10; and **Ex. 03**, at ¶ 10);

27. The letter further informed Enos that he "was expected to provide a full medical release prior to returning to work [and that he was required to] . . . deliver the release to the human resources office no later than February 17, 2015 at 8 a.m." (**Ex. 07**, at Tr. Ex. 10; and **Ex. 03**, at ¶ 11);

28. Santoyo's letter added "[p]lease note that any absence beyond February 17, 2015 will be deemed an unauthorized absence pursuant to Douglas County Code 2.02.080 and may subject you to automatic separation or disciplinary action up to and including termination." (**Ex. 07**, at Tr. Ex. 10; and **Ex. 03**, at ¶ 12);

29. Enos reported for duty to work as ordered at 8:00 a.m. on Tuesday, February 17, 2015, and he met with Santoyo and advised her that he was reporting for duty, but Santoyo told Enos that he had exceeded his FMLA leave, and Shick was requesting to fill Enos' position with another employee. (**Ex. 03**, at ¶¶ 13-14);

30. Santoyo further told Enos that if he could not get a full doctors' release by the end of Thursday, February 19, 2015, the County would consider Enos to have abandoned his post for three days, which would constitute a "voluntary resignation" by Enos. (**Ex. 03**, at ¶ 15);

31. Mr. Enos strenuously disagreed with Santoyo, forcefully stating that he was not abandoning his post, not resigning from his job, and that he was ready, able, and willing to return to work right there and then (**Ex. 03**, at ¶ 16);

32. Santoyo then informed Enos that he could request an extension of time to attempt to obtain the requested releases**.** (**Ex. 03**, at ¶ 17);

33. On the morning of February 17, 2015, Santoyo sent an email (DC005500) to Shick and Douglas County Deputy District Attorney (DDA) Justina Caviglia ("Caviglia"), copied to Douglas

---

[8] Monday February 16, 2015 was a state holiday for Presidents' Day. Enos requests that the Court take judicial notice of this fact pursuant to Fed. R. Evid 201(b)(2). *See* NRS 236.015 (state holiday-schedule statute).

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

County Human Resources Technician Sarah Christensen ("Christensen"), confirming that: Enos' reported for work that day and was "stressed about losing his job and wants to do anything possible to retain it." (**Ex. 08**, Christensen deposition transcript, 229:10-230:12; and **Ex. 08**, at Tr. Ex. 39 (bottom email); and **Ex. 09**, Caviglia deposition transcript, at 185:18-186:15, and **Ex. 09**, at Tr. Ex. 39)[9];

34. On February 17, 2015, Enos submitted a written request (letter) (DC000435) to the Human Resources Department of the Juvenile Probation Department, which, *inter alia*, requested: (a) a brief extension of time to get "full" releases from Enos' doctors; (b) a leave of absence for medical treatment, to further address Enos' disabilities for return to full-duty as a probation officer as demanded by the County; and/or (c) reassignment to any other position with Douglas County for which Enos was qualified to perform. (**Ex. 03**, ¶¶ 18-20); **Ex. 07**, Tr. Ex. 12 (DC000435)[10];

35. During the period of January 28, 2015 through February 19, 2015, Douglas County, Scott Shick, and Norma Santoyo all knew of Enos' requests for accommodations, to prevent this loss of his employment as a Juvenile Probation Officer. (*See* **Ex. 10**, *Douglas County's Responses to Plaintiff's Requests for Admissions ("RFA"), Set No. 01*, at RFA Response Nos. 34 and 36; **Ex. 03**, ¶ 25; and **Ex. 11**, Shick Deposition Transcript, at 263:10-13; and **Ex. 11**, at 234: 18-235:15 and *id., at* 236:20-237-17; and **Ex. 11**, at Tr. Ex. 18 (DC001801))[11];

36. Defendants did not permit Enos to return to duty on Tuesday, February 17, 2015. (**Ex. 03**, ¶ 21);

37. Enos acted on Santoyo's instructions and spent the rest of the day, February 17, 2015, getting the reports and other data together. (**Ex. 03**, ¶ 22);

38. Enos complied with Santoyo's deadline: his doctors faxed his additional medical

---

[9] **Ex. 08**, Tr. Ex. 39 is authenticated at Ex. 08, at 229:10-230:12 and at Ex. 09, at **Ex. 09**, at 185:18-186:15. As well, **Ex. 08**, Tr. Ex. 39 is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by **Ex. 01**, at ¶ 14.

[10] **Ex. 07**, Tr. Ex. 12 (DC000435) is authenticated in **Ex. 03**, at ¶ 18-20, and it is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by **Ex. 01**, at ¶ 14.

[11] **Ex. 11**, Tr. Ex. 18 (DC001801) is authenticated in **Ex. 11**, at 234: 18-235:15, and it is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by **Ex. 01**, at ¶ 14.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

releases to Defendants that day, February 17, 2015, which was confirmed by Santoyo, the following day, and Karen Barbee ("Barbee"), the Senior Claims Adjuster for Alternative Service Concepts ("ASC"), which was Douglas County's Third-Party Administrator for Enos' worker's-compensation claim also faxed these medical releases to Douglas County. (**Ex. 03**, ¶¶ 22 and 24; **Ex. 12**, Barbee Deposition Transcript, at 8:16-21; *id.*, at 13:13-18; *id.*, at 18:8-19:16; *id.*, 24:4-10; *id.*, 50:23-51:4; *id.*, *id.*, at 54:17-55:18; and **Ex. 12**, Tr. Ex. 10 (DC001495 and DC0 01496) (Medical Return-to-Work releases by Dr. Morales, MD and Dr. Eisenhauer, D.O.)[12];

39. With regard to these timely-produced medical releases, Dr. Morales' push-pull-lifting restrictions for ENOS were made less restrictive, being changed to a higher weight limit, 50 pounds—which weight limit complied with Defendants' published job requirements for ENOS' position. As well, Dr. Eisenhauer released Enos to full duty, for a trial-period, to see if he could perform his regular duties as a probation officer, without any accommodation. (**Ex. 03**, ¶ 23; **Ex. 12**, Tr. Ex. 10);

40. The following day, February 18, 2015 at 8:00 a.m., Enos again reported to the Human Resources Department and stated that he was reporting for duty, and Santoyo confirmed the receipt of the medical releases the prior day and stated that Enos' provision of those medical releases was "good news." (**Ex. 03**, ¶ 24);

