WILLIAM J. GEDDES
Nevada Bar No. 6984
KRISTEN R. GEDDES
Nevada Bar No. 9027
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
Email: Kristen@TheGeddesLawFirm.com
*Attorneys for Plaintiff John Enos*

RAELENE K. PALMER
Nevada Bar No. 8602
THE PALMER LAW FIRM, P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone: (702) 952-9533
Email: rpalmer@plflawyers.com.com
*Attorneys for Plaintiff John Enos*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN ENOS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS COUNTY, a political subdivision of the State of Nevada; SCOTT SHICK, Chief Juvenile Probation Officer of the Juvenile Probation Department; VICTORIA SAUER-LAMB, Supervisor of the Juvenile Probation Department; *et al*.<br><br>Defendants. | CASE NO: 3:17-cv-00095-MMD-CBC<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff JOHN ENOS, by and through his undersigned counsel, hereby file *Plaintiff's Reply to Defendants' Opposition to the Motion for Partial Summary* Judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

**A. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson, 477 U.S. at 248). A party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. In *Anderson*, the court explained that "[t]he standard for Rule 56(e) mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250-51, 106 S. Ct. at 2511 (citation omitted). Factual disputes that are irrelevant or unnecessary will not be counted. *Id. at* 477 U.S. at 248, 106 S. Ct. at 2510 (citation omitted).

## II. ARGUMENT

### A. Douglas County Is an Employer, or Joint Employer of Enos; Therefore, Defendants' Argument that Douglas County Cannot be Liable Under the ADA, Fails

In the Third Amended Complaint (ECF 062), Enos alleges that Ninth Judicial District Court and Douglas County are joint, or co-employers. *See* ECF 062 at 2:8-9; ¶¶ 3-6. Douglas County argues it cannot be liable under any ADA theory because it is not Enos' employer. The ADA defines "employer" according to its definition under Title VII of the Civil Rights Act of 1964: "a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A). To establish the ADA governs a defendant, the plaintiff must show the defendant was a single or ***joint employer***. *Wells v. Skynet Dig., Ltd. Liab. Co.*, No. 4:14-cv-00450-BLW, 2016 U.S. Dist. LEXIS 63457, at *8 (D. Idaho May 11, 2016).

In *Brown v. Arizona*, 2011 U.S. Dist. LEXIS 79267 (Dist. Ariz. 2011), the Arizona District Court examined whether Maricopa County, Arizona, was considered a joint employer of an employee of the Superior Court of Arizona (referred to as the Maricopa County Superior Court ("MCSC")), when the employee asserted a violation of her rights under the ADA. Maricopa County moved for summary judgment arguing it was not the employer and could not be liable under the ADA. The court first discussed the test for determining "joint employers," observing that "the Ninth Circuit has applied an

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

'economic reality' test to determine the existence of a joint employment relationship." *Id*. at *6 (citing *Torres-Lopez v. May,* 111 F.3d 633, 639 (9th Cir. 1997) (citation omitted)). "[A]ll factors 'relevant to the particular situation must be considered in evaluating the economic reality of an alleged joint employment relationship." *Brown*, *id*. at *6-7 (citing *Moreau v. Air Fr.,* 356 F.3d 942, 947 (9th Cir. 2004) (quoting *Torres-Lopez,* 111 F.3d at 639 (internal quotations omitted) (additional citation omitted)). *Brown* noted that no prior reported decision addressed joint employment in the FMLA context, and *Moreau* had applied the *Torres-Lopez* non-exhaustive factors to a FMLA claim, considering five factors in particular: "(A) The nature and degree of control of the workers; (B) The degree of supervision, direct or indirect, of the work; (C) The power to determine the pay rates [or] the methods of payment of the workers; (D) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (E) Preparation of payroll and the payment of wages." *Id.* at 947. *Brown* found no reported cases in the Ninth Circuit that there was a distinction between joint employment in the FLSA and FMLA contexts and joint employment under the ADA; consequently, *Brown* applied the same legal framework to the employee's ADA claim.[2] The court identified particular interrelationships between the parties, which suggested county control over the employee's employment, denying the county's summary judgment motion.

1. <u>Douglas County exercises a degree of economic control, consistent with the analysis in *Brown*</u>.

In *Brown*, the court found that the funding mechanism between the county and the court was sufficient evidence of economic control to defeat the county's summary judgment motion. The county argued that although it acted as a lump-sum funding source for the court (MCSC) pursuant to state law,

---

[2] *Brown* observed these factors were cited with approval in *EEOC v. Pac. Maritime Ass'n,* 351 F.3d 1270, 1275 (9th Cir. 2003), a Title VII case. The court noted that "the joint employer doctrine applies in the same manner across Title VII, Age Discrimination in Employment Act, <u>and ADA claims</u>." *Brown*, *id*. at fn.2 (emphasis added) (citation omitted). The opinion in *Pacific Maritime* appeared to have been withdrawn ahead of a rehearing *en banc*. *See* 367 F.3d 1167 *(9th Cir. 2004)*. Following the parties' stipulation to a dismissal ahead of that rehearing, however, the Ninth Circuit never vacated its prior order or reinstated the opinion of the three judge panel. Accordingly, the *Brown* court did not treat *Pacific Maritime* as binding precedent, although the court observed that the persuasive value it had supported the court's analysis. *Brown*, *id*. at fn. 2.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

