UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN ENOS,<br><br>                    Plaintiff,<br>    v.<br>DOUGLAS COUNTY, *et al.*,<br>                    Defendants. | Case No. 3:17-cv-00095-MMD-CBC<br><br>ORDER |

**I.    SUMMARY**

This is an employment discrimination case that stems from a work-related injury. Before the Court is Plaintiff John Enos's Motion for Partial Summary Judgment ("Plaintiff's Motion") (ECF No. 107) and Defendants'[1] Motion for Partial Summary Judgment ("Defendants' Motion") (ECF No. 106).[2] For the reasons explained below, the Court will grant and deny in part each parties' motion.

**II.    BACKGROUND**

The following facts are undisputed unless otherwise indicated.

From June 13, 1998 through February 19, 2015, Plaintiff was employed as a Juvenile Probation Officer and then a Senior Juvenile Probation Officer at the Juvenile Probation Department in Douglas County. (ECF No. 62, ¶ 14; ECF No. 73, ¶ 14.) Defendant Sauer-Lamb was the Chief Deputy Juvenile Probation Officer and Plaintiff's primary supervisor. (ECF No. 107-3 at 3 ¶ 5; ECF No. 107-11 at 10, 14.) Defendant Shick was the Chief Juvenile Probation Officer who acted as head of the department and

---

[1]Defendants are Douglas County, Victoria Sauer-Lamb, and Scott Shick.

[2]The Court has also reviewed the parties' responses (ECF Nos. 114, 115) and replies (ECF Nos. 123, 124), and Plaintiff's errata to reply (ECF No. 125).

supervised Sauer-Lamb. (ECF No. 107-11 at 12, 14). Both Sauer-Lamb and Shick had the authority to terminate Plaintiff's employment. (ECF No. 107-11 at 14.)

On June 21, 2013, Plaintiff was injured at work ("First Workplace Injury") and had three surgical procedures to his right wrist. (ECF No. 107-4 at 12). On June 17, 2014, Plaintiff was again injured at work ("Second Workplace Injury") when a juvenile attacked him. (*Id.* at 17, 61, 66, 72-73.) Plaintiff received medical treatment for injuries to his head, neck, wrists, and shoulders. (*Id.* at 71.) Plaintiff underwent surgery to remove failed hardware previously implanted in his right wrist to treat injuries due to the First Workplace Injury. (*Id.* at 18, 54, 71.)

In July 2014, Plaintiff received light duty work in the office and then in the library. (*Id.* at 36-37, 74.) On October 21, 2014, Plaintiff took leave under the Family Medical Leave Act ("FMLA") to obtain further treatment for his Second Workplace Injury, including a surgical procedure on his right wrist. (ECF No. 107-7 at 53; ECF No. 107-4 at 77-79.) On January 28, 2015, Plaintiff called supervisor Sauer-Lamb and reported that Plaintiff's doctor had released Plaintiff to light duty. (ECF No. 107-3, ¶ 5; ECF No. 107-4 at 39.) But Sauer-Lamb told him "we have nothing for you, and we're not going to bring you back at this time." (ECF No. 107-4 at 39; *see also* ECF No. 107-3, ¶ 5.)

On February 13, 2015, Plaintiff received a letter from Douglas County Human Resources Manager, Norma Santoyo, stating that his FMLA leave had expired on January 21, 2015 and that Plaintiff needed to report back to work on February 17, 2015. (ECF No. 107-3, ¶ 9; ECF No. 107-4 at 39; ECF No. 107-7 at 53.) The letter further informed Plaintiff that he "was expected to provide a full medical release prior to returning to work."[3] (ECF No. 107-7 at 53.) Santoyo's letter added: "Please note that any absence beyond February 17, 2015 will be deemed an unauthorized absence pursuant to Douglas County Code 2.02.080 and may subject you to automatic separation or disciplinary action up to and including termination." (*Id.*)

---

[3]Based on the evidence presented, a "full medical release" appears to essentially be a doctor's note permitting Plaintiff to work without any physical restrictions.