41. Santoyo also told Enos on February 18, 2015, that she had sent his request of February 17, 2015 to Shick and was awaiting his response, and Enos then asked Santoyo if there was anything else that he needed to do that day, and she said that there was not. (**Ex. 03**, ¶ 25);

42. Defendants did not permit Enos to return to work that day, February 18, 2015. (**Ex. 03**, ¶ 26);

---

[12] **Ex. 12**, Tr. Ex. 10 is authenticated in **Ex. 12**, at 50:23-51:21; and *id.* at 54:1-12, and it is also authenticated under Fed. R. Evid. 901(b)(4) because the appearance, contents, substance, internal patterns, or other distinctive characteristics of this document, taken together with the circumstances of Enos' workplace injuries, demonstrates that these documents are the medicals record by Dr. Morales, MD and Dr. Eisenhauer, D.O., listing Enos as patient, for whom a medical release (return to work) and medical-restriction orders were given for Enos, which documents Enos described in **Ex. 03**, ¶¶ 22-23, and which documents Barbee testified that she recognized, received, and described in **Ex. 12**, at 50:23-51:21; and *id*. at 54:1-12, which supports a finding that the exhibit is what Enos claims it is, also permitting authentication of Tr. Ex. 56 under Fed. R. Evid. 901(a). Finally, this exhibit is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by **Ex. 01**, at ¶ 14.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

43. Later the same day on February 18, 2015, Enos received a phone call from Santoyo, who informed Enos that his FMLA had expired, that Shick denied Enos' request for an extension of time and for a leave of absence, and that, although he obtained releases from his doctors, Defendants did not consider them to be "full releases." (**Ex. 03**, ¶ 27; and *see* **Ex. 08**, at Tr. Ex. 16 (DC005351) (Christensen email to Santoyo, dated Feb. 24, 2015, which stated "John Enos was terminated from Douglas County on February 19, 2015. John's FMLA time was exhausted and he was unable to return to work with no restrictions as stipulated")[13];

44. Santoyo advised Enos that Douglas County had no "light-duty" work, but then Enos reminded her that, when he worked at the county library on "light duty," his doctor's work restriction had a ten-pound-weight-limit restriction, whereas now he had a much higher capacity, a fifty-pound-weight-limit restriction—which weight limit complied with Defendants' published requirements for Enos' position. (**Ex. 03**, ¶ 28);

45. Enos then pressed Santoyo to answer why he could not be assigned to "light-duty" work at the library again, and Santoyo responded that Douglas County's legal person had decided that Enos was "too much of a liability" for Douglas County to keep employed, and that the County intended to terminate Enos' employment the following day, February 19, 2015. (**Ex. 03**, ¶ 29);

46. On February 18, 2015, Santoyo memorialized her phone call with Enos, and she sent that information in an e-mail dated February 19, 2015, to Shick and Caviglia, confirming that with respect to the medical releases Enos provided, she had advised Enos that "[a]t this point we do not have valid and concrete information that you are able to return to full capacity." (**Ex. 09**, 241:22-242:3; and **Ex. 09**, Tr. Ex. 37 (DC005487-88)[14];

47. Additionally, Santoyo confirmed that she advised Enos that his leave was classified as "unapproved" and that on the third day (Thursday), he would be considered an automatic voluntary

---

[13] **Ex. 08**, Tr. Ex. 16 (DC005351) is authenticated in **Ex. 08**, 130:18-132:7. Moreover, this exhibit is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by Ex. 01, at ¶ 14.

[14] **Ex. 09**, Tr. Ex. 37 (DC005487-88) is authenticated at **Ex. 09**, 241:22-242:3. Moreover, this exhibit is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by Ex. 01, at ¶ 14.

separation. (**Ex. 09**, Tr. Ex. 37 (DC005487-88);

48. On February 19, 2015, Enos again reported to the County Human Resources at 8:00 a.m., and he told Santoyo that he was there to work, but Defendants refused to allow Enos to work that day, and Santoyo told Enos that, as of 5:00 pm. that day, Enos would no longer be an employee of Douglas County. (**Ex. 03**, ¶¶ 30-32);

49. On February 23, 2015, Enos received an envelope by certified mail, which contained a letter from Shick, dated February 19, 2015, that read: "Dear Mr. Enos: I have received and seriously considered your request for a leave of absence dated February 17, 2015, pursuant to Douglas County Policy 200.40. However, after considerable deliberation, your request is being denied." (**Ex. 03**, ¶ 33; and **Ex. 11**, at Tr. Ex. 18);

50. On February 19, 2015, Sauer-Lamb tried to have Enos sign a personnel-action form that would indicate he was voluntarily separating from his employment at the Juvenile Probation Department, as if he were resigning, but Enos refused to sign it. (**Ex. 03**, ¶¶ 34-35; and **Ex. 11**, at Tr. Ex. 23 (DC000086) (Personnel Action Form, bottom left line of form: "Employee: refused to sign))[15];

51. On February 23, 2015, Enos also received a letter dated February 20, 2015, in the manila envelope, mentioned above, that read:

> "Dear Mr. Enos:
>
> Due to your absence from work for three consecutive days, Douglas County Juvenile Probation accepts your resignation pursuant to Title 2, Chapter 2.02 of the County Personnel Regulations 2.02.080 and Section 6.062 of the Order Establishing Court Personnel Regulations, which provide: Unauthorized absence. 2. An unauthorized absence for three consecutive days shall be regarded as an automatic resignation and termination from county [court/judicial] service. Please contact me as soon as possible to arrange the removal of your personal items from the Juvenile Probation and the return of any County property currently in your possession.

(Ex. 03, ¶ 37; and **Ex 11**, at Tr. Ex. 24 (DC001802). (Shick termination letter)).[16]

---

[15] **Ex. 11**, Tr. Ex. 23 is authenticated in **Ex. 03**, ¶ 36. As well, this exhibit is also self-authenticated under 901(b)(4), given that this document was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by Ex. 01, at ¶ 14.