MCSC was part of the Judicial Branch of Arizona and its employees were State employees. *Brown*, 2011 U.S. Dist. LEXIS 79267 at *11. The County argued that because the determination of how to spend MCSC's budgetary allowance was ultimately overseen by a Presiding Judge who did not report to the county or its Board of Supervisors (the "Board"), its role as a funding source did not entail economic control. *Id.* The plaintiff did not dispute that lump sum funding was provided by the county, but the employee noted the county's control over the size of the budget could and did affect MCSC operations and constituting sufficient control over the nature and viability of her employment. *Id*. at *12. The court determined that MCSC was generally able to obtain what resources it needed, but might not always be in full control of what resources it was able to procure, especially in times of fiscal crisis. *Id*. at *14. The possibility existed that the Board could determine MCSC's appropriation needs to be adjusted to fund only more necessary expenses. Thus, the court opined that the Board could even be justified in dramatically cutting MCSC's budget–and inherently, the ability to pay and retain many of its employees–if it could show good cause for doing so, possibly *like sharply dropping tax revenue during an economic recession*. *Id*. Ultimately, *Brown* held that:

> While MCSC may be able to requisition what is necessary to transact business, it cannot do so in a vacuum. Rather, it is constrained by the political process to reasonably interact and cooperate with its funding source, the Board. **This complicated relationship between the County and MCSC constitutes some level of economic control sufficient for a fact-finder to find the existence of a joint employment relationship over Plaintiff**.

*Id*. at *16 (emphasis added).

A similar conclusion was drawn in a 1955 Nevada Attorney General Opinion where the question was posed whether a county commissioner could lawfully serve as a probation officer without resigning as a commissioner. *See* Ex. 1. The Opinion examined the text of two provisions of the Juvenile Act of 1949, including Section 1038.10, which stated:

> The salaries of the probation officers, detention home personnel, and other employees shall be fixed by the judge with the advice of the probation committee and consent of the board or boards of county commissioners.

And Section 1038.25, which provided:

> All expenses incurred in complying with the provisions of this act shall be a county charge. The salaries, expenses, and other compensation of referees, probation officers, and all employees shall be fixed by the judge, within the limit provided by the county therefor.

The Nevada Attorney General opined that "[these] sections **very definitely place in the hands of the County Commissioners a strong measure of control over the salaries, expenses and other compensation of the Probation Officers** and other personnel connected with the administration of the Juvenile Act." *Id*. (emphasis added).

In Enos' case, the salaries of the two judges in the Ninth Judicial District Court are funded by the state, while the remainder of the funding for the Ninth Judicial District, including its operations and salaries of the juvenile probation department are funded through the Douglas County General Fund. Ex. 2 at p. 4 (DC 004130 describing General Fund), p. 8 (describing County funding of juvenile probation department); *and see*, ECF 107, Ex. 11, 72:17-19; 45:9-16. The evidence confirms that the Ninth Judicial District Court's budget appropriated by Douglas County was not spared during the severe economic crisis of Great Recession, confirming Douglas County's influence over operations of the Juvenile Probation Department. Enos' salary in the juvenile probation department was frozen in 2011, 2012 and 2013, after he had routinely received a 4-5% raise with each annual performance review in prior years. Ex. 3 (right hand column showing proposed salary increase, and proposed adjusted salary crossed out to show "0" increase). Enos' salary freeze corresponds to the reductions in juvenile probation department personnel budget line item in the County's budget for those years. *See* Ex.4, p. 4 (personnel services line item); Ex. 5, p. 4 (personnel services line item); Ex. 6, p. 4 (personnel service line item); and see, Exs. 4-6 at p. 3 (each budget describing economic downturn and pay reductions for some employees). As well, Enos testified while other departments suffered layoffs during the recession, the juvenile probation department filled in shifts at the detention center and scaled back travel to training to stay in in Reno or Lake Tahoe, as ways to deal with the budget crisis. ECF 107, Ex. 4, 33:8-11; 172:18-20.

Although Defendants rely on *Young v. Bd. Of County Comm'rs*, 91 Nev. 52, 530 P.2d 1203 (1975), *Young* left open the question of a county "veto" of the court budget where the request was unreasonable in light of county fiscal conditions. The parties in *Young* stipulated that the court's

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

budget request was reasonable; accordingly, *Young* only answered the question of whether "consent" as used in NRS 62.110, included the county commission's ability to "veto" a reasonable budget request. *See Young*, 530 P.2d at 1205. The Nevada Supreme Court expressly acknowledged the open question of the county's ability to veto an unreasonable budget request vis-à-vis fiscal conditions, stating "[h]ad the commissioners so found [it was unreasonable] and predicated refusal to 'consent' on that basis . . . this this court would have been constrained to undertake final resolution of that fundamentally factual issue." *Id.*; *and see*, *Bd. of Cty. Comm'rs v. White*, 102 Nev. 587, 591, 729 P.2d 1347, 1351 (1986) (*Young* addresses itself to situations where *available* funds necessary to fulfill judicial responsibilities are withheld).

The Nevada Attorney General in 1955 opined that funding budgeted by the county for the salaries and expenses of juvenile probation officers gave the county commissioners a strong measure of control over the salaries, expenses and other compensation. As *Brown* held, the relationship between the county and the court constituted some level of economic control sufficient for a fact-finder to find the existence of a joint employment relationship over the employee in that case. As with *Brown*, the Douglas County Juvenile Probation Department is funded entirely through the Douglas County General Fund, which appropriations demonstrate a level of economic control over the operations of the juvenile probation department, particularly as demonstrated during the Great Recession due to fiscal constraints on the County.