2

On February 17, 2015, Plaintiff reported to Santoyo for work, but she told Plaintiff that he had exceeded his FMLA leave, and that Shick was requesting to fill Plaintiff's position with another employee. (ECF No. 107-3, ¶¶ 13-14.) Santoyo also told Plaintiff that if he could not get a full doctors' release by the end of February 19, 2015, Douglas County would consider Plaintiff to have voluntarily resigned. (ECF No. 107-3, ¶ 15.) Plaintiff disagreed with Santoyo and insisted he was not abandoning his post but was ready, willing, and able to work that day. (ECF No. 107-3, ¶ 16.) Later that same day, Plaintiff sent a letter to the Juvenile Probation Human Resources Department, which requested: (a) a brief extension of time to get full releases from Plaintiff's doctors; (b) a leave of absence for medical treatment to further address Plaintiff's disabilities for return to full duty as a probation officer; and/or (c) reassignment to any other position with Douglas County for which Plaintiff was qualified to perform. (ECF No. 107-3, ¶¶ 18-20; ECF No. 107-7 at 54.)

On February 18, 2015, Plaintiff again reported for work. (ECF No. 107-3, ¶ 24.) Santoyo confirmed receipt of Plaintiff's medical releases (*id.*)—one from Dr. Morales that reduced his push-pull-lifting restrictions (ECF No. 107-12 at 23) and another from Dr. Eisenhauer that released Plaintiff to full work duty (*id.* at 24). Santoyo also told Plaintiff that she was awaiting Shick's response to Plaintiff's February 17, 2015 letter. (ECF No. 107-3, ¶ 25.) Defendants did not permit Plaintiff to return to work that day. (*Id.*, ¶ 26.) Later the same day, Santoyo called Plaintiff and informed him that his FMLA had expired, that Shick denied Plaintiff's request for an extension of time and for a leave of absence, and that "they" did not consider Plaintiff's medical releases to be "full releases." (*Id.*, ¶ 27; *see also* ECF No. 107-8 at 66-67.) Santoyo advised Plaintiff that Douglas County had no light-duty work, but then Plaintiff reminded her that he had previously worked at the county library on light duty, and that his doctor increased Plaintiff's lifting restriction from 10 to 50 pounds, which complied with the published requirements for Plaintiff's position. (ECF No. 107-3, ¶ 28.) Santoyo emailed Shick and Douglas County counsel, Justina Caviglia, confirming that Santoyo advised Plaintiff of the following: "At this point we do not have

valid and concrete information that you are able to return to full capacity." (ECF No. 107-9 at 66.)

On February 19, 2015, Plaintiff again reported for work, but Defendants refused to allow him to work, and Santoyo told Plaintiff that, as of 5:00 p.m. that day, Plaintiff would no longer be an employee of Douglas County. (ECF No. 107-3, ¶¶ 30-32.) On that same day, Sauer-Lamb tried to have Plaintiff sign a personnel-action form that would indicate he was voluntarily resigning, but Plaintiff refused to sign it.[4] (ECF No. 107-3, ¶¶ 34-35; *see also* ECF No. 107-11 at 75.) On February 23, 2015, Plaintiff received a letter from Shick, dated February 19, 2015, that read: "Dear Mr. Enos[,] I have received and seriously considered your request for a leave of absence dated February 17, 2015, pursuant to Douglas County Policy 200.40. However, after considerable deliberation, your request is being denied." (ECF No. 107-3, ¶ 33; ECF No. 107-11 at 74.)

Thereafter, Plaintiff met with counselor Ed Howden about getting vocational rehabilitation services to be retrained in another profession. (ECF No. 107-4 at 23.) On April 5, 2016, Howden sent Douglas County a letter inquiring about the County's ability to reemploy or reassign Plaintiff to a position that fits Plaintiff's physical restrictions and that meets additional requirements.[5] (ECF No. 106-4 at 2-3.) Howden further advised in his letter that, in the event Douglas County could not offer such reemployment, Plaintiff may be entitled to vocational rehabilitation benefits. (*Id.* at 3.) In response, Douglas County returned Howden's pre-generated form but marked an "X" next to the statement: "No, I do not have an appropriate job to offer within the stated limitations." (ECF No. 107-4 at 23;

---

[4]On February 17, 2015, Plaintiff applied for disability retirement with the Public Employers Retirement System ("PERS") and was approved on April 16, 2015, based on his disabilities arising from his workplace injuries and their sequela. (ECF No. 107-4 at 40-41, 75; and ECF No. 107-3, ¶ 52.) After Plaintiff's termination, he continued to obtain medical treatment through worker's compensation. (ECF No. 107-3, ¶ 53.)