[16] **Ex. 11**, Tr. Ex. 24 (DC001802) is authenticated in **Ex. 11**, at 263:14-264:1 and this document (DC001802) is also authenticated as **Ex. 09**, Tr. Ex. 28 in **Ex. 09**, at 221:23-222:21. This exhibit is also self-authenticated under



The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

52. Following Enos' termination, Douglas County Human Resources Technician, Sarah Christensen, responded to an inquiry of the third-party workers' compensation administrator affirmed that "John Enos was terminated from Douglas County on February 19, 2015. John's FMLA was exhausted and he was unable to return to work with no restrictions as stipulated." (**Ex. 8**, at Tr. Ex. 16 (DC005351));

53. Enos never voluntarily resigned his employment with the Douglas County Juvenile Probation Department, and he reported each day ready to work on February 17, 18 and 19, 2015, but was not permitted to work by the County. (**Ex. 03**, ¶ 38; *see also* **Ex. 08**, at Tr. Ex. 16 (DC005351) (Christensen email to Santoyo, dated Feb. 24, 2015, which stated "John Enos was terminated from Douglas County on February 19, 2015."); *see* **Ex. 08**, at Tr. Ex. 39 (bottom email) (on February 18, 2015, Santoyo confirmed in an email to Shick, Caviglia, and Christiansen, that she had a phone call with Enos on February 17, 2015, during which call, Enos was "stressed about losing his job and wants to do anything possible to retain it" (emphasis added); and **Ex. 11**, at 263:10-13 (Shick testified that, on the date of Enos' termination, Shick was "pretty sure [Enos] wanted to keep his job"));

54. According to the *NJDC Personnel Regulations*, in effect at the time of Enos' separation of employment, the term "resignation" was defined at § 3.030 as "the voluntary ending of employment by a Ninth Judicial District employee." (**Ex. 02**, at § 3.030, at PLF-00132);

55. According to the *Douglas County Personnel Regulations* in effect at the time of Enos' separation of employment, the term "resignation" was defined at §2.030(A)(33) as "the choice of an employee to end employment with the county." (**Ex. 06**, at § 2.030(A)(33), at PLF-00059);

56. Prior to the termination of Enos' employment, he never received a written specification of charges, as required by *NJDC Personnel Regulation* § 7.02. (**Ex. 03**, ¶ 39; **Ex. 11**, 251:9-19; **Ex. 10**, at RFA Response No. 49);

57. At all relevant times hereto, in not receiving a specification of charges or any other notice or documentation cited in *NJDC Personnel Regulations* 7.0, and 7.01-7.06, Enos was not aware

---

901(b)(4), given that this document (DC001802) was produced by Defendants in the course of discovery in the above-captioned matter, as confirmed by Ex. 01, at ¶ 14. This letter was actually sent by mail, not hand-delivered, as the letter falsely states. (*See* **Ex. 3**, at ¶ 37; and **Ex. 11**, at 264:7-13).

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

of his rights, under *NJDC Personnel Regulations* 7.0, and 7.01-7.06. (**Ex. 03**, ¶ 40; **Ex. 11**, 251:9-19);

58. In addition, prior to the termination of his employment, Enos was never provided with a hearing as required by *NJDC Personnel Regulation* § 7.02, including, by not being provided with a specification of charges. (**Ex. 03**, ¶ 41; **Ex. 11**, 251:9-19, **Ex. 10**, at RFA Response No. 49);

59. Further, prior to the termination of his employment, Enos was never given an opportunity to contest his termination before a hearing board, as required by *NJDC Personnel Regulation* § 7.03, including because he was not provided with a specification of charges. (**Ex. 03**, ¶ 42; **Ex. 11**, 251:9-19, **Ex. 10**, at RFA Response No. 49);

60. As a result of not being given an opportunity to contest his termination before a hearing board as allowed by *NJDC Personnel Regulation* § 7.03, Enos never received a hearing before a hearing board pursuant to *NJDC Personnel Regulation* § 7.04. (**Ex. 03**, ¶ 43; **Ex. 11**, 251:9-19, **Ex. 10**, at RFA Response No. 49);

61. Further, Enos was never provided the opportunity to appeal his termination to the Judges of the Ninth Judicial District Court, as permitted by *NJDC Personnel Regulation § 7.05*, including, by not being provided with the procedures required by *NJDC Personnel Regulations* §§ 7.01-7.04 or pursuant to NRS 62G.060. (**Ex. 03**, ¶ 44; **Ex. 11**, 48:1-6, 251:9-19, **Ex. 10**, at RFA Response No. 49);

62. If Enos had been provided with a specification of charges or any other notice or documentation cited in *NJDC Court Personnel Regulations* 7.0, and 7.01-7.06, or had he received any opportunity to be heard on the matter, he would have pursued all hearings and appeals available to him under NJDC Personnel Regulations 7.0, and 7.01-7.06, to protest his wrongful termination. (**Ex. 03**, ¶ 45);

63. On January 6, 2017, Enos re-applied for employment with Douglas County for the position of Juvenile Probation Officer. (**Ex. 03**, ¶ 46; *see also*, **Ex. 05**, Tr. Ex. 4 (PLF-02879-02885); **Ex. 13**, Cindy McMurry "McMurry" transcript, 81:23-82:15)[17];

64. That position of Juvenile Probation Officer was filled by Ms. Kelly McGee (**Ex. 11**,

---

[17] **Ex. 05**, Tr. Ex. 4 is authenticated in **Ex. 03**, ¶ 47. This exhibit is also authenticated (as **Ex. 09**, Tr. Ex. 46) in Ex. 13

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

271:20-23);

65. At the time of applying for this position, Enos was qualified to fill the position of Juvenile Probation Officer, having more education, training, and experience than Kelly McGee had, and, indeed, Enos was even qualified to be the Chief Deputy Probation Officer. (**Ex. 11**, 271:24-272:5, 275:13-276:5; and **Ex. 14**, Sauer-Lamb Deposition Transcript, 71:15-18);

66. During his tenure as a Juvenile Probation Officer and Senior Juvenile Probation Officer, Enos aspired to progress in the chain-of-command in the Juvenile Probation Department. If Douglas County had not terminated him, he would have applied for the position of Chief Deputy Juvenile Probation Officer vacated by Vicky Sauer-Lamb's retirement in or about July of 2015 (**Ex. 3**, ¶ 50);

67. Enos was the longest serving Juvenile Probation Officer in the Juvenile Probation Department, and based upon his longevity, training and experience, he was not only qualified for the Chief Deputy position, but was the most qualified candidate for that position among other employees of Douglas County, including Mike Torres, who was selected to fill the position. (**Ex. 3**, ¶ 51; **Ex. 11**, 81:9-12; 84:14-18; 85:4-10; 86:22-87:10; **Ex. 14**, 71:1-18);