2. Douglas County prepares the payroll and the payment of wages and controls the methods of payment of the workers.

Douglas County exclusively prepared and made payroll of Enos' wages. Ex. 7 (DC 000110). As well, with regard to the method of payment, ordinary payroll is made by Douglas County through direct deposit; however, in the case of Enos' last paycheck, the County issued a manual paycheck, confirming Douglas County prepares the payroll and controls the method of payment of the workers. Ex. 7 (DC 000112). *NJDC Personnel Regulations* § 6.011 expressly recognize the delegation by the Court of maintenance of attendance leave and pay records, to an "*office delegated to maintain such records.*" ECF 107, Ex. 2, § 6.011.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

3. Douglas County has the right to indirectly hire and fire employees.

Defendants cite Nevada Attorney General Opinion 212 (June 16, 1977), whether County Commissioners have authority to hire, fire or reprimand juvenile probation employees. ECF 114, Ex. 2. Douglas County's reliance on this opinion ignores the purpose of applying the "economic reality" test to consider *all factors relevant* to the existence of a joint employment relationship. *Brown*, at *6-7. Thus, the Court must look beyond mere statutory labels and examine the role the County played in all actions described herein.[1] As a preliminary matter, *NJDC Personnel Regulations* § 2.02 states that "[t]he Judges authorize to the Douglas County Human Resources Department to interpret and administrate this Order, subject to review and direction from the Judges." ECF 107, Ex. 2 at § 2.02 (emphasis added). As the evidence below confirms, the judges took no role whatsoever in the hiring, discipline or termination of juvenile probation department employees; and as such, gave no review or direction against the actions of Douglas County Human Resources and other employees concerning its actions in interpreting and administrating the *NJDC Personnel Regulations.* The actions of Douglas County employees leading up to and including Enos' termination and events thereafter concretely demonstrate that the County is a joint employer in this case.

Defendant Shick described the County's role in the hiring process that he would put in a position requisition, which *gets approved by the county HR director and the county manager*; HR advertised the position; HR accepted applications; HR screened the applications and generated a list of qualified individuals for Shick along with interview questions; and, County staff sat on interview panels and participated in the selection process of juvenile probation department employees. ECF 107, Ex. 11, pp. 40-42. During the hiring process to replace Defendant Sauer-Lamb, an interview panel was

[1] The propriety of applying the economic reality test in the instant case is confirmed by the *Withers* case cited by Defendants. *See* ECF 114 at 4:21-22. In the Arkansas Eastern District Court action giving rise to the Eighth Circuit opinion cited by Defendants, the District Court applied the factors of the economic reality test. *See Withers v. Johnson*, 2013 U.S. Dist. LEXIS 92800 (E.D. Ark. July 1, 2013). Enos's case is clearly distinguishable from *Withers,* however. There, the employee failed to offer any evidence that the county controlled his employment conditions or managed any details of his work. As well, the employee did not dispute critical elements, including the county's authority to hire or fire him. However, germane to the Court's analysis here, is that the District Court found that the county policies favored finding a joint employment relationship because the county's policies framed the dispute. *Id*.



The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

assembled that included Shick, Deputy District Attorney Zach Wadle, a court secretary named Vicky Barrett and Defendant Sauer-Lamb. ECF 107, Ex. 11, 82:15-23; *and see*, ECF 107, Ex. 14, 67:12-17 (Sauer-Lamb similarly describing the interview panel as herself, Shick, DDA Zack Wadley [sic], and former administrative assistant Vicky Barrett). The Ninth Judicial District Court judges did not participate in the selection process. ECF 107, Ex. 11, 82:8-14; ECF 107, Ex. 14, 67:18-21. When Mike Torres was selected to replace Defendant Sauer-Lamb, Shick testified that decision was a "team effort" and a "decision of the panel," and Sauer Lamb stated that "they all had an equal say in the decision," despite that the interview panel included County employee Zach Wadle and possibly Vicky Barrett. ECF 107, Ex. 11, 83:17-21; 84:21-85:1; 88:6-10; ECF 107, Ex. 14, 70:7-11.

Shick testified that the judges had no role in hiring, firing, supervising or disciplining probation officers. ECF 107, Ex. 11 at 20:11-16; 33:18-22. Shick further testified that he relied on County employees, including HR Manager Norma Santoyo and Deputy District Attorney Justina Caviglia in his decision to terminate Enos, and he considered them experts in their areas, so he did not question their advice. ECF 107, Ex. 11, 54:4-7, 14-21; 55:3-12; 254:10-14, 18-20.

When Enos resisted being terminated to Norma Santoyo stating he could not just be fired and pushed out the back door after 20 years due to becoming disabled, Santoyo responded "**we** kind of can." ECF 107, Ex. 4, 152:3-19 (emphasis added). Similarly, it was Deputy DA Caviglia who advised Shick that Enos was "too much of a liability" to keep Enos employed. ECF 107, Fact No. 45. Shick did not write Enos' termination letter, but it was written by a Deputy in the District Attorney's Office, presumably Deputy DA Caviglia. ECF 107, Ex. 11, 263:18-264:1. Shick's termination letter identifies the Ninth Judicial District Court *and* Douglas County, Nevada, in the letterhead and was copied to County employees Santoyo and Caviglia, upon whose advice and drafting Shick used to terminate Enos – not the judges. ECF 107 at Ex. 11, Tr. Ex. 18. Shick also testified that the *NJDC Personnel Regulations and* Human Resources' administrative policies governed discipline and firing of juvenile probation officers. ECF 107, Ex. 11, 34:11-16; *and see also*, *id.* at 39:17-40:3 (Shick stating Judges yield to county human resources policy and procedure of the court order). Shick did not notify Judge Young that Enos was terminated until *the day after* Enos was terminated, (Ex. 8), and according to Shick, the District Court judges had no role at all in Enos' termination. ECF 107, Ex. 11, 481:6. In

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

contrast, the County acted as a joint decision-maker, implemented by Shick, solidifying that the County had indirect authority to terminate Enos.[2]

4. Douglas County has authority to modify the employment conditions of the workers, including the power to determine the pay rates.

*NJDC Personnel Regulations* § 4.02 concerns classification and reclassification of positions, and requires that Doulas County Human Resources "shall" examine the nature of all positions, develop and recommend policies to the Judges and Court Administrator, make changes in the compensation and classification plan as necessary due to changes in the duties and responsibilities of existing positions, and to recommend compensation and appropriate changes to job descriptions." ECF 107, Ex. 2 at § 4.02. In or around 2014, Douglas County conducted a classification study of the Senior Juvenile Probation Officer position, which Enos participated in. Ex. 9. The position description classification questionnaire is clearly entitled "DOUGLAS COUNTY." *Id.* Indeed, all existing job descriptions relevant to the issues in this case are issued under Douglas County, alone. *See generally, e.g.*, ECF 106, Exs. 1, 3, 5 and 46. Similarly, Enos' performance evaluations for his entire tenure are entitled "Douglas County" performance evaluations. Ex. 10.