[5]The letter also required in part that the job provide Plaintiff a gross wage that is equal to or greater than 80% of the gross wage that Plaintiff was earning at the time of his injury, and the same employment benefits that Plaintiff had at that time. (ECF No. 106-4 at 3.)

ECF No. 106-4 at 5-6.[6]) On January 23, 2017, Plaintiff commenced a school program for a criminal justice certificate with Western Nevada College through his vocational rehabilitation program. (ECF No. 107-4 at 23-24.)

On January 6, 2017, Plaintiff re-applied for the position of juvenile probation officer with Douglas County. (ECF No. 107-3, ¶ 46; ECF No. 107-5 at 41-46; ECF No. 107-13 at 22-23.) But Kelly McGee filled the position instead. (ECF No. 107-11 at 70; *see also* ECF No. 107-3, ¶ 48; ECF No. 107-5 at 48.)

Plaintiff asserted a claim against Douglas County for violations of the Americans with Disability Act ("ADA") based on discrimination and retaliation related to (1) Plaintiff's discharge in 2015 and (2) Douglas County's failure to hire and/or reasonably accommodate Plaintiff when he reapplied for a position in 2016[7] and (3) again in 2017.[8] (ECF No. 62 at 31-35.) Additionally, Plaintiff alleged claims against all Defendants for: violation of his Fourteenth Amendment procedural due process rights under 42 U.S.C. § 1983; tortious discharge for filing a worker's compensation claim; wrongful termination; and breach of the implied covenant of good faith and fair dealing. (*Id.* at 35, 39, 40, 42.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine

---

[6]Although Defendants have not properly authenticated Douglas County's response to Howden's letter, authentication is not an issue here because the Court discusses the response to provide the reader with additional background.

[7]Plaintiff claims he re-applied for a job with Douglas County in 2016 through Howden's letter. (*See* ECF No. 62 at 31, 34; ECF No. 115 at 26.) Moreover, Plaintiff argues that the letter constituted a request for reasonable accommodations. (ECF No. 62 at 34; ECF No. 115 at 26.)

[8]Plaintiff has also filed a claim for *respondeat superior* liability against Douglas County and for declaratory and injunctive relief against all Defendants, but those claims are not at issue here. (ECF No. 62 at 44-45.)

issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Where the moving party does not have the ultimate burden of persuasion at trial, the party can meet its burden of production by either producing evidence that negates an essential element of the nonmoving party's case or by showing that the nonmoving party does not have enough evidence to meet an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783

///

(9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV. DISCUSSION

The Court will address the parties' arguments in terms of the issues presented here because of the unusual presentation of the parties' arguments in their respective motions. Plaintiff in gist argues that he is entitled to summary judgment on two alleged ADA violations—that Douglas County terminated his employment in 2015 and subsequently refused to re-hire him in 2017 because of his disability. (ECF No. 107 at 19-30.) He also seeks summary judgment on his procedural due process and wrongful termination claims. (*Id.*) In contrast, Defendants seek summary judgment on all three alleged ADA violations asserted in the discrimination claim against Douglas County; Plaintiff's claims against Sauer-Lamb for procedural due process violations, tortious discharge and wrongful termination; and Plaintiff's claim for breach of the implied covenant of good faith and fair dealing against all Defendants. (ECF No. 106 at 18-29.) The parties' motions cover overlapping issues. Accordingly, the Court will address these issues in turn.

### 1. ADA Claim

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring . . . or discharge of employees . . ." 42 U.S.C. § 12112(a); *see also Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) ("[I]ndividual defendants cannot

///

7

be held personally liable for violations of the ADA.").[9] Ultimately, Plaintiff's ADA claim requires a showing that (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (citation omitted).

The Court will deny the parties' motions on all three ADA violations because a rational jury could reasonably disagree on whether Plaintiff was a qualified individual in 2015 and 2017, and whether Douglas County failed to reasonably accommodate or interact with Plaintiff in 2016.[10]

### A. Qualified-Individual Status in 2015 and 2017

ADA qualification is a two-step inquiry. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). First, the Court examines whether the individual satisfies the "requisite skill, experience, education and other job-related requirements" of the position. *id.* Second, the Court considers whether the individual "can perform the essential functions of such position" with or without a reasonable accommodation. *Id.* The parties only disagree on whether Plaintiff has satisfied the second step. (*See* ECF No. 106 at 19-20; ECF No. 115 at 17, 19-20.)