68. On February 24, 2017, Enos received a "form-letter" e-mail from Cindy McMurry ("McMurry") with the Douglas County Human Resources Department informing him that he was not hired for the position of Juvenile Probation Officer. (**Ex. 03**, ¶ 48; **Ex. 13**, 85:13-87:01; and **Ex. 05**, Tr. Ex. 5 (PLF-02886) (rejection letter)[18];

69. Douglas County did not consider Enos' application, and he was not hired for the position of Juvenile Probation Officer, *i.e.*, "it did not move forward in the process" because Scott Shick concluded that Enos "had been determined unable to perform that job previously," when he "previously worked in the position," *i.e.*, regarding his prior Workplace Injuries known about by Douglas County, which the County believed made Enos unable to perform the position, and at the time of Enos' application for rehire, there was no "evaluation performed by Douglas County or the Ninth Judicial District Court to determine whether or not [Enos] could perform the essential functions of his job upon

---

[18] **Ex. 5**, Tr. Ex. 5 (PLF-02886) is authenticated in **Ex. 13**, 85:13-87:01 and is also authenticated (as **Ex. 5**, Tr. Ex. 5) in **Ex. 03**, ¶ 49.)

a rehire with a reasonable accommodation." (**Ex. 05**, 29:9-30:30; *id.*, 49:10-50:16; *id.*, 50:21-51:1.)

70. In this regard, the Douglas County D.A.'s Office provided legal counsel to Douglas County HR regarding the course of Enos' job application for rehire, and D.D.A. Cynthea Gregory recommended that Enos' "application should not be considered" because "he had previously held the position and [the County was] aware that he was no longer capable of performing the functions of the job. (**Ex. 05**, 76:12-77:13);

71. There were no discussions held by the County as to whether Enos should be evaluated, to determine whether Enos was capable of performing the position of juvenile probation officer, since the time of his firing on February 19, 2015, and there was no effort by the County or the DA's Office, to inquire as to any work restrictions that Enos might have had in the year 2017. (**Ex. 05**, 77:17-77:22; *id.*, 81:2-81:6);

72. Given the looming termination that lay before him, and based on the advice given to him by Santoyo that he apply for a disability retirement with the Public Employers Retirement System ("PERS"), Enos applied for disability-retirement benefits on February 17, 2015, the eve of his termination, and, on April 16, 2015, after he was terminated, he was approved to receive early retirement benefits, based on his disabilities arising from his Workplace Injuries and sequela. (**Ex. 04**, 152:9-153:1; and *id.*, 156:3-19, **Ex. 04**, Tr. Ex. 37; and **Ex. 03**, at ¶ 52.)[19];

73. After Enos' termination, he has continued to obtain medical treatment for his disabilities through worker's compensation. (**Ex. 03**, ¶ 53);

74. Enos still has physical symptoms relating to his workplace injuries that appear to require ongoing medical care, for which there is currently a worker's compensation dispute. (**Ex. 03** ¶ 54);

75. Nevertheless, notwithstanding his disabilities, ongoing treatment and any need for future treatment for the same, prior to the time of Enos' termination and at all times afterward, up to the current date, Enos could have performed and can perform the essential functions of the job of Senior Juvenile Probation Officer, Juvenile Probation Officer, or Chief Deputy Juvenile Probation Officer with Douglas County, if a reasonable accommodation were made or provided to him. (**Ex. 04**, 49:13-19; and

[19] **Ex. 04**, Tr. Ex. 37 is authenticated at **Ex. 04**, 156:3-19.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

**Ex. 03** ¶ 55; and **Ex. 03**, 249:9-250:3; *id.*, 256:7-25; *id.*, 257:15-23; and *id.*, 258:21-259:16).

## III. LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). Here, the Court is concerned with establishing the existence of "genuine" issues, and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587 (citations omitted)).

## IV. LEGAL ARGUMENT

### A. Motion for Partial Summary Judgment that in February of 2015 Through the Date of His Termination on February 19, 2015, Enos was Disabled Within the Meaning of the ADA

Under the ADA, a "disability" is defined as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. §12102(2). Major life activities include performing manual tasks such as lifting. 42 U.S.C. § 12102(2)(A)-(B). "'An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1500 (2015) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Prior to being terminated from his employment with Douglas County, Enos suffered physical impairments arising from his Workplace Injuries, for which he received medical treatment, including surgery, and for which Workplace Injuries he was given medical work restrictions, including lifting restrictions, "light duty," and the requirement that he be off work from October 21, 2014 through January 28, 2015. (*See* Fact Nos. 17-22.) On February 17, 2015, Dr. Morales' medical restrictions for

Enos were confirmed to impose a push-pull lifting restrictions of up to fifty (50) pounds and an above-shoulder-lifting limitation of up to 35 pounds. (Fact No. 39.) Thus, during the month of February, 2015 through the date of his termination on February 19, 2015, Enos was disabled within the meaning of the ADA because: (1) he had a physical impairment that substantially limited Enos' ability to perform manual tasks and lifting, with respect to push-pull lifting greater than fifty (50) pounds and above-shoulder lifting over 35 pounds; and (2) he had a record of such an impairment. Moreover, Defendants *regarded* Enos as disabled. (Fact Nos. 23-30, 43-48, and 51-52; and **Ex. 10**, *Douglas County's Response to Plaintiff's Request for Admissions*, Response No. 28 (admitting, in part, that Enos has or had a physical impairment which substantially limited a major life activity, including his working).) As such, during the month of February 2015 through the date of his termination on February 19, 2015, Enos was disabled within the meaning of the ADA because he was regarded as disabled by Defendants, including Douglas County. For the foregoing reasons, Enos requests partial summary judgment that in February of 2015 through the date of his termination on February 19, 2015, Enos was disabled within the meaning of the ADA.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

### B. Motion for Partial Summary Judgment that Enos Did not Voluntarily Resign His Position, but was Terminated by Defendant Shick and Douglas County

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a) (emphasis added). An ADA discrimination claim requires a showing that: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) the plaintiff suffered an adverse employment action because of her disability. *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). Adverse employment actions are defined as those that "materially affect the compensation, terms, conditions, or privileges of employment." *Guerrero v. Haw., Dep't of Pub. Safety*, 662 F. Supp. 2d 1242, 1256 (D. Haw. 2009) (citing *Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir. 2000)* and *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)). "It is beyond challenge that a person's termination is considered an adverse employment action." *Garity v. APWU Nat'l AFL-CIO*, No. 2:11-CV-01109-

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

PMP-CWH, 2012 U.S. Dist. LEXIS 83760, at *19 (D. Nev. June 18, 2012) (quoting *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1089 (9th Cir. 2001).) Thus, it is material to determine whether Enos resigned from his position or whether he was terminated by Defendants.