Additionally, court employee medical and dental benefits are provided solely through the County. ECF 107, Ex. 2, § 5.012. The *Ninth Judicial District Court* ("NJDC") *Court Personnel Regulations* adopt County policies as controlling terms of employment with respect to court personnel, including: annual leave is controlled by Douglas County Policy 200.36 (*Id*. at § 5.012); sick leave is controlled by Douglas County Policy 200.44 (*Id*. § 6.03); the disciplinary process requiring presenting written charges to county human resources and deputy district attorney to review prior to service on the employee and hearing process including HR department appointment of hearing panel (*id*. § 7.02). Where County policies are not expressly adopted in the *NJDC Personnel Regulations*, § 10.0 states that the *NJDC Personnel Regulations* will defer to County Administrative policies to "fill the gap" on

[2] Similarly, Shick testified that he relied on advice of County HR Manager Santoyo and Deputy District Attorney Caviglia when an employee is injured. ECF 107, Ex. 11, 53:22-54:6; 65:20-55:10, 20-22 (Shick stating he met with Santoyo and Caviglia and relied on their expertise in their advice to him and the judges *did not* attend such meetings).

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

issues not governed by *NJDC Personnel Regulations*. *See id*. at § 10.0. Conversely, *NJDC Personnel Regulations* § 10.0 requires that Court Orders and Policies and Procedures MUST be provided to [Douglas County] HR . . . *to be enforceable*. *Id*. at § 10.0 (emphasis added). Finally, when Enos requested a leave of absence as one form of accomodation (*see* ECF 107, Fact No. 43), Shick stated he considered the request under *Douglas County* Policy 200.40 and denied it, which denial was issued on letterhead that bears both the Ninth Judicial District Court *and* Douglas County, Nevada. *See* ECF 107, Fact No. 49. Many of these policies frame the issue in this case, which militates in favor of finding a joint employment relationship. *Withers*, 2013 U.S. Dist. LEXIS 92800. Finally, the medical release requirement issued by Santoyo as the County HR Manager, was issued under Douglas County, and was copied to Shick and Deputy DA Caviglia. ECF 107, Ex. 07, at Tr. Ex. 10.

5. Additional evidence supporting a joint employer relationship.

Other evidence exists that Douglas County was an employer or joint employer of Enos, including evidence that Douglas County held itself out to be the employer of Enos—including to a judicial officer. In Enos' worker's compensation case, entitled *In the Matter of the Industrial Compensation Claim Of John Enos*, pending in the Nevada Department of Administration Before the Appeals Officer, including for Claim Nos. C143-13-07514-01 and C143-14-08293-01 (collectively, "Worker's Compensation Litigation"), Robert Balkenbush, Esq., of Thorndal Armstrong Delk Balkenbush & Eisinger—the *same law firm* representing Defendants Douglas County, Scott Shick, and Vicky Sauer-Lamb in *this* case—made representations to the judicial tribunal, confirming that Douglas County was the employer of Enos. Specifically, Mr. Balkenbush prepared, signed, and publicly filed a document to the hearing officer in the Worker's Compensation Litigation, that identified himself the "Attorneys for: Douglas County, Employer and Public Agency Compensation Trust, Insurer." *See* Ex. 11, a true and correct copy of document entitled "Settlement Agreement," filed by Mr. Balkenbush in the administrative court, at 1:1-5).[3] Mr. Balkenbush expressly represented to the tribunal in the

[3] This document was produced by Enos in litigation as PLF-02369-PLF-02379, and is authenticated in ECF 107-1 ¶ 13. Enos requests that the Court take judicial notice of this publicly-filed judicial filing, which bears the Hearing Officer's filing stamp on PLF-02369, at p. 1, top right corner. *See* Fed. R. Evid. 201(b). *See In re MGM Mirage Derivative Litig*., No. 2:09-cv-01815-KJD-RJJ, 2014 U.S. Dist. LEXIS 88967, at *7 (D. Nev. June 30, 2014) (taking judicial notice of court orders of Nevada courts).
.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

*Recitals* Section of this filing, that "the employer in these contested matters is Douglas County (hereinafter 'DC')," clearly distinguishing Douglas County, as Enos' *employer*, from the Public Agency Compensation Trust and the third-party administrator for Enos' worker's compensation claim. *Id*., 1:27-2:5; *and see also, id.*, 2: 7-16, 18-19, 20-25. The statements of Mr. Balkenbush are relevant in this case as the Worker's Compensation Litigation is related to the claims of this case on ADA issues and the tortious-discharge claim. See *e.g*., ECF-062, 11:11-23 (Enos' First Workplace Injury relates to WC Claim No. C143-13-07514-01); *see id*., at 11:24-12:10; *see id*., 12:11-25 (Enos' Second Workplace Injury, which relates to WC Claim No. Claim No. C143-14-08293-01); *see id*., at 12:26-13:24; *see id*., 15:1-16:2 (Enos' medical leave related to his workers' compensation claim); and *see id*., 39:16-40:19 (tortious-discharge claim). To be sure, even opposing counsel represented in her disclosures under Rule 26, that the Worker's Compensation Litigation is related to the claims of this case.[4] Ex. 12, at 6:1-2 (producing documents from Enos' worker's compensation documents from Enos' workers' compensation claims, "Bates" stamped DC-002726-DC002759).[5]

The County can be judicially estopped from disowning its prior assertions that it was the employer of Enos. *Judicial estoppel* is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citation omitted)). Importantly, "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (emphasis added) (citation omitted). Here, Douglas County through its representative, Thorndal Armstrong *et al*., admitted that it was the employer of Enos, only to later attempt to argue inconsistently with that admission, through the same law firm, Thorndal Armstrong *et*

[4] Mr. Balkenbush has actually made an appearance in this litigation, objecting to *a subpoena duces tecum* of Karen Barbee, the third-party administrator for Enos' worker's compensation claims, further showing a strong connection between the Workers Compensation Litigation and this action. *See* ECF 084.