Defendants rely on three items of evidence to show that Plaintiff cannot perform the essential functions of the job in 2015 and 2017, but the evidence demonstrates a genuine dispute of material fact on the issue.[11] (ECF No. 106 at 20-22; ECF No. 123 at 3-

---

[9]Defendants contend that because there is no individual liability under the ADA, that claim against Defendants Shick and Sauer-Lamb should be dismissed. (ECF No. 114 at 3.) But Plaintiff is not pursuing any ADA claim against those individuals. (ECF No. 62 at 31 (alleging ADA claims against Douglas County, DOE Governmental Entities 1-10, and DOE Business Entities 1-10).)

[10]In opposition to Plaintiff's Motion, Defendants also raise the threshold argument that Douglas County is not an employer for juvenile probation officers of the Ninth Judicial District. (ECF No. 114 at 3-6.) But the Court declines to address the issue because it will ultimately resolve Plaintiff's Motion on other grounds.

[11]As a preliminary matter, the Court notes that Defendants failed to properly authenticate the three evidence they rely upon. (*See* ECF No. 106-3 at 2, 58, 24.) Nevertheless, the Court will address Defendants' evidence.

8

4.) First, Defendants point to Dr. Eisenhauer's note from March 13, 2015, stating that Plaintiff could no longer perform essential functions described in his job description like subdue individuals or effectively use his wrist for climbing, crawling or lifting 50 pounds. (ECF No. 106-3 at 2; ECF No. 106 at 25.) However, Plaintiff counters that Dr. Eisenhauer's note also says "it is [his] medical opinion that [Plaintiff] can return to work in limited capacity." (ECF No. 115 at 19 (citing to ECF No. 106-3 at 3).)

Second, Defendants point to Dr. Morales's note from February 5, 2015, indicating that Plaintiff was not physically capable of performing the essential functions of his job, and that Plaintiff would be totally and temporarily disabled after his February 18, 2015 surgery. (*See* ECF No. 106 at 11; ECF No. 123 at 4; ECF No. 106-2 at 58.) But this note contradicts Dr. Morales's note from February 17, 2015, where she permitted Plaintiff to engage in light-duty work under the restriction that he refrain from lifting overhead in excess of 35 pounds, or pushing or pulling over 50 pounds. (ECF No. 106 at 12; ECF No. 106-2 at 60.)

Last, Defendants point to Plaintiff's statement in his PERS application in which he claimed he was unable to perform several critical job duties. (ECF No. 106 at 22, 25-26; ECF No. 106-3 at 24; ECF No. 123 at 4; *see also* ECF No. 107-4 at 40-41, 75.) Defendants emphasize that to qualify for PERS, an employee must be "totally unable to perform [his or her] current job or any comparable job for which [the employee] is qualified." (ECF No. 106 at 21 (citing to NRS § 286.620(1)). But the Ninth Circuit has held that PERS does not "account for an applicant's ability to work with reasonable accommodation, [therefore] it is possible that a person could claim he or she qualifies for disability benefits and still be able to work if accommodated." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 957 (9th Cir. 2013). In sum, reasonable minds can disagree on whether Plaintiff's PERS application and benefits—as well as the notes from Dr. Eisenhauer and Dr. Morales—support that Plaintiff is a qualified individual under the ADA.

///

///

Accordingly, genuine issues of material fact exist as to whether Plaintiff was a qualified individual protected under the ADA in 2015 and 2017, an essential element to his claim. The Court therefore denies both parties' motions on this issue.

## B. Reasonable Request for Accommodation in 2016

Defendants seek summary judgment on Plaintiff's claim for ADA violation in 2016. But Plaintiff has presented sufficient evidence for a rational jury to find that (1) Howden's letter constituted a request for reasonable accommodation,[12] (2) Douglas County failed to engage in the interactive process, and (3) Plaintiff's receipt of vocational rehabilitation benefits has no bearing on whether Douglas County had a vacant job position to accommodate Plaintiff.