After Enos was released back to work by his doctor, on January 28, 2015, Enos tried to return to work in a "light-duty" position, but a Douglas County HR representative told Enos there was no "light duty" available, but to continue to stay home for the time being. (Fact Nos. 22-24) About two weeks later, on February 13, 2015, Defendants ordered Enos back to work from his FMLA-leave, requiring that he return to work not later than 8:00 a.m. on February 17, 2015. (Fact Nos. 25-28.) At that time, Defendants ordered Enos to provide a "full medical release" prior to returning to work. (*Id.*) Defendants stated that if Enos could not return to work, *i.e.*, if he could not provide a full medical release before returning to work, he would be deemed "absent," and "any absence beyond February 17, 2015 will be deemed an unauthorized absence" under Douglas County Code § 2.02.080 and may subject him to "automatic separation or disciplinary action up to and including termination." (*Id.*) Enos returned to work and reported for duty at 8:00 a.m. on February 17, 2015, but he did not have full medical releases at the time, and he was not permitted to return to work, even though he wanted to return to work. (Fact Nos. 29, 31, and 36.) When told that, if he could not get a full medical release by the end of Thursday, February 19, 2015 that the County would consider Enos to have abandoned his post for three days and to have voluntarily resigned, Enos strenuously disagreed, stating that he was not abandoning his post, but was ready, willing, and able to work. (Fact Nos. 30-31.) On February 17, 2015, Enos had his doctors fax medical releases for Enos to the County, which releases were compatible with his job duties. (Fact Nos. 38-39.) On February 17, 2015, Enos requested additional time and a leave of absence, to prevent him from losing his job. (Fact No. 34.) On February 18, 2015, Santoyo confirmed to Shick, Caviglia, and Christiansen, that she spoke to Enos the prior day and during their conversation she observed that Enos was stressed about losing his job and wanted to do anything possible to retain it. (Fact No. 53.) On February 18 and 19, 2015, Enos returned to work at 8:00 a.m., reporting for duty, but Defendants did not permit Enos to return to work. (Fact Nos. 40-42 and 48.) Even though Enos provided medical releases to the County, which were compatible with his job description, Santoyo told Enos, "[a]t this point, we do not have valid and concrete information that you

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

are able to return to full capacity." (Fact No. 46.) Enos' request for additional time and a leave of absence was denied, and on February 19, 2015, Enos was terminated from his job as a Juvenile Probation Officer because his FMLA leave had expired and he could not provide full medical releases. (Fact Nos. 51-52.) Enos never voluntarily resigned his employment. (Fact No. 53.) The applicable *NJDC Personnel Regulations* defined "resignation" as "the voluntary ending of employment by a Ninth Judicial District employee," and the applicable Douglas County Personnel Regulations defined "resignation" as "the choice of an employee to end employment with the county." (Fact Nos. 54-55.) After he was terminated, the County tried to get Enos to sign a personnel-action form that would indicate that he was voluntarily separating from his employment at the Juvenile Probation Department, as if he were resigning, but Enos refused to sign the form. (Fact No. 50.) Accordingly, no reasonable juror could conclude that Enos voluntarily resigned from his position.

For the foregoing reasons, Enos requests partial summary judgment that Enos did not voluntarily resign from his employment, but he was terminated by the Defendant Shick and Douglas County.

**C. <u>Motion for Partial Summary Judgment that Defendants Shick and Douglas County were Motivated by Enos' Disabilities When Terminating Him</u>**

In *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005), the Ninth Circuit relied on Title VII precedent to establish a "motivating factor" standard for causation under the ADA. *Id.* at 1065-66. Thus, it is material to determine whether Enos' termination was motivated by his Disabilities. As established above, Enos' termination was linked with his inability to provide medical releases that were satisfactory to Defendants. (*See generally*, §§ IV(A)-(C) *supra*, and *see* Fact Nos. 25-30, 34, 38-40, 43-49, and 51-52.) His medical releases were linked to his Disabilities, as above established. Thus, no reasonable juror could conclude that Enos' termination was *not* motivated by Enos' Disabilities.

For the foregoing reasons, Enos requests partial summary judgment that Defendants Shick and Douglas County were Motivated by Enos' Disabilities when terminating him.

**D. <u>Motion for Partial Summary Judgment that Defendants' Requirement that Enos Provide a Full Medical Release Before Returning to Work by Is a *Per Se* Violation of the ADA.</u>**

Employers may require an employee returning from disability leave to submit a release to work

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

from a medical professional. *Behler v. Janssen Pharms., Inc.*, 2016 U.S. Dist. LEXIS 90321 (E.D. Wash. July 12, 2016). These releases help the employer understand the circumstances under which the employee is able to work. *Id*. However, Ninth Circuit precedent holds that an employer's requirement that a disabled employee be "fully healed" or "100% healed" or to return to work is a *per se* violation of the ADA. *McGregor v. AMTRAK*, 187 F.3d 1113, 1116 (9th Cir. 1999). Such a requirement is a *per se* violation of the ADA because it discriminates against qualified individuals with disabilities and permits employers to substitute a determination of whether a qualified individual is "fully healed" or "100% healed" from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation. *Id.*; *and see also*, *Heise v. Genuine Parts Co.*, 900 F. Supp. 1137, 1154 & n.10 (D. Minn. 1995) (holding that a "must be cured" or "100% healed" policy is a *per se* violation of the ADA because the policy does not allow a case-by-case assessment of an individual's ability to perform essential functions of the individual's job, with or without accommodation).