[5] Authenticated in ECF 107-1 ¶ 14.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

*al*. The County and its counsel is *estopped* from arguing inconsistently here—even if the County were to strategically claim that Mr. Balkenbush was mistaken.[6,7]

Taken together, there is ample evidence that confirms that Douglas County is an employer or joint employer of Enos, and accordingly, Douglas County's argument that it cannot be liability under any ADA claim, must be rejected.

**B. No Fact Issue for Jury Exists That Enos is Disabled Under the ADA**

Enos moved for summary judgment on the fact that he is disabled under all three tests for such a determination within the meaning of the ADA, including that Enos: (a) had a physical or mental impairment that substantially limited one or more of the major life activities of such individual; (b) had a record of such an impairment; or (c) was regarded as having such an impairment. 42 U.S.C. §12102(2). Major life activities include performing manual tasks such as lifting. 42 U.S.C. § 12102(2)(A)-(B). *See* ECF 107, 19:11-20:14.

Douglas County first responds that the County cannot be liable under the ADA (*see* ECF 114 at 7:2-7); however, for the reasons demonstrated in the foregoing argument, this is false. Second, Douglas County responds that whether Enos is disabled within the meaning of the ADA is a fact issue for trial; however, the County has failed to demonstrate that there exists any genuine dispute regarding whether Enos was disabled at the time of his termination. For example, Enos testified that he was rated as permanently disabled for both of his workers' compensation claims. ECF 107, Ex. 4, 237:8-10. For his injuries, Enos was still receiving medical treatment at the time he was terminated, which was known to

---

[6] Clients are bound by the actions and statements of their attorneys, even if the attorney claims to have made a "mistake." *See* Gottwals v. Rencher, 60 Nev. 47, 53, 98 P.2d 481, 488 (Nev. 1940) (a litigant party shall not be permitted to deny the authority of his attorney of record).

[7] Finally, other documents confirm that Douglas County considers itself to be an employer of Enos. *See* Ex. 13 (correspondence to opposing counsel in the Workers Compensation Litigation, confirming representation of the Employer, Douglas County); Ex. 14, Notice of Appearance by Mr. Balkenbush in the Workers Compensation Litigation, at 1:15-19 (noting that Mr. Balkenbush "will appear as counsel for the Employer, Douglas County, and the Insurer, Public Agency Compensation Trust"); and *see* Ex. 15, excerpt (*i.e.*, excludes exhibits) of Mr. Balkenbush's *Application for Stay* filed in the Workers Compensation Litigation, at 1:18 and *id*., at 2:1-7 (representing to the judicial officer that Douglas County was the employer of Enos). These documents are self-authenticating. *See* Fed. R. Evid. 901(a); and *Demirchyan*, 2010 U.S. Dist. LEXIS 93090, at *2-5. Mr. Balkenbush's letter and court filings bears the official letterhead of the Thorndal Armstrong Firm, which constitutes extrinsic evidence "sufficient to support a finding that the matter in question is what its proponent claims."

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

Douglas County. ECF 107, Fact Nos. 73-74. Indeed, when Defendants were planning to inform Enos on Friday, January 13, 2015, of the requirement to return with full medical releases by the following Tuesday, they discussed informing him prior to a shoulder surgery that they knew had been scheduled for January 18, 2015. *See generally,* ECF 115, Ex. 1 at p. 7 (DC005513). Thus, they had clear knowledge of Enos' existing disabilities and the record of ongoing medical treatment for his disabilities. *Id.; and see*, ECF 107, Ex. 07, at Tr. Ex. 10 (describing Enos' condition as a serious health condition). When Santoyo required Enos to return with full medical releases, Enos obtained a full release from Dr. Eisenhauer on a *trial* basis. ECF 107, Fact No. 39. The medical release of Dr. Morales obtained at the same time contained lifting restrictions. ECF 107, Fact Nos. 38-39. Once it became clear that Defendants were intent on terminating Enos, Santoyo recommended Enos apply for a PERS disability retirement, which, at a minimum demonstrates the County perceived him to be disabled. ECF 107, Fact No. 72. Finally, Douglas County's Request for Admission No. 28 admitted Enos had a physical impairment or impairments that substantially limited the major life activity of working. ECF 107, Ex. 10, Response to RFA No. 28. Coupled with all of the evidence of Enos' permanent disabilities, ongoing medical treatment, other releases containing medical restrictions, a trial full-release is not indicative of the *absence* of a disability – an unsupported theory advanced by Douglas County. *See* ECF 114 at 7:27-28. The evidence of Enos' disability under all three tests is overwhelming and uncontroverted by Douglas County. No reasonable jury could find in Douglas County's favor that Enos was *not* disabled under the ADA.

### C. <u>There is No "Genuine" Dispute Over Enos' Intent *Not* to Resign</u>

Defendants attempt to steer the Court away from adjudicating the straightforward issue in Section IV(B) of Enos' Motion because there can be only one conclusion drawn that Enos did not voluntarily resign; hence, the Court can rule on this issue as a matter of law. *Alberty-Velez v. Corporacion de P.R. para la Difusion Publica*, 361 F.3d 1 (1st Cir. 2004) (partial summary judgment is a pre-trial adjudication that certain issues are established for trial).