"The ADA definition of discrimination includes 'not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.' " *McAlindin v. County of San Diego*, 192 F.3d 1226, 1236 (9th Cir. 1999), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000) (citing 42 U.S.C. § 12112(b)(5)(A)). Once "an employee or employee's representative giv[es] notice of the employee's disability and the desire for accommodation," the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation.[13] *Downey v. Crowley Marine Servs., Inc.,* 236 F.3d 1019, 1023 n.6 (9th Cir. 2001) (citation and internal quotes omitted). The interactive process requires: (1) direct

---

[12] Although Defendants have not properly authenticated Howden's letter (ECF No. 106-4 at 5-6), both parties cite to it (*see* ECF No. 115 at 26). Therefore, the Court finds that authentication is not an issue and will proceed to address the letter.

[13] "The EEOC compliance manual provides that 'a family member, friend, health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) (citing to 2 EEOC Compliance Manual, Enforcement Guidance for Psychiatric Disabilities, at 20–21); *see id.* (holding that plaintiff's son can make a request for accommodations); *Bultemeyer v. Fort Wayne Comm. Schools*, 100 F3d 1281, 1284 (7th Cir. 1996) (holding that plaintiff's doctor can make a request for accommodations).

communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted). Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process. *Id.* (same). A "reasonable accommodation" may include "reassignment to a vacant position," 42 U.S.C. § 12111(9), but "the ADA does not impose a duty to create a new position to accommodate a disabled employee," *Wellington v. Lyon Cnty. School Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999).

Defendants essentially make three arguments—none of which are persuasive. First, Defendants argue that Howden's letter was not a request for reasonable accommodation. (ECF No. 106 at 24; ECF No. 123 at 8-9.) "What matters under the ADA[, however,] are not formalisms about the manner of the request, but whether the . . . employer [has been provided] with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Rowe v. City & Cty. of San Francisco*, 186 F. Supp. 2d 1047, 1051 n.4 (N.D. Cal. 2002) (quoting *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)). Drawing all inferences in the light most favorable to Plaintiff, the Court finds that Howden repeatedly asks Douglas County to consider Plaintiff for a modified job position because of Plaintiff's permanent lifting restrictions. (*See*, *e.g.*, ECF No. 106-4 at 2-3 ("I encourage you to consider him for a permanent modified job. . . . You are encouraged to consider these limitations and make an offer of employment . . . [P]lease call on me to assist in developing an acceptable job offer to be presented . . .").) A rational jury can therefore infer that the letter is a request for reasonable accommodations.

Second, Defendants argue that Douglas County sufficiently engaged in the interactive process when it responded to Howden that it did "not have an appropriate job to offer within the stated limitations" of the letter. (ECF No. 106 at 24-25; *see also* ECF No. 106-4 at 5-6.) However, a rational jury could find that Douglas County's response was

insufficient because it was not a direct communication with Plaintiff and Douglas County failed to propose an alternative accommodation.[14] *See Zivkovic*, 302 F.3d at 1089.

Last, Defendants argue that when Plaintiff accepted vocational rehabilitation benefits, Plaintiff effectively admitted that Douglas County did not have a vacant job position to accommodate Plaintiff. (ECF No. 106 at 23-25; ECF No. 123 at 8.) Defendants explained that such benefits are only available under NRS § 616C.590 where an employer has no vacant position that (1) falls within the injured employee's physical restrictions, (2) provides a gross wage equal to or greater than 80% of that employee's wages at the time of his or workplace injury and (3) has the same benefits. (ECF No. 123 at 8.) Nevertheless, Defendants' argument is a non sequitur—if Douglas County had a vacant position that did not satisfy either the second or last requirement of NRS § 616C.590, which are irrelevant to an ADA claim, Plaintiff would have qualified for benefits. Therefore, a rational jury could find that Plaintiff's receipt of vocational rehabilitation benefits is inconclusive of whether Douglas County had a vacant position that could reasonably accommodate Plaintiff.[15]

For the foregoing reasons, the Court will deny Defendants' Motion on Plaintiff's ADA claim regarding his request for reasonable accommodation in 2016.