The instant case falls squarely within Ninth Circuit precedent that a "full medical release" requirement is a *per se* violation of the ADA. Defendants demanded that Enos provide a full medical release before he would be permitted to return to work. (Fact Nos 25-28.) This full-medical-release requirement is a "fully-healed" or "100%-healed" requirement. Defendants did not consider the two medical releases by Enos to be "full releases." (Fact Nos. 38-40 and 43.) Enos was not permitted to return to work, and after three (3) days of not being permitted to return to work, his employment was terminated. (Fact Nos. 51-52.) For the foregoing reasons, Enos requests partial summary judgment that Defendants' requirement that Enos provide a full medical release before returning to work by is a *per se* violation of the ADA.

**E. <u>Motion for Partial Summary Judgment that, as a Matter of Law, Enos Cannot Be Construed to Have Voluntarily Resigned His Position under *County Personnel Regulations* 2.02.080 and *NJDC Personnel Regulation* § 6.062</u>**

Shick's termination letter to Enos stated:

> Due to your absence from work for three consecutive days, Douglas County Juvenile Probation accepts your resignation pursuant to Title 2, Chapter 2.02 of the County Personnel Regulations 2.02.080 (J) and Section 6.062 of the Order Establishing Court Personnel Regulations, which provide:

> Unauthorized absence. 2. An unauthorized absence for three consecutive days shall be regarded as an automatic resignation and termination from county [court/judicial] service.

(Fact No. 51). As established above, Douglas County would not permit Enos to return to work, even though he tried to return to work, because he could not produce a "full medical release" to Douglas County. (*See* § IV(B) *supra*.) As further established above, Defendants' requirement that Enos produce a full medical release in order to return to work constituted a *per se* violation of the ADA. (*See* § IV(C) *supra*.) While Defendants seek to characterize Enos' separation of employment as an "automatic resignation" resulting from his unauthorized absence (being "AWOL") for three days, such a characterization is not only a fiction, but the application of the *County Personnel Regulations* § 2.02.080 and *NJDC Personnel Regulation* § 6.062 to maintain this fiction violates the ADA. *See McGregor v. AMTRAK*, 187 F.3d 1113, 1116 (9th Cir. 1999). Specifically, while the AWOL policies of §§ 2.02.080 and 6.062 are not *facially* violative of the ADA, the AWOL policies, as applied here, *i.e.*, coupled with Defendants full-medical-release requirement, *does* violate the ADA. This is true because Defendants' full-medical-release requirement made no allowance for the operation of the ADA protections, and precluded Enos from returning to work, thereby forcing the AWOL policies on him, without allowance for the operation of the ADA protections. The claim that Enos is deemed to voluntarily resigned is predicated on this unlawful application of the full-medical-release demand and AWOL policies. Given that such a result would violate the ADA, Defendants' conclusion that Enos "voluntarily resigned" by operation of the AWOL policies cannot stand. *See Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 851 (9th Cir. 2004) (under the Supremacy Clause of the U.S. Constitution, a state statute cannot defeat a federal statute, including the ADA). For the foregoing reasons, Enos requests partial summary judgment that, as a matter of law, Enos cannot be construed to have voluntarily resigned his position under *County Personnel Regulation* 2.02.080 and *NJDC Personnel Regulation* § 6.062.

**F. Motion for Partial Summary Judgment that: (1) Enos Had a Property Interest in His Employment Under the 14th Amendment; and (2) the Process Due to Enos was, at a Minimum, That Process Stated in: (a) NRS 62G.060(1); and (b) the *NJDC Personnel Regulations* §§7.01-7.06**

Enos has asserted a §1983 claim for a 14th Amendment Due Process violation. Liability may be

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

imposed on government actors for violations of one's due process rights under the 14th Amendment, in a civil action under 42 U.S.C. § 1983. 42 U.S.C. § 1983 "does not create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. Cal. 1991) (citations omitted). "Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986). "Cases involving procedural due process claims require a two-step analysis. First, the court must determine whether a liberty or property interest exists which would entitle the plaintiff to due process protections." *Burson v. Nevada*, CV-N-92-289-ECR, 1992 U.S. Dist. LEXIS 14519, at *1-2 (D. Nev. July 16, 1992) (citations omitted). "Second, if the plaintiff has established a constitutionally protected interest, the court must determine what process is due." *Id.* (citations omitted).

Interests in property are created by "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *DeFrancesco v. City of Mt. Angel*, No. CV-00-480-ST, 2002 U.S. Dist. LEXIS 20344, at *16 (D. Or. May 10, 2002) (citing *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)). "A [state] law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged." *Palm v. L.A. Dep't of Water & Power*, 889 F.3d 1081, 1085 (9th Cir. 2018) (quotation omitted). "If discharge can only be for 'just cause,' an employee has a right to continued employment until there is just cause to dismiss him." *Id*. (quotation omitted).

As shown above, Enos did not voluntarily resign, but wanted to keep his job. As a matter of law, Enos cannot be construed to have voluntarily resigned his position under *County Personnel Regulation* 2.02.080 and *NJDC Personnel Regulation* § 6.062. (*See* §IV(E), *supra*.) As shown above, both the County and the NJDC define "resignation" as that desired or volunteered by the employee. (Fact Nos. 54-55.) Thus, Enos' termination against his will is properly construed as a disciplinary or corrective action taken against him. Defendants were required to obtain a "for cause" finding against

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

Enos, before he could be removed from his position against his will. (Fact No. 9.)

Enos had a protected liberty interest in his job, entitling him to due process protections, including under NRS 62G.060(1) and the *NJDC Personnel Regulations* §§7.01-7.06. (Fact Nos. 6-15.) Under state law, before he could be discharged, Enos was entitled to: "(a) [a] written statement of the reasons for the demotion or discharge; and (b) [a]n opportunity to be heard before the juvenile court regarding the demotion or discharge," under NRS 62G.060.(2). As well, Enos was entitled to the due process protections outlined in §§ 7.02-7.06 of the *NJDC Personnel Regulations*. (Fact No. 11.) As such, before he could be terminated, Enos was entitled to: (a) a written specifications of the charges containing a written justification for his termination; and (b) and hearing. (Fact Nos. 12-13.) Enos was also entitled to appeal rights to contest his termination, in a first-level appeal, before a hearing board, comprised of a Department Head *other than Shick* and two supervisors. (Fact No. 14.) However, he could not pursue such an appeal until *after* he received a specification of charges. (*Id.*) Enos was also entitled to appeal rights to contest his termination, in a second-level appeal, before both the NJDC judges, but Enos could only pursue this second-level appeal *after* he received a decision from the hearing board. (Fact No. 15.) For the foregoing reasons, Enos requests partial summary judgment that: (1) Enos had a property interest in his employment under the 14th Amendment; and (2) the Process Due to Enos was, at a minimum, that process stated in: (a) NRS 62G.060(1) and/or (b) the *NJDC Personnel Regulations* §§7.01-7.06.