First, Defendants misstate the issue posed by Enos in Section IV(B) of the Motion. Enos requests the Court determine that his separation from employment was not of his own volition, *e.g.*, it was not voluntary, according to the definitions of the *NJDC Personnel Regulations* and *Douglas*

*County Personnel Regulations*. Defendants contend this is a purely factual issue, precluding summary judgment. Defendants are incorrect. This issue concerns Enos' intent and is quite capable of being determined on summary judgment where there is no dispute over the *relevant* facts, and because the Court can interpret court rules and county code as a matter of law.

The undisputed facts demonstrate that Enos wanted to return to work, he attempted to return to work, he attempted to do everything asked of him by obtaining medical releases, he requested accommodations, he stated to Defendants that he was "worried about his job" and according to Shick, Enos "Enos wanted to keep his job." ECF 107, Fact Nos. 22-29, 30-31, 34, 36, 38-39, 40-42, 46 48, 51-52 and 53. Once terminated, Enos refused to sign the personnel action form as firm declaration he was not voluntarily resigning. *Id*. at Fact No. 50. There can be only one conclusion drawn that Enos did not want to resign. Where there is no fact-issue for a jury, the Court can interpret the *NJDC Personnel Regulations* and the *Douglas County Personnel Regulations* as a matter of law, because the interpretation of court rules presents an issue of law. *Rawlings v. Rawlings*, 200 P.3d 662, 666 (U. Ct. App 2008) (reversed on other grounds by 240 P.3d 754 (Utah 2010), and judgment on remand aff'd by 358 P.3d 1103 (Utah 2015); *see, also, e.g., Davidson & Jones Dev. Co. v. Elmore Dev. Co*., 921 F.2d 1343 (6th Cir. 1991) (Questions of statutory construction may be resolved by summary judgment). The applicable *NJDC Personnel Regulations* defined "resignation" as "the voluntary ending of employment by a Ninth Judicial District employee," and the applicable *Douglas County Personnel Regulation* defined "resignation" as "the choice of an employee to end employment with the county." *See* ECF 107, Fact Nos. 54-55. Enos requests the Court interpret these regulations as a matter of law and determine that his separation was neither voluntary, nor was it his choice to end his employment. *See id.*

Defendants also attempt to create a fact issue by raising issues that are irrelevant to the question presented in Section IV(B) of Enos' Motion, by seguing into due process arguments and their theory of why Enos was terminated. *See, e.g*., ECF 114 at 8:14-9:6. These arguments, aside from being unsupported by any citation to evidence in the record, are not relevant to the singular question of whether Enos wanted to resign, or not. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510 (factual disputes that are irrelevant or unnecessary will not be counted); *Gonzales-McCaulley Inv. Grp., Inc. v.*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

*United States*, 101 Fed. Cl. 623, 629 (2011) (citations omitted) (bald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion). Consequently, Defendants' argument sidesteps their obligation as the party opposing summary judgment to "bring to the district court's attention some affirmative indication that his version of relevant events" is more than a "fanciful" one. *Gardenhire v. Manville*, No., 2017 U.S. Dist. LEXIS 15348, at *25 (D. Kan. Feb. 2, 2017) (citation omitted).

Enos clearly indicated in his Motion that the issue of whether he resigned or was terminated is germane to his ADA claim that he suffered an adverse employment action. ECF 107 at 20:17-21:3; *Bodenheimer v. PPG Indus*., 5 F.3d 955 (5th Cir. 1993) (a court is not precluded from ruling on state of mind on summary judgment). No evidence before the Court supports a theory that Enos wanted or chose to resign. Because a reasonable jury could not find for Defendants on this fact, the Court can adjudicate it by summary judgment. Considering the overwhelming and uncontested evidence that Enos did not voluntarily resign, the Court can interpret the *NJDC Personnel Regulations* and the *Douglas County Personnel Regulations* and rule as a matter of law that Enos' separation was not voluntary, but that he was terminated. *Sears, Roebuck & Co. v. American Plumbing & Supply Co.*, 19 F.R.D. 334 (D. Wis. 1956) (It is duty of court to narrow issues so that upon trial of action all facts so found will be deemed established and trial may be conducted accordingly).

**D. <u>Defendants' Actions Concerning Enos' Disabilities Are Relevant to the Ultimate Issues In This Case; Therefore, the Court Can Pass on Defendants' Motive at the Summary Judgment Stage</u>**

Regarding § IV(C) of Enos' Motion, Defendants again argue that the County is not the employer under any ADA theory, which argument cannot prevail, as set forth above. *Supra*; *and see*, ECF 10:15-19.

Defendants also argue that *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005), is no longer good law concerning the "motivating factor" standard for causation in ADA cases. During briefing of the parties' respective partial summary judgment motions, the Ninth Circuit recently clarified the causation standard in ADA cases in *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. August 20, 2019). In *Murray*, a Ninth Circuit three-judge panel overruled *Head* pursuant to the

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

reasoning generally stated by Defendants in their Opposition. *Id.* Consequently, *Murray* adopted a "but for" causation standard for ADA cases. *Id*. This, however, does not end the inquiry presented by § IV(C) of Enos' Motion. *See* ECF 107, at 22:15-25.

Enos alleged in the Third Amended Complaint that Defendants' illegal actions were "because of," *i.e*., "but for" his disabilities. ECF 062 at ¶¶ 62, 80, 82, 92, 111-112 and 115. Under the clarified standard just announced in *Murray*, the facts are undisputed that Enos' termination was linked with his inability to provide medical releases that were satisfactory to Defendants. *See generally*, ECF 107 at §§ IV(A)-(C), *and see id*., Fact Nos. 25-30, 34, 38-40, 43-49, and 51-52. His medical releases were linked to his disabilities; consequently, the Court should the intervening law change in *Murray* to find that Enos would not have been terminated but for his disabilities. This fact is not disputed by Douglas County. *See* ECF 114 at 13:18-19, 27-28 ("Enos was separated due to inability to perform essential functions [*i.e*., his disabilities] and not for performance of disciplinary issues").