### 2. 42 U.S.C. § 1983: Procedural Due Process Violation

Plaintiff argues that he is entitled to summary judgment because (1) he had a property interest in his employment under the Fourteenth Amendment; (2) Plaintiff was

---

[14]Douglas County's response might have been acceptable in the context of worker's compensation, but—contrary to what Defendants suggest (ECF No. 106 at 25)—that has no bearing on whether Douglas County has met its obligations under the ADA.

[15]Defendants cite to *Amerson v. Clark County*, 995 F. Supp. 2d 1155 (D. Nev. 2014) (ECF No. 106 at 25), but the facts there are distinguishable. In *Amerson*, the court held that a former employee's settlement of a claim under NRS § 616C.590 precluded the employee's subsequent ADA claim because the settlement stipulated that the employer "could not accommodate Amerison's restrictions," which "negate[d] an essential element of her ADA claim." *Id.* at 1162. The court emphasized that the plaintiff there failed to offer an explanation that would allow a reasonable juror to reconcile the discrepancy. *Id. Amerson* is distinguishable from the present case. Not only is there no similar stipulation here, but there is no inconsistency between Plaintiff's ADA claim and the mere fact that Plaintiff received vocational rehabilitation benefits.

entitled to the due process outlined in the Ninth Judicial District Court Personnel Regulations (the "NJDCPR"); and (3) Douglas County and Shick failed to provide Plaintiff that process. (ECF No. 107 at 24-28.) Meanwhile, Defendants argue that Sauer-Lamb is entitled to summary judgment on the § 1983 claim because Sauer-Lamb did not personally participate in Plaintiff's termination. (ECF No. 106 at 26-27.) The Court disagrees with Plaintiff's second argument and will therefore deny his motion as to his § 1983 claim; however, the Court declines to address Plaintiff's remaining arguments. Additionally, the Court disagrees with Defendants' argument and will also deny their motion.

To prevail under 42 U.S.C. § 1983, a plaintiff must prove that he or she was (1) deprived of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *Marsh v. Cty. of San Diego,* 680 F.3d 1148, 1152 (9th Cir. 2012). "A public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins,* 487 U.S. 42, 49 (1988). A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Vicarious liability is inapplicable to § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Meanwhile, a municipality—or county— may be held liable under § 1983 if it implemented a "policy" or "custom" that caused the plaintiff's injury. *Kincaid v. Washoe Cty.*, Case No. 3:12-cv-482-MMD, 2013 WL 5200894, at *4 (D. Nev. Sept. 13, 2013) (citations omitted)).

Deprivation of procedural due process under the Fourteenth Amendment is a violation of a right secured by the Constitution. To prevail on a Fourteenth Amendment Procedural Due Process claim, Plaintiff must prove he possesses (1) a protected liberty or property interest; (2) governmental deprivation of said interest; and (3) denial of adequate procedural protections. *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Due process is satisfied in a pre-termination hearing context when the public employee is given (1) "oral or written notice of the charges against him [or her]," (2) an "explanation of the employer's evidence," and (3) "an opportunity to present his [or her]

side of the story." *Cleveland Bd. of Educ. v. Loudermill* ("*Cleveland*"), 470 U.S. 532, 546 (1985). Requiring anything more "prior to termination would intrude to an unwarranted extent on the government's interest." *Id.*

Plaintiff argues *inter alia* that Douglas County and Shick failed to provide Plaintiff the minimum due process guaranteed to him under the NJDCPR §§ 7.01-.06 (ECF No. 107 at 26), but that is not the correct standard.[16] It is well settled that "the minimum procedural requirements are a matter of federal law"—and are not defined by state law. *Cleveland*, 470 U.S. at 541-42. Moreover, the NJDCPR provides more than what is constitutionally mandated under the Due Process Clause. For example, Plaintiff argues that he was not provided a written specification of charges as outlined in NJDCPR § 7.02, but § 7.02 requires that such charges be reviewed and approved by a Human Resources Manager and District Attorney's office before it is sent to the employee. (ECF No. 107-2 at 15-16.) This review process clearly goes beyond the minimum notice required by the Due Process Clause. *See Clements*, 69 F.3d at 331. In addition to the initial disciplinary hearing, Plaintiff also argues that he was entitled to two levels of appeal under §§ 7.03 and 7.05 (ECF No. 107-2 at 16-17)—even though the Due Process Clause only mandates "some kind of hearing" or "*an* opportunity" to respond to the charges. *Id.* at 542, 544 (emphasis added) (citations and internal quotes omitted). The Court will therefore deny Plaintiff's Motion as to his § 1983 claim.