### G. Motion for Partial Summary Judgment that Defendants failed to Provide to Enos the Due Process Stated in (1) NRS 62G.060(1); and (2) the *NJDC Personnel Regulations* §§7.01-7.06

As established above, Enos had a property interest in his employment under the 14th Amendment; and (2) the process due to Enos was, at a minimum, that process stated in: (a) NRS 62G.060(1) and/or (b) the *NJDC Personnel Regulations* §§7.01-7.06. (*See* § IV(F) *supra*.) However, Enos received *none* of these due process protections before or after he was terminated. (Fact Nos. 56-61.) If Enos had been given these due process protections, he would have pursued them and protested his wrongful termination. (Fact No. 62.) For the foregoing reasons, Enos requests partial summary judgment that Defendants failed to provide to Enos the due process stated in: (1) NRS 62G.060(1); and (2) the NJDC Personnel Regulations §§7.01-7.06.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

### H. Motion for Partial Summary Judgment that Defendants County and Shick, Violated the Procedural Due Process Clause of the 14th Amendment

A municipality may be held liable under a claim brought under § 1983 when the municipality inflicts an injury. *Gibson v. County of Washoe* 290 F.3d 1175, 1185 (9th Cir. (Nev.) 2002) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)), *overruled in part on other grounds* as stated in *Castro v. Cnty of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016). "[A] municipality may be liable under § 1983, just as natural persons are, because when Congress enacted § 1983 it 'intended municipalities and other local government units to be included among those persons to whom § 1983 applies.'" *Gibson*, 290 F.3d at 1185 (citing *Monell*, 436 U.S. at 689). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (citation omitted). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Graham*, 473 U.S. at 165-66 (quoting *Monell*, 436 U.S. at 690, n. 55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Graham*, 473 U.S. at 165-66 (citing *Brandon*, 469 U.S., at 471-472).

Here, Shick is sued in his personal and official capacities.(*See e.g., TAC*, ¶ 5 (Shick is sued in his official and individual capacity); and *id*., at ¶ 122 (Defendants sued for the Procedural Due Process claim in their individual and official capacities).) Shick is employed as county and/or state official. (*See* Fact No. 2.) The County and Shick caused or set into motion Enos' termination, in the course and scope of their employment or co-employment at the County, Juvenile Probation Department, and/or the NJDC. (*See* Fact No. 2, and Fact Nos. 23-62.) In consultation with the County's HR Department and the D.A.'s Office, Shick oversaw and was personally involved and instrumental in terminating Enos. (*Id*.) As well, the chain of command at the Juvenile Probation Department was Shick at the top, supervising Sauer-Lamb, who, together, supervised the juvenile probation officers, and Shick had the authority to fire Enos. (**Ex. 11**, 32:10-18; and *id*., 47:1-48:15.)

Enos had a property interest in his employment under the 14th Amendment; and (2) the process due to Enos was, at a minimum, that process stated in: (a) NRS 62G.060(1) and (b) the *NJDC*

*Personnel Regulations* §§7.01-7.06. (*See* § IV(F) *supra*.) As also established above, Enos received *none* of these due process protections before or after he was terminated. (Fact Nos. 56-61.) Shick and the County's failure to provide Enos with a hearing and this requisite due process was a violation of the procedural due process requirements enunciated in *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). *See Decker v. N. Idaho Coll.*, 552 F.2d 872, 873 (9th Cir. 1977). For the foregoing reasons, Enos requests partial summary judgment that that Defendants Douglas County and Shick, violated the Procedural Due Process Clause of the 14th Amendment by failing to give Enos due process: (1) before; and (2) after terminating him.

## I. Motion for Summary Judgment that Defendants Shick and Douglas County Wrongfully Terminated Enos

Enos has sued Defendants for wrongful termination in this action. Enos seeks summary judgment on this claim. "Generally, an at-will employment contract can be terminated whenever and for whatever cause by an employer without liability for wrongful discharge if the employment is not for a definite period and if there are no contractual or statutory restrictions on the right of discharge." *Yeager v. Harrah's Club*, 111 Nev. 830, 834, 897 P.2d 1093, 1095 (1995) (emphasis added) (citing *Smith v. Cladianos*, 104 Nev. 67, 68, 752 P.2d 233, 234 (1988)). "[A] discharge for 'just' or 'good' cause is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence, and (2) reasonably believed by the employer to be true." *Sw. Gas Corp. v. Vargas*, 111 Nev. 1064, 1078, 901 P.2d 693, 701 (1995) (emphasis added).

As established above, Enos was disabled, within the meaning of the ADA, and he did not voluntarily resign his position, but was terminated by Shick and Douglas County. (*See* § IV(A)-(B), *supra*.) As shown above, Shick and Douglas County were motivated by Enos' disabilities, when terminating him. (*See* § IV(C) *supra*.) His termination arose because Defendants disallowed Enos to return to work for three consecutive days because he did not produce a "full medical release"—but such a demand for a "full medical release" was a *per se* violation of the ADA. (*See* § IV(D) *supra*.) Also demonstrated above, as a matter of law, Enos cannot be construed to have voluntarily resigned his position under *County Personnel Regulations* 2.02.080 or *NJDC Personnel Regulations* 6.062, due

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

to this *per se* violation of the ADA. (*See* § IV(E) *supra.*) Therefore, good cause was not established for firing Enos because his termination was based on an illegal reason, a *per se* violation of the ADA. *McGregor*, 187 F.3d at 1116; *Sw. Gas Corp.*, 111 Nev. at 1078, 901 P.2d at 701. Thus, Defendants cannot rely on their stated reason for terminating Enos but were required to rely on another reason that establishes good cause for his termination.