Alternatively, if the Court declines to rule on the ultimate issue of "but for" causation, there is no dispute that Enos' disabilities were on Douglas County's mind when Enos was terminated, and a finding by the Court that *any* motive or intent related to his disabilities is relevant to the ultimate issue at trial of "but for" causation. "A fact is 'material' if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nolan v. Arkema, Inc.*, 809 F. Supp. 2d 356, 361 (E.D. Pa. 2011) (citation omitted); *Fenje v. Feld*, 301 F. Supp. 2d 781 (N.D. Ill. 2003), aff'd, 398 F.3d 620 (7th Cir. 2005) (summary judgment will not be defeated simply because issues of motive or intent are involved; there is no basis for excluding evidence as to motive or intent as it is legal question as to whether evidence undisputedly establishes any material factual issues). A determination by the Court that there was any motivation (versus no motivation) is still relevant to the ultimate issues for trial.

**E. <u>Sufficient Evidence Exists to Conclude a Policy Existed That Amounted to a Per Se Violation of the ADA, When Enos Was Required to Provide "Full" Medical Releases</u>**

Concerning § IV(D) of Enos' Motion, Defendants again argue the County is not the employer. ECF 114 at 11:28-12:4. Here again, this position is not sustainable in light of the joint employer analysis, *supra*. Defendants also argue that a fact issue exists concerning the existence of a County

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

policy, given that Enos received light duty after his Second Workplace Injury, but was later required to provide "full" medical releases in January, 2015. *See* ECF 114, 12:9-15.

In *Sexton v. Cty. of Santa Clara*, 7 F. App'x 736, 738 (9th Cir. 2001), a disabled person alleged ADA discrimination by the county pursuant to a policy of the defendant county. *Id*. The court stated that the plaintiff had to allege that the actions inflicting injury: "(1) flowed from either an explicitly adopted or a tacitly authorized county policy, *see Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997); (2) were the result of a deliberate choice among various alternatives by an appropriate policy-making official of the county, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); or (3) reflected a subordinate's decision, and the official county policy-maker had delegated authority to the subordinate or ratified that decision. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988)." *Id.*; *see also, e.g.*, *Pembaur, supra* (further describing that liability may be had for a single, isolated violation). Santoyo, the Douglas County HR Manager, has express delegated authority in *Douglas County Personnel Regulation* § 2.02.020(B), as the person "responsible for the interpretation and administration of this chapter and amplifying rules, regulations and policies." ECF 107, Ex. 6, p. 3 (§ 2.02.020(B)). Likewise, *NJDCR Personnel Regulation* § 2.02 authorized the Douglas County Human Resources Department to interpret and administrate the Ninth Judicial District Court personnel regulations. ECF 107, Ex. 2 at § 2.02.

These express delegations of authority to Santoyo to interpret and apply the *Douglas County Personnel Regulations* and the *NJDC Personnel Regulations* reflects a policy in Santoyo's August 13, 2015 letter, requiring that Enos provide "full" medical releases. Santoyo's letter reflects a subordinate's decision pursuant to her delegated authority to make that decision. *Praprotnik*, *supra*. Although the delegation granted by the *NJDC Personnel Regulations* was subject to review and direction from the Judges, Shick's testimony set forth in the preceding sections of this Reply Brief confirms that the Judges assumed no role in Human Resource matters, and as such, did not repudiate the fully healed policy established by Santoyo. Further, the fully healed policy was not repudiated by Shick, and in fact, was fully embraced and ratified by him where he considered Santoyo to be an expert in the area of HR. ECF 107, Ex. 11, 55:9-10; 93:4; 127:16-21; 163:2-7, 15-21; 211:8-12; 212:7-14; 165:8-14; 254:10-14, 18-20; *and see specifically, id*. at 200:10-15 (whether Shick knew whether the full medical

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

release requirement complied with the ADA, answering "I'm not aware of the ADA regulations. I refer to the Human Resources and our District Attorney to make those decisions within the framework of that expertise.").

The County had a fully healed policy on January 13, 2015, when Santoyo, the person with express delegated authority required that Enos provide full medical releases. Said policy was a *per se* violation of the ADA, because it did not allow for an individual assessment of an individual's ability to perform the essential functions of the person's job with or without accommodation. *Hutchinson v. United Parcel Serv., Inc.*, 883 F. Supp. 379, 397 (N.D. Iowa 1995). In light of the foregoing, there is no dispute that Santoyo required Enos to provide "full" medical releases. At a matter of law, the Court can find that said requirement amounted to a policy made pursuant to her express delegation of authority, and that said policy was a *per se* violation of the ADA.

**F. <u>As Applied, the AWOL Policy Violates Enos' Right Under the ADA</u>**

Regarding § IV(E) of Enos' Motion, Defendants rely on their misplaced argument lodged in response to § IV(B) of Enos Motion. *Supra*. Defendants argue, incorrectly, that the same issue is posed in §S IV(E) and IV(B). This is wrong, as § IV(E) argues that the *AWOL regulations* violate Enos' rights *as applied* to his disabilities. Defendants' requirement to produce a full medical release in order to return to work constituted a *per se* violation of the ADA. *Supra.* Despite that Defendants characterize Enos' separation of employment as an "automatic resignation" for being "AWOL" for three days, such a characterization is not only a fiction, but the application of the *County Personnel Regulations* § 2.02.080 and *NJDC Personnel Regulation* § 6.062 maintain this fiction violating the ADA. Sections 2.02.080 and 6.062 are not facially violative of the ADA, but the policies, coupled with Defendants' full-medical-release requirement violates the ADA because it made no allowance for the operation of the ADA protections. Consequently, under this separate legal basis distinguished from § IV(B), the Court can find that Enos did not voluntarily resign from his position.