Defendants insist that Sauer-Lamb was not involved in Plaintiff's termination and cannot be held liable under § 1983. (ECF No. 106 at 26-27; *see also* ECF No. 123 at 12-14.) But Plaintiff has pointed to evidence showing otherwise. Not only did Sauer-Lamb— as Plaintiff's primary supervisor—told Shick that Plaintiff had to be "fully capable in his job"

---

[16]Plaintiff also argues that he was entitled to the minimum process guaranteed under NRS § 62G.060, but he only cites to facts in the record regarding his employer's failure to provide him the process outlined in the NJDCPR. (*See* ECF No. 107 at 26.) As such, the Court will only address his NJDCPR arguments. Moreover, for purposes of efficiently resolving Plaintiff's § 1983 claim, the Court will presume that Shick acted under color of law, Douglas County implemented a policy that caused Plaintiff's purported injury, and Plaintiff had a protected property interest.

14

and "fit for duty" (ECF No. 115-3 at 25), but Plaintiff was ultimately terminated because he failed to get a full medical release and his employer did not consider his doctor notes to be a full release (*see* ECF No. 107-7 at 53; ECF No. 107-3, ¶ 27; ECF No. 107-8 at 66-67). In fact, Plaintiff reported to work for light duty on January 28, 2015, but Sauer-Lamb refused to let him work. (ECF No. 107-3, at 3 ¶ 5; ECF No. 107-4 at 39.) On the day of Plaintiff's termination, Sauer-Lamb also tried to have Plaintiff sign a personnel-action form that would indicate he was voluntarily resigning. (ECF No. 107-3, ¶¶ 34-35; *see also* ECF No. 107-11 at 75.) A rational jury could reasonably infer that Sauer-Lamb was personally involved at various points in the process of terminating Plaintiff. Accordingly, the Court denies Defendants' Motion on Plaintiff's § 1983 claim as to Sauer-Lamb.

### 3. **Tortious Discharge**

Defendants argue that there are no facts showing that Sauer-Lamb's actions were motivated by Plaintiff's filing for workers' compensation benefits. (ECF No. 123 at 14-16.) The Court agrees.

As the Nevada Supreme Court has explained, "[a]n employer commits a tortious discharge by terminating an employee for reasons [that] violate public policy." *Rains v. Newmont USA Ltd.*, Case No. 3:12-cv-517-MMD, 2013 WL 6632671, at *3 (D. Nev. Dec. 16, 2013) (citing to *D'Angelo v. Gardner*, 819 P.2d 206 (Nev. 1991)). "[R]etaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee is actionable in tort." *O'Brien v. R.C. Willey Home Furnishings*, 748 F. App'x 721, 724 (9th Cir. 2018) (internal quotes omitted) (citing to *Hansen v. Harrah's*, 675 P.2d 394, 397 (1984)).[17] Recovery for tortious discharge is not permitted under Nevada law where there are mixed motives for the termination. *Rains*, 2013 WL 6632671, at *3 (citing to *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1066 (Nev. 1998)). The protected activity must have been the sole proximate cause of the termination. *Id.* (same).

---

[17] Pursuant to Ninth Circuit Rule 36-3, *O'Brien*, 748 F. App'x 721 is not precedent, but may be cited by this Court. *See* FRAP 32.1 The Court accordingly cites *O'Brien* not for its precedential value, but because the Court finds the Ninth Circuit's reasoning on a similar point of law persuasive.

Plaintiff offers the following evidence to show retaliatory animus: (1) Sauer-Lamb completed Plaintiff's C-4 form for his Second Workplace Injury; (2) Sauer-Lamb drove Plaintiff to the doctor after the injury; (3) Sauer-Lamb arranged for Plaintiff's light duty in the library and subsequently checked up on him; (4) Sauer-Lamb helped forward Plaintiff's medical notes to Shick and DCHR; (5) Sauer-Lamb attended meetings in which workers' compensation issues were discussed; (6) Plaintiff rejected Sauer-Lamb's assignment to transport juveniles because he was still injured and awaiting surgery; (7) Shick and Sauer-Lamb subsequently "provoked [him], poked at [him] [and] did whatever they could do to try to get [him] to be upset" (ECF No. 107-4 at 36-37); and (8) Shick and Sauer-Lamb assigned away Plaintiff's matters to his co-workers. (ECF No. 115 at 29.) However, none of the evidence demonstrate that Sauer-Lamb took any action against Plaintiff because he filed for worker's compensation. At most, the evidence suggests that Sauer-Lamb attempted to provoke Plaintiff and assign away his cases because Plaintiff refused to transport a juvenile. Accordingly, the Court grants summary judgment in favor of Sauer-Lamb on Plaintiff's claim for tortious discharge.