And to that end, Shick and Douglas County were required to provide Enos with requisite due process, to engage in a determination as to whether Enos' could be terminated for cause. However, Shick and Douglas did not do this. There were statutory restrictions on Defendants' right of discharging Enos, under NRS 62G.060(1) and the *NJDC Personnel Regulations* §§7.01-7.06. (Fact Nos. 6-15.) Enos received *none* of these due process protections before or after he was terminated. (Fact Nos. 56-61.) In the absence of a lawful basis for Defendants to rely on their "voluntary resignation" theory, when discharging Enos, Defendants did not engage in the requisite due process to determine whether his termination was for cause. Accordingly, there has been no proper for-cause determination. For the foregoing reasons, Enos requests partial summary judgment that Defendants breached their duties and their termination of Enos was wrongful.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

### J. Defendants Violated the ADA When: (1) They Preferred the Application of Another Job Applicant (Kelly McGee) over Enos' Job Application Because of His Disabilities; and (2) When they Made Medical Inquires About Enos to Discriminate Against Him

When reapplying for the position of juvenile probation officer with the County on January 6, 2017, Enos was disabled within the meaning of the ADA because: (1) he had a physical impairment that substantially limited Enos' ability to perform manual tasks, as he had a disability rating arising from his Workplace Injuries; (2) he had a record of such an impairment; and he was *regarded* as disabled by Douglas County. (Fact Nos. 23-30, 43-48, 51-52, and 73-75; and **Ex. 10**, Response No. 28 (admitting, in part, that Enos has or had a physical impairment which substantially limited a major life activity, including his working).) Moreover, Enos declared he had a disability in his job application, and he stated that he could perform the essential functions of his job with a reasonable accommodation. (*See*, **Ex. 5**, Tr. 4, at PLF-02881, at ll. 10-12 ("Reason for leaving: I was injured on the job two times and was released from employment. However, I am able to perform the essential functions of this job

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

with or without a reasonable accommodation").) But Enos was well qualified by education, training, and experience, for the position of Juvenile Probation Officer, which used to be his old job. (Fact Nos. 65-67.)

As shown above, Defendants did not consider Enos' application and failed to hire him *because of his Disabilities*. (Fact Nos. 69-71.) They were motivated by Enos' Disabilities when refusing to consider his application and hire him. (*Id.*) Stated otherwise, Defendants preferred the application of the Kelly McGee, who was ultimately hired over Enos' application *because of* Enos' Disabilities. This violated the ADA. *See Donnellan v. GNLV Corp*., 141 F. App'x 542, 543-44 (9th Cir. 2005) (ADA plaintiff failed to present evidence to suggest that the employer "preferred the application of [another applicant] (who was ultimately hired) over [the plaintiff's] application because of [the plaintiff's disability") (citing *McKennon v. Nashville Banner Publ. Co.,* 513 U.S. 352 (1995)); *see also, Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010) (confirming that 42 U.S.C. §12112(d)(1) "states the general bar against using medical examinations or inquiries to discriminate"). Here, Defendants discriminated against Enos, by not considering his application or hiring, based on medical inquiries about him. Specifically, Shick inquired or consulted with Cynthea Gregory about the matter, and concluded that, based on Enos' historical medical condition arising from his Workplace Injuries—*i.e.*, Enos' Disabilities—they would not hire Enos or consider his application. (Fact Nos. 69-70.) For the foregoing reasons, Enos requests partial summary judgment that Defendants violated the ADA when: (1) They preferred the application of another job applicant (Kelly McGee) over Enos' job application because of his disabilities; and (2) when they made medical inquiries about Enos to discriminate against him.

Dated this 12th Day of July 2019.

By: THE GEDDES LAW FIRM, P.C.

WILLIAM J. GEDDES
Nevada Bar Number 6984

KRISTEN R. GEDDES
Nevada Bar Number 9027
8600 Technology Way, Suite 107
Reno, Nevada 89521
*Attorneys for Plaintiff John Enos*

THE PALMER LAW FIRM, P.C.

RAELENE K. PALMER
Nevada Bar No. 8602
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
*Attorneys for Plaintiff John Enos*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of the Geddes Law Firm, P.C., and that on **July 12, 2019**, I caused to be served a copy of the foregoing *Plaintiff's Motion for Partial Summary Judgment,* by electronic filing with the Court's Pacer e-filing system, addressed to:

Katherine F. Parks, Esq.
THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER
6590 S. McCarran Blvd, Suite B
Reno, Nevada 89509
(775) 786—2882
Email: kfp@thomdal.com

*Attorneys for Defendants Douglas County, Scott Shick, and Victoria Sauer-Lamb*

KRISTEN R. GEDDES
An employee of the Geddes Law Firm, P.C.

**TABLE OF EXHIBITS TO:**
***Plaintiff's Motion for Partial Summary Judgment***

| Ex. No. | Description |
|---|---|
| 01 | Declaration of William J. Geddes, Esq. |
| 02 | *Order Establishing Court Personnel Regulations of the NJDC*, signed by District Court Judges Nathan Tod Young and Michael Gibbons on December 23, 2014 and entered by the court on or about December 24, 2014 (PLF-00128-00145) |
| 03 | Declaration of John Enos |
| 04 | Deposition Transcript of John Enos, including Exhibits 14, 25, 29, 31, 56 and 65 |
| 05 | Deposition Transcript of Wendy Lang, including Exhibit 4 and 5 |
| 06 | Douglas County Ordinance No. 2000-907 (PLF-00057-00072), its language at §2.02.030(OO)(2) (at PLF-00166), specifying: "All positions under the jurisdiction of the district court judges, including juvenile probation, juvenile detention and China Spring Youth Camp are governed by the Court Personnel Regulations" |
| 07 | Deposition Transcript of Norma Santoyo, including Exhibits 10 and 12 |
| 08 | Deposition Transcript of Sarah Christensen, including Exhibits 16 and 39 |
| 09 | Deposition Transcript of Justina Caviglia, including Exhibits 37 and 39 |
| 010 | Douglas County's Responses to Plaintiff's Request for Admissions (Set No. 1, Nos. 1-70). RFA Nos. 28, 34, 36 and 49 |
| 011 | Deposition Transcript of Scott Shick, including Exhibits 18, 23 and 24 |
| 012 | Deposition Transcript of Karen Barbee, including Exhibit 10 |
| 013 | Deposition Transcript of Cindy McMurry |
| 014 | Deposition Transcript of Victoria Sauer-Lamb |
| 015 | Excerpt from *Population Estimates of Nevada's Counties, Cities and Towns 2000-2018* (Nevada State Demographer) |

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455