**G. <u>Summary Judgment Should be Granted on the Issue of *Whether* Enos Had a Protected Property Interest in His Employment, and *What* Process Attaches to Such a Property Interest</u>**

Defendants casually claim, again, that fact issues prevent the Court from adjudicating any issues found within §§ VI(F), (G) and (H) of Enos' Motion, yet Defendants cite no evidence of a *genuine*

dispute over *material* facts. They claim that a disputed issue is that Enos was separated due to his inability to perform the essential functions, yet they cite nothing in support of this bald assertion. *See Gonzales-McCaulley, supra,* (bald assertions and speculation do not create an evidentiary conflict sufficient to defeat summary judgment). In Section IV(F), the issue posed is *whether* Enos has a protected interest in his employment, and *what* process attached to such a property interest. Defendants do not dispute that Enos is a classified employee, and as such, the Court should find that he has a protected property interest in his employment. *See Palm v. L.A. Dep't of Water & Power*, 889 F.3d 1081, 1085 (9th Cir. 2018) ("A [state] law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged."). Having concluded that Enos has a property interest in his employment, the Court can determine and define *what* protections and process attach to such a property interest. Enos had a protected property interest in his job, entitling him to due process protections, including under NRS 62G.060(1) and the NJDC Personnel Regulations §§7.01-7.06. *See* ECF 107, Fact Nos. 6-15.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

### H. <u>The Court Can Grant Summary Judgment on Enos' Due Process and Wrongful Termination Claims</u>

Shick and Douglas County were required to provide Enos with requisite due process, to engage in a determination as to whether Enos' could be terminated for cause. However, Shick and Douglas did not do this. There were statutory restrictions on Defendants' right of discharging Enos, under NRS 62G.060(1) and the NJDC Personnel Regulations §§7.01-7.06. ECF 107, Fact Nos. 6-15. Enos received none of these due process protections before or after he was terminated. *Id*. at Fact Nos. 56-61. In the absence of a lawful basis for Defendants to rely on their "voluntary resignation" theory, when discharging Enos, Defendants did not engage in the requisite due process to determine whether his termination was for cause. Accordingly, there has been no proper for-cause determination. For the foregoing reasons, Enos requests partial summary judgment that Defendants denied Enos due process and breached their duties and their termination of Enos violated his constitutional rights and was wrongful.

. . .

. . .

**I. <u>Enos' Motion Should be Granted Regarding His Reapplication in January, 2017</u>**

When Enos reapplied for the position of Juvenile Probation Officer in January, 2017. He was disabled. ECF 107, Fact Nos. 23-30, 43-48, 51-52, and 73-75. He stated on his application that he could perform the essential functions of the job with or without a reasonable accommodation; however, Defendants did not consider Enos' application and failed to hire him *because of his Disabilities*. ECF 107, Fact Nos. 69-71. They were motivated by Enos' Disabilities when refusing to consider his application and hire him. *Id*. Defendants' misstate the evidence in an attempt to create a fact issue to defeat summary judgment. Indeed, Defendants argument is a complete red herring on the issue that they were motivated by his disabilities and failed to consider whether he could perform the essential functions with or without a reasonable accommodation in refusing to hire him. Plaintiff addressed the vocational rehabilitation and PERS disability evidence in his *Opposition to Defendants' Motion for Partial Summary Judgment* at ECF 115 at pp. 18-19 (PERS disability) and pp. 26-27 (vocational rehabilitation and re-application). Plaintiff respectfully incorporates his analysis concerning that evidence here, which confirms that there is no fact issue on concerning Enos' 2017 re-application, and Plaintiff should be granted summary judgment.

**III. CONCLUSION**

The foregoing arguments demonstrate that there is no *genuine* issue of *material* fact in dispute on the issues Enos has moved for partial summary judgment on. Accordingly, Enos respectfully requests that judgment as a matter of law be GRANTED on the foregoing issues.

Dated this 22nd Day of October 2019.

THE GEDDES LAW FIRM, P.C.

_______________________________
Kristen R. Geddes
Nevada Bar No. 9027
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Email: Kristen@TheGeddesLawFirm.com
*Attorneys for Plaintiff JOHN ENOS*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Geddes Law Firm, P.C., and that on **October 22, 2019**, I caused to be served a copy of the foregoing *Plaintiff's Reply to Defendants' Opposition to Motion for Partial Summary Judgment,* by electronic filing with the Court's Pacer e-filing system, addressed to:

Katherine F. Parks, Esq.
THORNDAL ARMSTRONG DELK BALKENBUSH & EISINGER
6590 S. McCarran Blvd, Suite B
Reno, Nevada 89509
Email: kfp@thomdal.com

*Attorneys for Defendants Douglas County, Scott Shick, and Victoria Sauer-Lamb*

KRISTEN R. GEDDES
An employee of the Geddes Law Firm, P.C.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

**TABLE OF EXHIBITS TO:**
***Plaintiff's Reply to Opposition to Motion for Partial Summary Judgment***

| Ex. No. | Description |
|---|---|
| 01 | Nevada Attorney General Opinion 1955-12 |
| 02 | Douglas County Budget FY 2015-2016 (excerpt) |
| 03 | Douglas County Personnel Action Forms for John Enos |
| 04 | Douglas County Budget FY 2012-2013 (excerpt) |
| 05 | Douglas County Budget FY 2013-2014 (excerpt) |
| 06 | Douglas County Budget FY 2014-2015 (excerpt) |
| 07 | Payroll/Last Paycheck Information |
| 08 | Exhibit 34 to Christensen Depo. (Shick e-mail to Judge re Enos termination) |
| 09 | Douglas County Classification Study Questionnaire |
| 10 | Douglas County Performance Evaluations, John Enos |
| 11 | Settlement Agreement in Workers' Compensation Litigation |
| 12 | Defendants' Fourth Supplemental Disclosures |
| 13 | Balkenbush Letter of Representation re: Employer Douglas County |
| 14 | Balkenbush Notice of Appearance re: Employer Douglas County |
| 15 | Balkenbush Motion for Stay re: Employer Douglas County |

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455