### 4. **Wrongful Termination**

Under Nevada law, an employer can terminate an at-will employee whenever and for whatever reason without liability for wrongful termination, unless both parties had an express or implied contract that the employer can discharge the employee only for cause. *See Hirschhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F. Supp. 1393, 1399-400 (D. Nev. 1995) (citations omitted); *Yeager v. Harrah's Club, Inc.*, 897 P.2d 1093, 1095 (1995) (noting in dicta that employment is at-will if it "is not for a definite period and if there are no contractual or statutory restrictions on the right of discharge" (citation omitted)).

Plaintiff argues that he is entitled to summary judgment on his fourth claim for wrongful termination against Shick and Douglas County because he was discharged in violation of the ADA, NRS § 62G.060(1), and the NJDCPR §§ 7.01-.06. (ECF No. 107 at 28-29.) However, the Court finds that there is factual dispute as to whether he was covered under the ADA. Moreover, there is a factual dispute as to whether Douglas County, let

alone Shick, was Plaintiff's employer for which he can assert a wrongful employment termination claim.[18] (*See* ECF No. 114 at 3-4, 116 (arguing that Nevada's Ninth Judicial District Court and its judges—not Douglas County—are Plaintiff's employers).) Plaintiff has also failed to point to any authority that would support a wrongful termination claim against a supervisor, such as Shick. Accordingly, the Court denies Plaintiff's Motion on the wrongful termination issue.

Defendants' Motion argues that Sauer-Lamb had no personal involvement in Plaintiff's termination and therefore cannot be held liable. (ECF No. 106 at 28.) The Court disagrees because, for reasons already stated above, Plaintiff has presented evidence showing Sauer-Lamb's involvement in Plaintiff's termination. (*See* Section 2.) The Court will therefore deny Defendants' Motion on the wrongful termination claim.

### 5. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Plaintiff's claim for breach of the implied covenant fails as a matter of law because Plaintiff did not have an employment contract with Defendants.[19] (ECF No. 106 at 28-29.) The Court agrees.

To succeed on a cause of action for breach of the implied covenant of good faith and fair dealing, a plaintiff must show: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Hilton Hotels v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991); *see also Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

---

[18]Although Defendants raised this argument with regard to Plaintiff's ADA claim (ECF No. 114 at 3-4) and Plaintiff responded with evidence showing Douglas County was his joint employer (ECF No. 124 at 2-12), Plaintiff has not asserted those same arguments or evidence in support of his wrongful termination claim.

[19]Although Defendants make a passing reference to "tort" in their section seeking relief for breach of the covenant of good faith and fair dealing (ECF No. 106 at 28), Defendants only argue contractual—not tortious—breach of the implied covenant. As such, the Court declines to address Plaintiff's claim for tortious breach of the implied covenant.

17

Here, Plaintiff has not satisfied the first element. In opposition to Defendants' Motion, Plaintiff argues that the NJDCPR imposed "statutory restrictions on the right of discharge" that converted Plaintiff's at-will employment into an employment contract that can only be terminated for just cause and only after Plaintiff was provided pre and post termination protections. (ECF No. 115 at 30 (citing to *Yeager*, 897 P.2d at 1095).) Even assuming Plaintiff is correct, that statutory restriction does not constitute an agreement. As such, the Court will grant Defendants' Motion on this claim.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiff's motion for summary judgment (ECF No. 107) is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 106) is granted only as to Plaintiff's claim for tortious discharge against Sauer-Lamb and claim for breach of the implied covenant of good faith and fair dealing as to all Defendants. Defendants' motion for summary judgment is denied as to all other claims.

DATED THIS 20th day of March 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE